UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


INDEX OF EXHIBITS

| Exhibit | Description |
| --- | --- |
| 1 | Complaint |
| 2 | Summons |
| 3 | Motion for Summary Disposition and Related Documents |
| 4 | Order of Disqualification/Reassignment |

# EXHIBIT 1

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

MICHIGAN FINANCE AUTHORITY,
a public body corporate,

      Plaintiff,

v.

HANS KIEBLER and DONOVAN
VISSER,

      Defendants.

Case No. 13- 528 -CZ

Hon. Aguilina

---

Jennifer M. Jackson (P67126)
Jason W. Johnson (P49033)
Assistant Attorneys General
Michigan Dept. of Attorney General
Attorneys for Plaintiff
State Operations Division
P.O. Box 30754
Lansing, Michigan 48909
(517) 373-1162

Molly E. McManus (P48911)
David S. Ludington (P74513)
Special Assistant Attorneys General
Warner Norcross & Judd LLP
Attorneys for Plaintiff
900 Fifth Third Center
111 Lyon St. N.W.
Grand Rapids, Michigan 49503
(616) 752-2000

---

## COMPLAINT FOR DECLARATORY RELIEF

Two civil actions arising out of the transaction or occurrence alleged in this complaint were
previously filed in the Court of Claims in Ingham County. The first, *Mouton v Michigan
Finance Authority, et al.*, was given docket no. 11-55-MK and assigned to Judge
Manderfield. The second, *Israel v Michigan Higher Education Student Loan Authority, et
al.*, was given docket no. 12-22-MK and assigned to Judge Draganchuk.
MCR 2.113(C)(2)(b). Neither action is pending.

1

## INTRODUCTORY STATEMENT

Time is of the utmost essence for this Court to rule on the critical—but simple—legal issue presented by this case: whether these two defendants can maintain claims arising out of the termination of the Michigan Students First student loan borrower benefits program, despite their failure to give the State timely notice under MCL 600.6431(1).

This lawsuit is of tremendous importance to the Michigan Finance Authority (MFA) and Michigan citizens. At stake is not only a loss of approximately $54.2 million—funds that would otherwise be used to serve the public—but also major collateral effects that jeopardize and potentially devastate the MFA's ability to fulfill its statutory mission to provide capital market access for the benefit of municipalities, school districts, and students.

In June 2010, the MFA refinanced $1 billion in student-loan-backed note obligations with a federally-backed entity, Straight-A Funding, LLC, under new federal laws passed to aid student loan agencies in a weakened economy. This existing note must be refinanced by November 19, 2013—and that is the date this case hinges upon.[1]

In January 2013, the MFA began working on a transaction to refinance the Straight-A note into a new financial instrument with terms reflecting current

---

[1] But to complete the steps necessary to refinance the note by the November 19, 2013 deadline, *the MFA needs a final court ruling no later than mid-September 2013*.

market conditions. This process was underway, on-track, and scheduled to close on March 25, 2013—until the two defendants filed notices of intention to file claims that are untimely under MCL 600.6431(1). Although the defendants have not yet filed lawsuits, the uncertainty associated with the threatened claims has abruptly halted the refinancing transaction. The MFA will suffer irreparable damages if the refinancing transaction fails to close. Specifically, the failure to close the refinancing transaction will result in the MFA defaulting on the Straight-A note, at a cost of approximately $54.2 million, and will impair the MFA's credit rating and its ability to issue bonded debt at market rates.

## PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff Michigan Finance Authority (MFA) is a public body corporate, created by Executive Reorganization Order No. 2010-2, now codified at MCL 12.194(II)(A), as successor to the former Michigan Higher Education Student Loan Authority (MHESLA) and a number of other former State financing authorities.

2.  Defendant Donovan Visser is an individual residing in Kent County, Michigan.

3.  Defendant Hans Kiebler is an individual residing in Ingham County, Michigan.

4.  This Court has jurisdiction of this matter under MCL 600.601 and venue is proper under MCL 600.1621(a).

5.  This matter presents a case of actual controversy, and as such is within this Court's power to grant a declaratory judgment under MCR 2.605.

3

## GENERAL ALLEGATIONS

### I. The Michigan Students First Program

6. MFA's predecessor, the Michigan Higher Education Student Loan Authority (MHESLA), promoted higher education by helping provide students access to education loans, including loans backed by the Federal Family Educational Loan Program.

7. To obtain capital to originate and acquire education loans, MHESLA used its statutory authority to borrow funds through the issuance of bonds and notes.

8. Three loan servicing vendors collect payments for education loans originated or acquired by MHESLA, and also field calls, distribute correspondence, and perform other services for borrowers.

9. Beginning January 1, 2003, MHESLA provided a borrower benefits program known as the Michigan Students First Program (MSF Program) for qualifying loans originated or acquired by MHESLA after that date.

10. The MSF Program provided qualifying borrowers: (1) an upfront credit to their loan equal to the federal loan origination fee, and (2) after 36 on-time monthly payments, a reduction of the then-current interest rate to 0% for the remaining loan term so long as payments continued to be timely (that is, within 28 days of the due date).

11. MHESLA financed the cost of the MSF Program through a combination of payments received from the federal Department of Education and interest arbitrage earnings associated with previously issued bonds. Using such funds to finance the cost of the MSF Program served MHESLA's public

4

purpose of assisting Michigan students with their higher education expenses.
Otherwise, the funds would have been rebated to the federal government.

12.    MHESLA reserved the right to discontinue the MSF Program at any time,
and this was expressly stated in brochures describing the MSF Program and
on MHESLA's website.  For example, brochures contained language reserving
the right to terminate the program:

> The Michigan Higher Education Student Loan Authority
> *reserves the right to revise or discontinue offering* the Michigan
> Students First program *at any time*.
>
> [**Exhibit 1**, MSF Program brochure (emphasis added); *see also*
> **Exhibit 2**, website screen prints.]

13.    As a result of the deepest national recession since the Great Depression,
MHESLA had to revisit its provision of borrower benefits in 2009 and 2010.
Unfortunately, because of the ongoing credit crisis and changes in federal
law, the payments from the federal Department of Education and the interest
arbitrage earnings associated with previously issued bonds were no longer
sufficient to finance the cost of the MSF Program.

14.    Given the economic reality that had developed, MHESLA recognized that it
could no longer afford the borrower benefits previously available to MSF
Program participants.  If MHESLA had continued to pay the MSF Program's
0% interest rate benefit, MHESLA could not have met the debt service
requirements on its outstanding bonds, which would have resulted in
MHESLA defaulting on its bonds and causing significant financial harm.

15.  Left with no other choice to remain solvent, MHESLA sent letters on or about June 10, 2010 notifying borrowers that certain programs, including the MSF Program, would be terminated effective June 30, 2010.

16.  The termination letters informed borrowers that no further MSF Program borrower benefits would be provided after June 30, 2010—except for those borrowers who had already qualified for the MSF Program by June 30, 2010. **Exhibit 3**, Exemplar of 6/10/2010 Termination Letter.

17.  Neither Visser nor Kiebler met the June 30, 2010 cut-off, and so they no longer qualified for the reduction of the interest rate to 0% under the MSF Program.

## II. The Defendants' Loans

### a. Defendant Visser

18.  From August 2004 through May 2007, Visser attended Michigan State University School of Law (f/k/a Michigan State University-Detroit College of Law). To finance his law school education, Visser obtained federal student loans from the school under a standard Master Promissory Note that he signed on August 16, 2004. MHESLA later purchased Visser's loans from Michigan State University-Detroit College of Law. **Exhibit 4**, Visser's Master Promissory Note.

19.  The aggregate original loan amounts for Visser's 5 loans totaled $32,197.

20.  After Visser finished law school, his loans entered repayment status on November 10, 2007, with a monthly payment due on the 10th of each month thereafter.

6

21. On December 23, 2008, Visser called the loan servicer assigned to his loans, Great Lakes Higher Education Corporation (Great Lakes), stating that he was entitled to receive the MSF Program's 0% borrower benefit after 12 payments. The Great Lakes' representative properly informed Visser that he was incorrect, and that MSF Program borrower benefits were only available after 36, not 12, consecutive on-time monthly payments. Visser was also informed that the MSF Program borrower benefits were neither a part of his promissory note, nor a contractual right, but rather, were a special benefit offered by the lender.

22. As with other affected borrowers, Visser was notified by the June 2010 letter that the MSF Program had been terminated.

23. Even though Visser did not make his 36th payment by the June 30, 2010 cut-off, he filed a notice of intention to file claim against the MFA and others on February 21, 2013—nearly 3 years after the MSF Program had been terminated.

24. In his notice, Visser alleged that he made his 36th student loan payment "in or around December, 2010," and had suffered damages as the result of a "material breach of [respondents'] obligations under all applicable contract(s)." **Exhibit 5**, Visser's Notice of Intention to File Claim, ¶3(k).

#### b. Defendant Kiebler

25. From May 2006 to January 2007 and August 2007 to August 2009, Kiebler attended Michigan State University. To finance his undergraduate education, Kiebler obtained federal student loans from Comerica Bank

7

through a Master Promissory Note he signed on April 4, 2006. MHESLA later purchased Kiebler's loans from Comerica Bank. **Exhibit 6**, Kiebler's Master Promissory Note.

26. The aggregate original loan amounts for Kiebler's 3 loans totaled $29,000.

27. Kiebler's loans initially entered repayment status on July 17, 2007, but then went into a combination of in-school deferments and forbearances, and re-entered active repayment status on April 11, 2010, with a monthly payment due on the 15th day of each month thereafter.

28. As a borrower with loans owned by MHESLA, Kiebler was sent the June 2010 letter notifying him of the termination of the MSF Program. By then, Kiebler had made only 3 of the 36 payments required to qualify for the MSF Program's 0% borrower benefit. By virtue of the termination, he no longer qualified for the MSF Program.

29. Kiebler failed to make one of his loan payments in a timely manner as required by the MSF Program. His payment due November 15, 2012 was not received until December 17, 2012.

30. Nearly 3 years after receiving the June 2010 letter, Kiebler filed a notice of intention to file claim on February 21, 2013 against the MFA and others. In it, Kiebler alleged that he made his 36th student loan payment "in or around December, 2012," and had suffered damages as the result of a "material breach of [respondents'] obligations under all applicable contract(s)." **Exhibit 7**, Kiebler's Notice of Intention to File Claim, ¶3(k).

8

### III. The MFA's Student Loan Refinancing Transaction and the November 19, 2013 Deadline

31. In 2008, the national economic crisis and impaired credit markets disrupted the ability of student loan providers to access capital for student loans through traditional capital market debt-raising activities. To provide relief to student loan providers such as MHESLA, the federal Department of Education created a commercial paper conduit financing program known as Straight-A Funding, LLC (Straight-A).

32. In June 2010, MFA refinanced over $1 billion of MHESLA's student loan portfolio with Straight-A through a new note (the Straight-A Note). Approximately $650 million remains outstanding on the Straight-A Note. **Exhibit 8**, Straight-A Note.

33. The Straight-A Funding Note Purchase Agreement dated June 9, 2010 (Straight-A Agreement) requires the MFA to make its final payment on November 19, 2013. **Exhibit 9**, Straight-A Funding Note Purchase Agreement, Section 1.03(a) and Appendix A, pages A-16 and A-17.

34. Of critical importance is that the Straight-A Note must be repaid by November 19, 2013, at which point all loans securing the Straight-A Note which have not been refinanced or otherwise sold under a public auction procedure, will be sold to the federal government at a loss of approximately $18 million to MFA. **Exhibit 8**, Straight-A Note; **Exhibit 9**, Straight-A Funding Note Purchase Agreement.

9

35.   The traditional credit markets now provide MFA with an opportunity to refinance its $650 million outstanding balance on the Straight-A Note at a significantly lower cost, by the issuance of new Floating Rate Notes (FRN) as the financing vehicle (the Proposed FRN Transaction).

36.   However, after receiving Visser and Kiebler's claim notices, the MFA, in consultation with the workgroup for the Proposed FRN Transaction and the underwriters, determined that that the Proposed FRN Transaction had to be placed on indefinite hold due to investor concerns over the uncertainty caused by the potential lawsuits.

37.   The closing of the Proposed FRN Transaction scheduled for March 25, 2013 was postponed.

38.   If MFA does not repay the Straight-A Note by November 19, 2013, it will be an Event of Default under the Straight-A Agreement. **Exhibit 9**, Straight A-Agreement, ¶6.01.

39.   The remedies for the Event of Default include the Straight-A program administrator selling the loans in a public auction, or exercising the right to sell the loans to the U.S. Department of Education at 97% of par. **Exhibit 9**, Straight-A Agreement, ¶6.02.

40.   MFA will suffer major economic losses—estimated at $54.2 million, minimally—if the Proposed FRN Transaction fails to close because of Visser and Kiebler's untimely claims, including:

      (i)    $18 million, as a result of the 3% discount from the sale of the loans to the U.S. Department of Education at 97%;

(ii) $26.5 million in lost excess upfront proceeds and the present value of the residual from the Proposed FRN Transaction; and

(iii) $9.7 million (on a present value basis) of administrative fees and servicing fees which would become payable to MFA through the term of the Proposed FRN Transaction.

41. Furthermore, the resulting default will harm the MFA by impairing its ability to issue bonded debt in areas of activity other than student loan financing by damaging the MFA's credit rating.

42. If Visser and Kiebler's claims are not held to be without merit by this Court with enough time to close the Proposed FRN Transaction—*which is mid-September 2013 in order to meet the November 19, 2013 deadline*, the MFA will suffer devastating losses estimated at $54.2 million.

43. As such, under MCR 2.605(A)(1), an actual case or controversy exists between MFA and Visser and Kiebler.

## Count I – Declaratory Judgment (Defendant Visser)

44. The preceding paragraphs of MFA's complaint are reincorporated by reference.

45. Visser cannot state a claim against MFA arising from the actions of its predecessor, MHESLA, for a number of reasons including, but not limited to:

    a. Visser's claim is untimely under MCL 600.6431(1) and thus barred because he did not file a Notice of Intention to File Claim with the Court of Claims within one year of MFA's June 30, 2010 termination of the MSF Program (i.e., on or before July 1, 2011);

    b. The borrower benefit programs were not contractual rights, and did not appear within the rights and obligations imposed on Visser by the terms of the Master Promissory Note;

11

    c. The MFA had the authority to revoke, rescind, or modify any of its borrower benefit programs at any time, including the MSF Program;

    d. Written materials distributed to the general public and posted online informed all borrowers and prospective borrowers that MSF Program could be revised or discontinued at any time;

    e. On December 23, 2008, Visser was also orally advised by Great Lakes that the MSF Program's borrower benefits were not part of the Master Promissory Note, were not rights granted by contract, and were a special benefit offered by the lender; and

    f. MFA was within its authority to terminate the MSF Program and provided notice of termination by letter dated June 10, 2010 to all borrowers including Visser.

46. If a declaratory judgment is not granted, including a ruling that Visser cannot legally maintain a claim against MFA, and the Proposed FRN Transaction fails to close on or before November 19, 2013 as a result, MFA will suffer serious economic loss in the amount of at least $54.2 million.

### Count II – Declaratory Judgment (Defendant Kiebler)

47. The preceding paragraphs of MFA's complaint are reincorporated by reference.

48. Kiebler cannot state a claim against MFA arising from the actions of its predecessor, MHESLA, for a number of reasons including, but not limited to:

    a. Kiebler's claim is untimely under MCL 600.6431(1) and thus barred because he did not file a Notice of Intention to File Claim with the Court of Claims within one year of MFA's June 30, 2010 termination of the MSF Program (i.e., on or before July 1, 2011);

    b. The borrower benefit programs were not contractual rights, and did not appear within the rights and obligations imposed on Kiebler by the terms of the Master Promissory Note;

12

      c.  The MFA had the authority to revoke, rescind, or modify any of its borrower benefit programs at any time, including the MSF Program;

      d.  Written materials distributed to the general public and posted online informed all borrowers and prospective borrowers that MSF Program could be revised or discontinued at any time;

      e.  MFA was within its authority to terminate the MSF Program and provided notice of termination by letter dated June 10, 2010 to all borrowers including Kiebler; and

      f.  Even if the MSF Program had not been properly revoked, Kiebler would not have qualified for MSF Program borrower benefits because he did not make his November 15, 2012 payment on-time, and 36 consecutive on-time monthly payments were required to receive the MSF Program's 0% interest borrower benefit.

49.    If a declaratory judgment is not granted, including a ruling that Kiebler cannot legally maintain a claim against MFA, and the Proposed FRN Transaction fails to close on or before November 19, 2013 as a result, MFA will suffer serious economic loss in the amount of at least $54.2 million.

      WHEREFORE, MFA respectfully requests that this Court enter an order ruling that neither Visser nor Kiebler may maintain a civil action against MFA arising out of the acts and occurrences alleged in their Notices of Intention to File Claim; that MFA, through its predecessor MHESLA, was entitled to take its June 30, 2010 action revoking its borrower benefit programs, including the MSF Program; and granting MFA any other legal or equitable relief to which it may be entitled.

Respectfully submitted,

Bill Schuette
Attorney General

*JJackson*

Jennifer M. Jackson (P67126)
Jason W. Johnson (P49033)
Assistant Attorneys General
Michigan Dept. of Attorney General
Attorneys for Plaintiff
State Operations Division
P.O. Box 30754
Lansing, Michigan 48909
(517) 373-1162

*M McManus* *JJ w/permission*

Molly E. McManus (P48911)
David S. Ludington (P74513)
Special Assistant Attorneys General
Warner Norcross & Judd LLP
Attorneys for Plaintiff
900 Fifth Third Center
111 Lyon St. N.W.
Grand Rapids, Michigan 49503
(616) 752-2000

Dated:  May 9, 2013

## Exhibit List

1. Michigan Students First Program brochure (7/2003 version)

2. Michigan Students First website screen shots

3. Exemplar of 6/10/2010 termination letter

4. Visser's Master Promissory Note dated 8/16/2004 (personal information redacted)

5. Visser's Notice of Intention to File Claim filed in the Court of Claims on 2/21/2013 and assigned notice no. 13-011455-NOI-C30

6. Kiebler's Master Promissory Note dated 4/4/2006 (personal information redacted)

7. Kiebler's Notice of Intention to File Claim filed in the Court of Claims on 2/21/2013 and assigned notice no. 13-011455-NOI-C30

8. Promissory Note from MHESLA to Straight-A Funding LLC dated 6/9/2010

9. Straight-A Funding Note Purchase Agreement dated 6/9/2010
   (Due to the size of this document—nearly 200 pages—only excerpts are included for this filing.  The full document will be provided upon request.)



## Participating Lenders

Contact us to request a list of the lenders that participate with MHESLA's State Secondary Market.

For additional information, or if we can assist you in any way, please contact our office at:

Michigan Higher Education
Student Loan Authority
P.O. Box 30051
Lansing, MI 48909

(517) 373-3662
(888) MHESLA-1
(888-643-7521)

Michigan.gov/mistudentaid
MHESLA@Michigan.gov

The Michigan Higher Education Student Loan Authority reserves the right to revise or discontinue offering the Michigan Students First program at any time.



Michigan Higher Education Student Loan Authority



# Michigan STUDENTS FIRST

The Michigan Department of Treasury is committed to providing equal access to all persons in admission to, access to, or operation of its programs or services. Individuals with disabilities needing accommodations for effective participation are invited to contact the Michigan Higher Education Student Loan Authority at 888-643-7521. TDD callers may access our office through the Michigan Relay Center at 800-649-3777 to request mobility, visual, hearing, dietary, or other assistance.

This material was prepared by the Michigan Higher Education Student Loan Authority (MHESLA) under the authority of Act No. 222 of the Public Acts of 1975, as amended, and printed in compliance with Executive Directive 1991-96. MHESLA complies with all federal laws and regulations prohibiting discrimination and with all requirements and regulations of the U.S. Department of Education.

02/2003

# No Fees!
# No Interest!
# Student Loans



# Michigan STUDENTS FIRST

In an effort to make college education more affordable for Michigan families, the Michigan Higher Education Student Loan Authority (MHESLA) is proud to present an exclusive borrower benefit program to save you money on your student loans.

Through Michigan Students First you can lower the cost of your student loans with:

- Reimbursement of Origination Fee
- Zero Percent (0%) Interest Rate

## Reimbursement of Origination Fee

Your eligible loans will automatically be credited with an amount equal to the three percent (3%) federal origination fee after the loans have been fully disbursed. At that time, you will be notified of your participation in the Michigan Students First program.

## Zero Percent (0%) Interest Rate

Make your first 36 monthly payments on time. After the 36th on-time payment, the interest rate on your loan will be reduced to zero percent (0%). That's right – ZERO!

The zero percent interest rate will continue as long as your loan remains current. You can keep your loan current by making on-time payments, or ineligible, by deferment and/or forbearance.

## How Do You Sign Up?

You don't! When you receive an eligible student loan from one of the lenders that participate with MHESLA's State Secondary Market or from MHESLA itself, you automatically qualify for the Michigan Students First program. Eligible loans are Federal Stafford and Federal PLUS loans first disbursed on or after January 1, 2003.

### *That's it ... Simple - Automatic!*



## Great Savings

Your savings depend on the amount of eligible student loans you have and the length of repayment. Following are examples of the approximate savings available through Michigan Students First.

## Federal Stafford Loans

This example assumes an interest rate of 4.06% (the federal interest rate through June 2003) and a ten-year repayment period.

| Loan Amt. | Orig. Fee | | Interest | | Savings |
|-----------|-----------|---|----------|---|---------|
| $ 5,000 | $150 | + | $ 557 | = | $ 707 |
| $10,000 | $300 | + | $1,114 | = | $1,414 |
| $15,000 | $450 | + | $1,671 | = | $2,121 |

## Federal PLUS Loans

This example assumes an interest rate of 4.86% (the federal interest rate through June 2003) and a ten-year repayment period.

| Loan Amt. | Orig. Fee | | Interest | | Savings |
|-----------|-----------|---|----------|---|---------|
| $ 5,000 | $150 | + | $ 679 | = | $ 829 |
| $10,000 | $300 | + | $1,359 | = | $1,659 |
| $15,000 | $450 | + | $2,039 | = | $2,489 |

## Electronic Payment Savings

If you would like to save even more, sign up for Electronic Payment Savings (EPS) and receive a one-quarter of one percent (.25%) interest rate reduction while making your first 36 monthly payments. Through EPS the amount of your monthly payment is automatically deducted each month from your checking or savings account. Once your interest rate has been reduced to zero, EPS still provides you with the convenience of automatic payments.

## Consolidation Loans

Federal Consolidation loans do not qualify for the Michigan Students First program. Therefore, borrowers will lose their zero percent interest benefit if they consolidate their Michigan Students First loans. Please be aware that the current statutory interest rate, and not the zero interest rate, will be used to calculate the consolidation loan interest rate.

*(888) MHESLA-1*  Michigan Higher Education Student Loan Authority


INTERNET ARCHIVE
WayBackMachine

13 captures
14 Sep 06 – 1 Jan 11

http://www.michigan.gov/mistudentaid/0,1607,7-128-38170_38175-111852-,00.h Go

SEP  APR  JUN    Close
◄  13  ►
2006  2007  2008    Help



**Paying for College**
**Student Financial Aid**



**Michigan.gov**
The Official State
of Michigan Website

Michigan.gov Home | Financial Aid Home | Sitemap | Contact Us | Financial Aid FAQ | Privacy Policy   Search    Advanced Search

🖶 Printer Friendly | T Text Version | ✉ Email Page | □ □ Text Size

### Michigan Students First

**Borrowers**

Current Rates and
Repayment Charts

**Michigan and**
**>Federal Loan**
**Programs**

Defaulted Student
>Loans

Repaying Student
>Loans

Finding Your Student
>Loans

All State of Michigan
>Programs

Financial Resources
>Database

**Prospective**
**Students**

**Financial Aid**
**Professionals**

**Lenders, Servicers,**
**Partners**

**About Us**

**Contact Us**

Departments/Agencies
Online Services
Surveys
RSS Feeds

**Related Content**
- Electronic Payment Savings (EPS)
- Michigan Advantage Consolidation
- Michigan Engineering Incentive

### Overview

In an effort to make college education more affordable for Michigan families, the Michigan Higher Education Student Loan Authority (MHESLA) is proud to present an exclusive borrower benefit to save you money on your student loans.

Through **Michigan Students First** (MSF) borrowers can lower the cost of their student loans with:

- Payment or Reimbursement of the Origination Fee
- Zero Percent (0%) Interest Rate
- PLUS Loan 7.9% Reduced Interest Rate

The Lansing State Journal, the Detroit News, the State News, the Greentree Gazette, and the Greentree Gazette Market Update have all praised Michigan Students First as a great savings for Michigan borrowers.

### Payment or Reimbursement of the Federal Origination Fee

The federal loan origination fee will either be paid on your behalf by your lender or your loan will be credited with an amount equal to the origination fee after it has been fully disbursed.

### Zero Percent (0%) Interest Rate

After the first 36 monthly on-time payments are received, the interest rate on your loan will be reduced to 0%.

The 0% interest rate will continue as long as your loan remains current. You can keep your loan current by payment, or if eligible, by deferment and/or forbearance.

### Federal PLUS Loan 7.9% Reduced Interest Rate

The Federal PLUS Loan interest rate is fixed at 8.5% for loans disbursed on or after July 1, 2006. With Michigan Students First, these Federal PLUS Loan borrowers receive a reduced interest rate of 7.9% on their loans.

### Enrollment

When you receive an eligible student loan from MHESLA or one of the many lenders that participate with MHESLA's State Secondary Market and has agreed to sell this loan to MHESLA, you are automatically enrolled in the Michigan Students First

program. Eligible loans are Federal Stafford and Federal PLUS loans first disbursed on or after January 1, 2003. Eligible Federal PLUS Loans include loans to both parents and graduate or professional students.

## Michigan Students First Savings

Your savings depend on the amount of eligible student loans you have and the length of repayment. Following are examples of the approximate savings available through Michigan Students First.

## Federal Stafford Loans

This example uses the 6.8% Federal Stafford Loan interest rate and a ten-year repayment period.

| Loan Amount | 2% Loan Origination Fee* | Interest | | Savings |
|---|---|---|---|---|
| $ 5,000 | $100 | + $ 995 | = | $1,095 |
| $10,000 | $200 | + $1,990 | = | $2,190 |
| $15,000 | $300 | + $2,984 | = | $3,284 |

*Federal Loan origination fee from 7/1/06 through 6/30/07.

## Federal PLUS Loans

This example uses the 8.5% Federal PLUS Loan interest rate and a ten-year repayment period.

| Loan Amount | Loan Origination Fee | Interest | | Savings |
|---|---|---|---|---|
| $ 5,000 | $150 | + $1,291 | = | $1,441 |
| $10,000 | $300 | + $2,582 | = | $2,882 |
| $15,000 | $450 | + $3,873 | = | $4,323 |

**Sign up for** Electronic Payment Savings **(EPS)** and receive a one-quarter of one percent (.25%) interest rate reduction while making your first 36 monthly payments. Through EPS the amount of your monthly payment is automatically deducted each month from your checking or savings account. Once your interest rate has been reduced to zero, the .25% interest rate reduction no longer applies, but EPS still provides you with the convenience of automatic payments.

## Consolidation Loans

Federal Consolidation Loans do not qualify for the Michigan Students First program. Therefore, if you consolidate loans in the Michigan Students First program, you will lose the zero percent interest benefit. Please be aware that the current statutory interest rate, and not the zero interest rate, will be used to calculate the consolidation loan interest rate. Please see the Borrower Interest Savings Comparison Chart.

## Participating Lenders

Obtain a list of the participating lenders that sell loans to MHESLA. Please consult with your school's Financial Aid Office prior to selecting a lender to ensure they participate with your school.

## Successful Repayment

If you run into financial difficulties while paying back your student loan(s), the worst thing you can do is simply miss payments or habitually be late in making them. There are several repayment options including deferments and forbearances that borrowers should not miss out on.

## Additional Questions

Borrowers with additional questions should visit the MSF Frequently Asked

Questions document or refer to the MSF Brochure.

For additional information, or if we can assist you in any way, please contact our office:

Lansing: (517) 373-3662
Toll Free: 888-MHESLA1 (888-643-7521)

TDD callers may access our office through the Michigan Relay Center at 800-649-3777

Michigan Higher Education
Student Loan Authority
P.O. Box 30051
Lansing, MI 48909

* MHESLA reserves the right to revise or discontinue offering borrower benefit options at any time.

Michigan.gov Home | Financial Aid Home | Sitemap | Contact Financial Aid | State Web sites
Privacy Policy | Link Policy | Accessibility Policy | Security Policy | Michigan News | Michigan.gov Survey

Copyright © 2001-2006 State of Michigan



# Michigan Students First*

The Michigan Students First benefits applied to eligible Federal Stafford Loans, Federal PLUS Loans, and Grad PLUS Loans first disbursed and purchased between January 1, 2003 through April 17, 2008.

## Overview

Through **Michigan Students First** (MSF) borrowers can lower the cost of their student loans with:

- Payment or reimbursement in an amount equal to the loan origination fee
- Reduced PLUS Loan interest rate to 7.9%
- Zero percent (0%) interest rate (after the first 36 monthly on-time payments)

### Payment or Reimbursement of the Federal Origination Fee

The federal loan origination fee was either paid on your behalf by your lender or your loan was credited with an amount equal to the origination fee after it has been fully disbursed.

### Zero Percent (0%) Interest Rate

After the first 36 monthly on-time payments are received, the interest rate on your loan will be reduced to 0%.

The 0% interest rate will continue as long as your loan remains current. You can keep your loan current by payment, or if eligible, by deferment and/or forbearance.

3/15/12                                        SFA - Michigan Students First*

### Federal PLUS Loan 7.9% Reduced Interest Rate

The Federal PLUS Loan interest rate is fixed at 8.5% for loans disbursed on or after July 1, 2006.
With Michigan Students First, these Federal PLUS Loan borrowers receive a reduced interest rate of
7.9% on their loans. PLUS loans were originally for parent borrowers. Effective July 1, 2006, graduate
and professional students may also apply for a PLUS loan, often referred to as a Grad PLUS loan.
Before applying, a graduate or professional student must first complete the Free Application for
Federal Student Aid and must be eligible for his or her maximum loan amount under the Federal
subsidized and unsubsidized Stafford Loan Program.

### Michigan Students First Savings

Your savings depend on the amount of eligible student loans you have and the length of repayment.

**Sign up for Electronic Payment Savings (EPS)** and receive a one-quarter of one percent (.25%)
interest rate reduction while making your first 36 monthly payments. Through EPS the amount of your
monthly payment is automatically deducted each month from your checking or savings account. Once
your interest rate has been reduced to zero, the .25% interest rate reduction no longer applies, but
EPS still provides you with the convenience of automatic payments.

### Consolidation Loans

Federal Consolidation Loans do not qualify for the Michigan Students First program. Therefore, if you
consolidate loans in the Michigan Students First program, you will lose the zero percent interest
benefit. Please be aware that the current statutory interest rate, and not the zero interest rate, will be
used to calculate the consolidation loan interest rate.

### Successful Repayment

If you run into financial difficulties while paying back your student loan(s), the worst thing you can do is
simply miss payments or habitually be late in making them. There are several repayment options
including deferments and forbearances that borrowers should not miss out on.

### Additional Questions

Borrowers with additional questions should visit the MSF Frequently Asked Questions document.
For additional information, or if we can assist you in any way, please contact our office:

Lansing: (517) 373-3662
Toll Free: 888-MHESLA1 (888-643-7521)

TDD callers may access our office through the Michigan Relay Center at 800-649-3777

Michigan Higher Education
Student Loan Authority
P.O. Box 30051
Lansing, MI 48909

* MHESLA reserves the right to revise or discontinue offering borrower benefit options at any time.

Copyright © 2001-2009 State of Michigan



3/15/12                                                    SFA - Michigan Students First*

INTERNET ARCHIVE   http://www.michigan.gov/mistudentaid/0,1607,7-128-38170_38175_38901-111852--   Go          MAY   DE

**34 captures**                                                                                                    **6**
22 Aug 06 - 29 Dec 10                                                                                         2009   201

# Paying for College
## Student Financial Aid

**Michigan.gov**
The Official State of Michigan Website

Michigan.gov Home | Financial Aid Home | Sitemap | Contact Us | Financial Aid FAQ | Privacy Policy   Search

**Borrowers**

> Current Rates, Repayment Charts, and Calculator
> **Michigan and Federal Loan Programs**
> Defaulted Student Loans
> Repaying Student Loans
> Finding Your Student Loans
> All State of Michigan Programs
> Financial Resources Database
> John R. Justice

**Students and Parents**

**Financial Aid Professionals**

**Lenders, Servicers, Partners**

**About Us**

**Contact Us**

P Printer Friendly   T Text Version          Text Size   Share

## Michigan Students First*

The Michigan Students First benefits applied to eligible Federal Stafford Loans, Federal PLUS Loans, and Grad PLUS Loans first disbursed and purchased between January 1, 2003 through April 17, 2008. Effective June 30, 2010, student loans with MHESLA will no longer become eligible for an interest rate subsidy from MHESLA. If a borrower's 36th payment is due on or before July 31, 2010, by making this payment on or before June 30, 2010, the loan may still qualify for the reduced interest rate benefit (all future payments must be made on time).

### Overview

Through **Michigan Students First** (MSF) borrowers can lower the cost of their student loans with:

- Payment or reimbursement in an amount equal to the loan origination fee
- Reduced PLUS Loan interest rate to 7.9%
- Zero percent (0%) interest rate (after the first 36 monthly on-time payments)

### Payment or Reimbursement of the Federal Origination Fee

The federal loan origination fee was either paid on your behalf by your lender or your loan was credited with an amount equal to the origination fee after it has been fully disbursed.

### Zero Percent (0%) Interest Rate

After the first 36 monthly on-time payments are received, the interest rate on your loan will be reduced to 0%.

The 0% interest rate will continue as long as your loan remains current. You can keep your loan current by payment, or if eligible, by deferment and/or forbearance.

### Federal PLUS Loan 7.9% Reduced Interest Rate

The Federal PLUS Loan interest rate is fixed at 8.5% for loans disbursed on or after July 1, 2006. With Michigan Students First, these Federal PLUS Loan borrowers receive a reduced interest rate of 7.9% on their loans. PLUS loans were originally for parent borrowers. Effective July 1, 2006, graduate

and professional students may also apply for a PLUS loan, often referred to as a Grad PLUS loan. Before applying, a graduate or professional student must first complete the Free Application for Federal Student Aid and must be eligible for his or her maximum loan amount under the Federal subsidized and unsubsidized Stafford Loan Program.

### Michigan Students First Savings

Your savings depend on the amount of eligible student loans you have and the length of repayment.

**Sign up for Electronic Payment Savings (EPS)** and receive a one-quarter of one percent (.25%) interest rate reduction while making your first 36 monthly payments. Through EPS the amount of your monthly payment is automatically deducted each month from your checking or savings account. Once your interest rate has been reduced to zero, the .25% interest rate reduction no longer applies, but EPS still provides you with the convenience of automatic payments.

**Consolidation Loans**

Federal Consolidation Loans do not qualify for the Michigan Students First program. Therefore, if you consolidate loans in the Michigan Students First program, you will lose the zero percent interest benefit. Please be aware that the current statutory interest rate, and not the zero interest rate, will be used to calculate the consolidation loan interest rate.

**Successful Repayment**

If you run into financial difficulties while paying back your student loan(s), the worst thing you can do is simply miss payments or habitually be late in making them. There are several repayment options including deferments and forbearances that borrowers should not miss out on.

**Additional Questions**

Borrowers with additional questions should visit the MSF Frequently Asked Questions document.

For additional information, or if we can assist you in any way, please contact our office:

Lansing: (517) 373-3662
Toll Free: 888-MHESLA1 (888-643-7521)

TTY callers may access our office through the Michigan Relay Service at 800-649-3777

MHESLA
P.O. Box 30051
Lansing, MI 48909

* MHESLA reserves the right to revise or discontinue offering borrower benefit options at any time.

Copyright © 2001-2009 State of Michigan



G

June 10, 2010

<<Name>>
<<AddressLine1>>
<<AddressLine2>>
<<City>>, <<State>> <<Zip>>

Dear <<Name>>:

This is to advise you that effective June 30*, your student loan(s) with the Michigan Higher Education Student Loan Authority (MHESLA) will no longer become eligible for an interest rate subsidy from MHESLA. The economic downturn and the negative impact of certain federal legislation have left funding insufficient to continue offering borrower benefits. Originally announced in 2002, this subsidy known as a "borrower benefit" was achieved by meeting certain repayment conditions. Under the program terms, MHESLA's ability to offer the borrower benefits was contingent upon sufficient funding.

MHESLA obtains the funds to make or acquire student loans by borrowing money through bond issuances. The borrower benefits programs began at a time when it was less costly for MHESLA to borrow and excess interest earnings were available. Recently though, the severe and ongoing credit crisis has forced MHESLA to pay more in interest costs for its funds. Changes in federal laws, including the College Cost Reduction and Access Act of 2007, have also resulted in a decrease in MHESLA's available funding for borrower benefit programs.

MHESLA's borrower benefit incentives subject to this action include the following:
- Prompt Pay Savings (loans made in 1997-2002)
- Michigan Students First (loans made in 2003-2008)
- Michigan Engineering Incentive (loans made in 2005-2008)
- Michigan Advantage Consolidation (loans made in 2005-2008)

The 0.25% interest rate reduction benefit will continue to be provided for borrowers who elect to make their monthly loan payments through the Electronic Payment Savings Program. Otherwise your monthly payment obligation will remain the same.

You are not required to respond to this notice. However, given this change you may want to evaluate your repayment options such as consolidating your loans, which may reduce your monthly payment amount. Consolidation information and application can be found at **www.loanconsolidation.ed.gov**. To review all available repayment options, visit the Federal Department of Education's Web site at **www.studentaid.ed.gov**. A summary of the repayment options are enclosed for your convenience.

Account information is available through MHESLA's Web site **www.mistudentloans.com**. If you have questions regarding your MHESLA loans you may e-mail your questions, including your full name and last four digits of your Social Security Number, to MHESLA@Michigan.gov, or call toll-free (888) 643-7521.

                              Sincerely,
                              MHESLA

Enclosure

---

* If your 36th payment is due on or before July 31, 2010, by making this payment on or before June 30, 2010, your loan may still qualify for the reduced interest rate benefit (all future payments must be made on time).

**Federal Family Education Loan Program (FFELP)**   Guarantor, Program, or Lender Identification

OMB No. 1845-0006
Form approved
Exp. date 9-30-2005

# Federal Stafford Loan
## Master Promissory Note

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties which may include fines, imprisonment, or both, under the United States Criminal Code and 20 U.S.C. 1097.



GREAT LAKES
HIGHER EDUCATION GUARANTY CORPORATION

### Borrower Information
*Please print neatly or type. Read the instructions carefully.*

| 1. Last Name | First Name | MI | 2. Social Security Number |
|---|---|---|---|
| VISSER | DONOVAN | J | |

| 3. Permanent Street Address (If P.O. Box, see instructions) | | | 4. Home Area Code/Telephone Number | 5. Date of Birth (Month/Day/Year) |
|---|---|---|---|---|

| City | State | Zip Code |
|---|---|---|
| | MI | 49519 |

| 6. Driver's License State and Number | 7. E-mail Address |
|---|---|
| State MI # | |

| 8. Lender Name | City | State | Zip Code | 9. Lender Code, if known |
|---|---|---|---|---|
| MSU-DETROIT COLLEGE | EAST LANSING | MI | 48824 | 834045 |

10. References: You must provide two separate references with different U.S. addresses. The first reference should be a parent (if living) or legal guardian. Both references must be completed in full.

| | A. | DONALD R. VISSER | B. | AL RIETBERG |
|---|---|---|---|---|
| Name | | | | |
| Permanent Address | | | | |
| City, State, Zip Code | | | | |
| E-mail Address | | | | |
| Area Code/Telephone Number | | | | |
| Relationship to Borrower | | PARENT | | OTHER |

11. Requested Loan Amount: I request a total amount of subsidized and unsubsidized loans under this Master Promissory Note not to exceed the allowable maximums under the Higher Education Act. My school will notify me of the type(s) and amount(s) of loan(s) that I am eligible to receive. I may cancel my loan or request a lower amount by contacting my lender or school. Additional information about my loan status is included in the Borrower's Rights and Responsibilities Statement and Disclosure Statements that have been or will be provided to me.

12. Interest Payments (Optional):
☑ I want to pay unsubsidized interest while I am in school.

### Borrower Certifications and Authorizations
*Read carefully before signing below.*

13. Under penalty of perjury I certify that:
A. The information I have provided on this Master Promissory Note and as updated by me from time to time is true, complete, and correct to the best of my knowledge and belief and is made in good faith.
B. I will immediately repay any loan proceeds that cannot be attributed to educational expenses for attendance on at least a half-time basis at the school that certified my loan eligibility.
C. (i) I do not now owe an overpayment on a Federal Pell Grant, Supplemental Educational Opportunity Grant, or a Leveraging Educational Assistance Partnership Grant (formerly State Student Incentive Grant); or, if I owe an overpayment, I have made repayment arrangements with the holder to repay the amount owed. (ii) I am not now in default on any loan received under the Federal Perkins Loan Program (including NDSL loans), the Federal Direct Loan Program, or the Federal Family Education Loan Program ("FFELP" as defined in the Borrower's Rights and Responsibilities Statement); or (iii) I am in default on a loan, and I have made satisfactory arrangements with the holder of the defaulted loan.
14. For all subsidized and unsubsidized Federal Stafford Loans (as described in the additional MPN provisions and the Borrower's Rights and Responsibilities Statement) I receive under this Master Promissory Note, and for certain other loans as described below, I make the following authorizations:
A. I authorize my school to certify my eligibility for loans under this Master Promissory Note.
B. I authorize my school to transfer loan proceeds received by electronic funds transfer (EFT) or master check to my student account.

C. I authorize my school to pay to the lender any refund that may be due up to the full amount of the loan(s).
D. I authorize the lender, the guarantor, or their agents, to investigate my credit record and report information concerning my loan status to persons and organizations permitted by law to receive such information.
E. I request and authorize my lender to: (i) during the in-school and grace periods of any loans made under this Master Promissory Note, defer and align the repayment of principal on all of my FFELP loans that are in repayment status; and (ii) add unpaid interest that accrues on all of my FFELP loans to the principal balance of such loans ("capitalization") including such loans made under this Master Promissory Note, during forbearance periods, and for unsubsidized loans, during in-school, grace, and deferment periods as provided under the Act. "Capitalization" will increase the principal balance on my loans and the total amount of interest charges I must pay.
F. I authorize the release of information pertinent to my loans: (i) by the school, the lender, and the guarantor, or their agents, to the references on the applicable loans and to members of my immediate family unless I submit written directions otherwise; and, (ii) by and among my schools, lenders, guarantors, the Department of Education, and their agents.
G. So that the loans requested can be approved, I authorize the Department of Education to send any information that I provide on the Free Application for Federal Student Aid, to the school, the lender, and to state agencies and nonprofit organizations that administer financial aid programs under the FFELP.

### Promise to Pay
*In this Master Promissory Note (MPN), "I", "me", "my", and "borrower" refers to, and this MPN benefits, the original holder and its successors and assigns, including any subsequent holder of this MPN.*

15. I promise to pay to the order of the lender all loan amounts disbursed under the terms of this MPN, plus interest and other charges and fees that may become due as provided in this MPN. I understand that multiple loans may be made to me under this MPN. I understand that by accepting any disbursements issued at any time under this MPN, I agree to repay the loans. I understand that, within certain time frames, I may cancel or reduce the amount of any loan by refusing to accept or by returning all or a portion of any disbursement that is issued. Unless I make interest payments, interest that accrues on my unsubsidized loans during in-school, grace, and deferment periods will be added as provided under the Act to the principal balance of such loans. If I do not make any payment on any loan made under this MPN when it is due, I will also pay any reasonable collection costs, including but not limited to attorney's fees, court costs, and other fees. I will not sign this MPN before reading the entire MPN, even if I am told not to read it, or told that I am not required to read it. I am entitled to an exact copy of this MPN and the Borrower's Rights and Responsibilities Statement. My signature certifies I have read, understand, and agree to the terms and conditions of this MPN, including the Borrower Certifications and Authorizations printed above, the Notice About Subsequent Loans Made Under This MPN, and the Borrower's Rights and Responsibilities Statement.

**I UNDERSTAND THAT I MAY RECEIVE ONE OR MORE LOANS UNDER THIS MPN, AND THAT I MUST REPAY ALL LOANS THAT I RECEIVE UNDER THIS MPN.**

E-SIGN TOKEN:   sldata=386927992V119750521&timestamp=2004-08-16-09.41.26.000000&vas=02478
SER,DONOVAN,J&attempts=1&status=User Passed

| 16. Borrower's Signature   ELECTRONIC SIGNATURE ON FILE WITH GL | 17. Today's Date (Month/Day/Year)   08-16-2004 |
|---|---|

*Additional MPN provisions follow*

# Master Promissory Note (continued)

**Disclosure of Loan Terms**

This MPN applies to both subsidized and unsubsidized Federal Stafford Loans described in the Interest section below. I agree that the lender may sell or assign this MPN and/or my loans and acknowledge that any loan may be assigned independently of any other loan to which this MPN applies. I agree that each loan is separately enforceable based on a true and exact copy of this MPN. Loans disbursed under this MPN are subject to the annual and aggregate loan limits specified in the Higher Education Act of 1965, as amended, 20 U.S.C. 1070, et seq., and applicable U.S. Department of Education regulations (collectively referred to as the "Act"). Under this MPN, the principal amount that I owe, and am required to repay, will be the sum of all disbursements issued (unless I reduce or cancel any disbursements as provided below).

My lender will determine whether to make any loan under this MPN after my loan eligibility is determined by the school where I am enrolled on at least a half-time basis. At or before the time of the first disbursement of each loan, a disclosure statement will be sent to me identifying the amount of the loan and additional terms of the loan. Important additional information is also disclosed in the Borrower's Rights and Responsibilities Statement accompanying this MPN. The Borrower's Rights and Responsibilities Statement and any disclosure statement I receive in connection with any loan under this MPN are hereby incorporated into this MPN.

I may request additional loan funds for my educational costs (up to the annual and aggregate loan limits). If my school determines that I am eligible for any additional or adjusted loan amount, my school may certify such amount. My eligibility for subsidized and/or unsubsidized loans may change based on changes in my financial circumstances. My school will notify me of any changes in my eligibility. I will be notified of any changes or additions to my subsidized and/or unsubsidized loans in a separate disclosure statement.

**Loan Cancellation**

I may pay back all or a part of a disbursement within timeframes set by the Act, as explained in the Borrower's Rights and Responsibilities Statement or other disclosure statement I receive at or before disbursement. In such case, the origination fee and guarantee fee will be reduced or eliminated in proportion to the amount of the disbursement returned within those timeframes. I will not have to pay interest charges if I return the full loan amount as provided in the Act.

**Interest**

Unless my lender notifies me in writing of a lower rate(s), the rate(s) of interest for my loans are those specified in the Act. The interest rate information is presented in the Borrower's Rights and Responsibilities Statement accompanying this MPN. The interest rate is presented in a disclosure statement that is issued to me.

Interest accrues on the unpaid principal balance of each loan from the date of disbursement by the lender until the loan is paid in full. I agree to pay all interest charges on my subsidized Federal Stafford Loans except interest payable by the federal government under the Act. I agree to pay all interest charges on my unsubsidized Federal Stafford Loans. If I fail to make required payments of interest before the beginning or resumption of principal repayment, or during a period of deferment or forbearance, I agree that the lender may capitalize such interest as provided under the Act. There is no federal interest subsidy on unsubsidized loans, so the total amount of interest I am required to repay on unsubsidized loans will be higher than on subsidized loans.

**Origination Fee and Guarantee Fee**

For each subsidized and unsubsidized loan, the federal government charges an origination fee equal to the amount required by the Act. The guaranty agency(ies) that guarantee(s) my loan(s) (in each case, the "guarantor") may charge a per loan guarantee fee not to exceed a maximum amount specified in the Act. I will pay these fees, as

---

identified in the disclosure statement, which will be deducted proportionately from each disbursement of my loans. I understand that the origination and guarantee fees may be refundable only to the extent permitted by the Act.

**Late Charges and Collection Costs**

The lender may collect from me: (i) a late charge for each late installment payment if I fail to make any part of a required installment payment within 15 days after it becomes due, and (ii) any other charges and fees that are permitted by the Act for the collection of my loans. If I default on any loans, I will pay reasonable collection fees and costs, plus court costs and attorney fees.

**Repayment**

I must repay the full amount of the loans made under this MPN and accrued interest. Federal Stafford Loans have a repayment grace period, which will be disclosed in my disclosure statement. I will repay the principal of each loan in periodic installments during a repayment period that begins on the day immediately following the end of the applicable grace period. Payments submitted by me or on my behalf (exclusive of refunds) may be applied first to charges and collection costs that are due, then to accrued interest that has not been capitalized, and finally to the principal amount.

I understand that the school's certification of my loan eligibility determines whether my loans must be repaid as subsidized and/or unsubsidized loans.

The lender will provide me with a repayment schedule that identifies my payment amounts and due dates. Except as otherwise provided in the Act, the minimum annual payment required on all my FFELP loans is $600 or the amount of interest due and payable, whichever is larger. My lender must provide me with a choice of repayment plans consistent with the provisions of the Act.

If I am unable to make my scheduled loan payments, the lender may allow me to reduce my payment amount, to extend the time for making payments, or to temporarily stop making payments as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called forbearance. The lender may align payment dates on my loans or grant me a forbearance to eliminate a delinquency that persists even though I am making scheduled payments.

I may prepay all or any part of the unpaid balance on my loans at any time without penalty. If I do not specify which loans I am prepaying, the lender will determine how to apply the prepayment in accordance with the Act. Upon repayment in full of each loan under this MPN, I agree to accept written notification of such loan payoff in place of receiving the original MPN.

**Acceleration and Default**

At the option of the lender, the entire unpaid balance of the applicable loan(s) made under this MPN will become immediately due and payable, (this is called "acceleration"), upon the occurrence of any one of the following events: (i) I fail to enroll as at least a half-time student at the school that certified my loan eligibility, (ii) I fail to use the proceeds of the loan solely for educational expenses, (iii) I make a false representation(s) that results in my receiving a loan for which I am not eligible, or (iv) I default on the loan.

The following events shall constitute a default on my loan: (i) I fail to pay the entire unpaid balance of the applicable loans after the lender has exercised its option under items (i), (ii), or (iii) in the preceding paragraph; (ii) I fail to make installment payments when due, provided my failure has persisted for at least 270 days for payments due monthly or 330 days for payments due less frequently than monthly; or (iii) I fail to comply with other terms of the loans, and the lender or guarantor reasonably concludes I no longer intend to honor my repayment obligation. If I default, the guarantor may purchase my loans and capitalize all then-outstanding interest into a new principal balance, and collection fees will become immediately due and payable.

---

If I default, the default will be reported to all national credit bureaus and will significantly and adversely affect my credit history. I acknowledge that a default shall have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities Statement. Following default, the loans may be subject to income-contingent repayment (including potential collection of amounts in excess of the principal and interest) in accordance with the Act.

**Governing Law and Notices**

The terms of this MPN will be interpreted in accordance with the applicable federal statutes and regulations, and the guarantor's policies. Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this MPN.

If a particular loan under this MPN is made by the school, or if the proceeds of a particular loan made under this MPN are used to pay tuition and charges of a for-profit school that refers loan applicants to the lender, or that is affiliated with the lender by common control, contract, or business arrangement, any lender holding such loan is subject to all claims and defenses that I could assert against the school with respect to such loan. My recovery under this provision shall not exceed the amount I paid on such loan.

If I reside in the state in which the principal office of the guarantor is located, the guarantor may sue to enforce the applicable loans in the county in which the guarantor's office is located. However, if I object to being sued there and I mail a written objection to the guarantor that is postmarked no later than 30 days after I am served with the suit, the guarantor will either have the court transfer the suit to the county in which I live or will dismiss the lawsuit.

Any notice required to be given to me will be effective if sent by first class mail to the latest address the lender has for me or by electronic means to an electronic address that I have provided. I will immediately notify the lender of any change of address or status as specified in the Borrower's Rights and Responsibilities Statement. Failure by the lender to enforce or insist on compliance with any term on this MPN shall not be a waiver of any right of the lender. No provision of this MPN may be modified or waived except in writing. If any provision of this MPN is determined to be unenforceable, the remaining provisions shall remain in force.

**Notice About Subsequent Loans Made Under This Master Promissory Note**

This Master Promissory Note authorizes the lender to disburse multiple loans during the multi-year term of this MPN upon my request and upon the school's certification of my loan eligibility. Subsequent loans may be made under this MPN for the same or subsequent periods of enrollment only at schools designated by the Secretary of the U.S. Department of Education.

I understand that no subsequent loans will be made under this MPN after the earliest of the following dates: (i) the date my lender receives my written notice that no further loans may be disbursed under the MPN; (ii) one year after the date of my signature on this MPN if no disbursement is made during such twelve month period; or (iii) ten years after the date of my signature on this MPN or the date the lender receives this MPN.

Any amendment to the Act governs the terms of any loans disbursed on or after the effective date of such amendment, and such amended terms are hereby incorporated into this MPN.

(12/02)

| **Federal Family Education Loan Program (FFELP)** | Guarantor, Program, or Lender Identification |
|---|---|
| **Federal Stafford Loan**<br>**Master Promissory Note**<br>**Instructions and Notices** |  |

## Instructions for Completing Promissory Note

*This is a Master Promissory Note under which you may receive multiple subsidized and unsubsidized Federal Stafford Loans over a maximum ten year period. Except for interest charges the federal government pays on your behalf on subsidized Federal Stafford Loans while you are in school and during your grace and deferment periods, you are responsible for paying interest on the principal amount of your loans from the date of disbursement until the loans are paid in full.*

*Use a dark ink ball point pen or typewriter. Do not complete this form in pencil. If an item has been completed for you and any part of it is incorrect, cross out the incorrect information and print the correct information. Incorrect, incomplete, or illegible information may cause your loan to be delayed.*

**Item 1:** Enter your last name, then your first name and middle initial.

**Item 2:** Enter your nine-digit Social Security Number. If this item has been completed for you, review it for correctness. If it is incorrect, cross out the entire incorrect number and print the entire correct Social Security Number in this box. Your loan(s) cannot be processed without a Social Security Number. Read the Privacy Act and the Financial Privacy Act Notices below before completing this item.

**Item 3:** Enter your permanent home street address, apartment number, city, state, and zip code. If you have a Post Office Box and a street address, list both. A temporary school address is not acceptable.

**Item 4:** Enter the area code and telephone number for the address listed in Item 3. If you do not have a telephone, enter N/A.

**Item 5:** Using only numbers, enter the month, day, and four-digit year of your birth. (For example, for June 24, 1982, you would enter 06/24/1982). Be careful not to enter the current year.

**Item 6:** Enter the two-letter abbreviation for the state

that issued your driver's license followed by the driver's license number. If you do not have a driver's license, enter N/A.

**Item 7:** Enter your preferred e-mail address if you have one. You are not required to provide this information. If you do, we may use your e-mail address to communicate with you. If you do not have an e-mail address or do not wish to provide one, write N/A.

**Item 8:** Enter the name and address of the lender from which you wish to borrow. If you do not have a lender, contact your school's financial aid office, a bank or other financial institution, or the guarantor or program listed on this form for information on lenders willing to make loans to students attending your school.

**Item 9:** If you know the lender code, enter it here. Otherwise, leave this item blank.

**Item 10:** Enter the requested reference information for two adults who do not share a common address. The first reference should be a parent (if living), legal guardian, or an adult relative. References with addresses outside the U.S. are not acceptable. Both references must be completed in full.

If a reference does not have a telephone or an e-mail address or does not wish to provide an e-mail address, write N/A. If you provide an e-mail address for a reference, the lender or holder of your loan(s) may use it to communicate with the reference. All requested items must be completed or your loan(s) will be delayed.

**Item 11:** Your school will notify you of the amount of subsidized and unsubsidized Federal Stafford loans you are eligible to receive for this and subsequent academic periods. You may decline a loan or request a lower amount by contacting your lender or school. Additional information is included under "Loan Cancellation" in the Borrower's Rights and Responsibilities Statement.

**Item 12:** Check this box only if you want to make interest payments while in school.

**Items 13, 14, and 15:** Read these items carefully.

**Item 16:** Sign your legal name, including your first name, middle initial, and last name. Use a dark ink ballpoint pen, if you are completing a paper copy of this MPN.

**Item 17:** Enter the date you are signing this MPN.

## Important Notices

### Privacy Act Notice

The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:

The authority for collecting the requested information from and about you is §428(b)(2)(A) et seq. of the Higher Education Act of 1965, as amended (20 U.S.C. 1078(b)(2)(A) et seq.) and the authority for collecting and using your Social Security Number (SSN) is §484(a)(4) of the HEA (20 U.S.C. 1091(a)(4)). Participating in the Federal Family Education Loan Program (FFELP) and giving us your SSN is voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge or forgiveness) under the FFELP, to permit the servicing of your loan(s) and, if it becomes necessary, to locate you and to collect on your loan(s) if your loan(s) become delinquent or in default. We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed to third parties as authorized under routine uses in the appropriate systems of records. The routine uses of this information include its disclosure to federal, state, or local agencies, to other federal agencies under computer matching programs, to agencies that we authorize to assist us in administering our loan

programs, to private parties such as relatives, present and former employers, business and personal associates, to credit bureau organizations, to educational and financial institutions, to guaranty agencies and to contractors in order to verify your identity, to determine your eligibility to receive a loan(s) or a benefit on a loan(s), to permit the servicing or collection of your loan(s), to counsel you in repayment efforts, to enforce the terms of the loan(s), to investigate possible fraud and to verify compliance with federal student financial aid program regulations, to locate you if you become delinquent in your loan payments or if you default, to provide default rate calculations, to provide financial aid history information, to assist program administrators with tracking refunds and cancellations, or to provide a standardized method for educational institutions to efficiently submit student enrollment status.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

### Financial Privacy Act Notice

Under the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401-3421), the U.S. Department of Education will have access to financial records in your student loan file maintained by the lender in compliance with the administration of the Federal Family Education Loan Program.

### Paperwork Reduction Notice

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0006. The time required to complete this information is estimated to average 1.0 hours (60 minutes) per response, including the time to review instructions, search existing data resources, gather and maintain the data needed, and complete and review the information collection. If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to the U.S. Department of Education, Washington, DC 20202-4651.

If you have questions regarding the status of your submission of this form, contact the lender, guarantor, or program identified in the upper right-hand corner of this form.

(12/02)

# Borrower's Rights and Responsibilities Statement

**Important Notice:** The Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of loans you receive under the Federal Stafford Loan Master Promissory Note (MPN). Please keep a copy of this statement because it applies to present and subsequent loans received under the MPN. You may contact your lender at any time for another copy of this statement.

The Federal Family Education Loan Program (FFELP) includes the following loans:

- Subsidized Federal Stafford Loan (formerly known as Guaranteed Student Loan [GSL]),
- Unsubsidized Federal Stafford Loan,
- Federal Insured Student Loan (FISL),
- Federal Supplemental Loans for Students (SLS), also known as ALAS,
- Federal PLUS (parent) Loan,
- Federal Consolidation Loan.

The FFELP is authorized by Title IV, Part B of the Higher Education Act of 1965, as amended.

**1. Governing Law** — Loans disbursed under this Master Promissory Note (MPN) are subject to the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), and applicable U. S. Department of Education regulations (collectively referred to as the 'Act'). NOTE: Any change to the Act applies to the terms of any loans made on or after the effective date of the change.

**2. Use of this MPN** — I may receive more than one loan under this MPN over a period of up to ten years. Whether I may receive loans under this MPN for only one academic period, or for multiple academic periods, depends on the school I am attending. I may receive loans under this MPN from the original lender, or a lender who assumes the right to offer loans under this MPN, even if I change my school (provided the school is authorized to certify subsequent loans under this MPN) and even if the guaranty agency changes. I must sign a new MPN if I wish to receive loans from a lender other than my original lender, or a lender who assumes the right to offer me loans under this MPN.

**3. Subsidized and Unsubsidized Loans** — There are two types of Federal Stafford Loans that I may be eligible for under this MPN: subsidized and unsubsidized. The subsidized Federal Stafford Loan is based on need. If I qualify, the government pays the lender the interest due on my subsidized loans while I am in school and during grace and deferment periods ('lender' refers to the original lender and its successors, including any subsequent holder of this MPN). I am otherwise responsible for interest that accrues on my subsidized loan. The unsubsidized Federal Stafford Loan is not based on need. I am responsible for all interest that accrues on my unsubsidized loans.

**4. Maximum Program Loan Amounts** — Under the Federal Stafford Loan Program (including both subsidized and unsubsidized loans), I may borrow amounts under this MPN up to and including the dollar amounts shown in the chart on this page (Federal Stafford Loan Maximums).

I am subject to the limits on these loan amounts on the basis of the following:

| Federal Stafford Loan Maximums[1] | | |
|---|---|---|
| **DEPENDENT UNDERGRADUATES**[2] | **Subsidized** | **Total** (Subsidized & Unsubsidized)[3] |
| First Year | $2,625 | $2,625 |
| Second Year | $3,500 | $3,500 |
| Third Year and Beyond | $5,500 | $5,500 |
| **INDEPENDENT UNDERGRADUATES** (and dependents whose parents are unable to borrow under the PLUS program) | | |
| First Year | $2,625 | $6,625 |
| Second Year | $3,500 | $7,500 |
| Third Year and Beyond | $5,500 | $10,500 |
| **GRADUATE AND PROFESSIONAL STUDENTS** | $8,500 | $18,500 |
| | **AGGREGATE LIMITS**[3] | |
| **DEPENDENT UNDERGRADUATES** | $23,000 | $23,000 |
| **INDEPENDENT UNDERGRADUATES** (and dependents whose parents are unable to borrow under the PLUS program) | $23,000 | $46,000 |
| **GRADUATE AND PROFESSIONAL STUDENTS** | $65,500 | $138,500 |

[1]   Certain health professions students may qualify for higher limits.
[2]   All undergraduate annual loan limits are subject to proration.
[3]   If the borrower does not have financial need for a subsidized Federal Stafford Loan using expected family contribution (EFC), or has reached the aggregate limit in subsidized Federal Stafford Loans, the borrower may receive up to and including this entire amount in unsubsidized Federal Stafford Loans assuming he or she has remaining eligibility for the loan.

- My academic level (freshman, sophomore, etc.),
- My status as a dependent student or independent student,
- The length of the academic program in which I am enrolled,
- The length of the remainder of my undergraduate program of study if it is less than one academic year, and
- As otherwise authorized by the Act.

**5. Maximum Individual Loan Limits** — For each academic period, my school determines the maximum loan amount I am eligible to receive by considering the factors in Section 4 above and other factors such as my Cost of Attendance, Expected Family Contribution, and other financial aid awarded to me. If my school awards both subsidized Federal Stafford Loans and unsubsidized Federal Stafford Loans, it is required to determine my eligibility for a subsidized Federal Stafford Loan before determining my eligibility for an unsubsidized Federal Stafford Loan.

If I have received student loans from more than one lender or from other federal student loan programs, I am responsible for informing my school and my lender of my other student loans. In some cases, I may not be eligible for loans for which I have applied.

**6. Use of Loan Money** — I must use the loan money for authorized educational expenses for attendance at the school that certified my eligibility for the time period shown on my disclosure statement. Authorized expenses include the following:

- Tuition,
- Room,
- Board,
- Institutional fees,
- Books,
- Supplies,
- Equipment,
- Dependent child care,
- Transportation,
- Commuting expenses,
- Rental or purchase of a personal computer,
- Origination fee and guarantee fee, and/or
- Other documented, authorized costs.

**7. Loan Fees** — I may be charged an origination fee and/or a guarantee fee for each loan made under this MPN. Neither fee may exceed the rate as specified in the Act. The amount of these fees will be deducted proportionately from each disbursement.

**8. Disbursement of Loan Money** — Generally, my loan money will be disbursed to my school in multiple installments based on the academic terms at my school. If my school does not have academic terms, my loan money will generally be disbursed in at least two installments, one at the beginning and one at the midpoint of my enrollment period for the applicable loans.

If I am enrolled in a foreign school, or in a study abroad program through a school in the U.S. (home institution), the disbursement requirements stated above do not apply and:

■ The loan money may be sent in one installment directly to me, or

■ I may provide my foreign school or home institution, as applicable, a written authorization designating an individual not affiliated with the foreign school or home institution as my power-of-attorney to negotiate any loan disbursements on my behalf.

Loan money may be credited to my account at my school or disbursed by a check or other means made payable to me.

If this is my first student loan under either the Direct Loan Program or the FFELP, I must receive entrance counseling before the first disbursement of my subsidized or unsubsidized Federal Stafford Loan can be made.

**9. Change of Status** — I must notify my school and/or lender of certain changes.

I must notify my school's financial aid office if any of the following events take place:

■ I reduce my enrollment status to less than half time,
■ I withdraw from school,
■ I stop attending classes,
■ I fail to re-enroll for any term,
■ I have a change in my expected graduation date, and/or
■ I change my name, local address, permanent address, or e-mail address.

Shortly before my enrollment ends, I must participate in exit counseling with my school, during which I will update my loan records about my:

■ Permanent address,
■ E-mail address,
■ Telephone number,
■ Future employer, and
■ References.

I must notify the lender of a particular loan if I fail to enroll with respect to such loan:

■ At least half time for the loan period certified, or
■ At the school that certified my eligibility.

I must promptly notify my lender(s) if any of the following events occur before loans held by my lender(s) are repaid:

■ I change my address, telephone number, or e-mail address
■ I change my name (for example, maiden name to married name),
■ I withdraw from school or begin attending less than half time,
■ I transfer from one school to another school,
■ I change my employer or my employer's address or telephone number changes, and/or
■ I have any other change in status that would affect my

loan (for example, the loss of eligibility for an unemployment deferment by obtaining a job).

**10. Effect of Loans on Other Student Aid** — Federal law requires that before receiving a Federal Stafford Loan, my school must receive a determination of my Pell Grant eligibility. Also, because an unsubsidized loan is more expensive to borrow than a subsidized loan, my school must determine my subsidized loan eligibility before I am offered an unsubsidized loan.

**11. Grace Period** — I will receive a 6-month grace period before the first payment of my Federal Stafford Loan. Loan must be made. The grace period begins the day after I cease to be enrolled at least half time at an eligible school.

My grace period does not include any period up to 3 years during which I am called or ordered to active duty for more than 30 days from a reserve component of the Armed Forces of the United States, including the period necessary for me to resume enrollment at the next available regular enrollment period.

**12. Repayment** — All of my loans made under this MPN must be repaid.

The repayment period for my loans begins the day after my 6-month grace period ends. My lender will notify me of the date my first payment is due.

I must make payments on my loans even if I do not receive a bill or repayment notice. Billing information is sent to me as a convenience, and I am obligated to make payments even if I do not receive any notice. My minimum annual payment required on all my FFELP loans will not, unless the lender otherwise agrees, be less than $600, except as provided in a graduated or income-sensitive repayment plan. Notwithstanding the preceding sentence, my minimum annual payment will never be less than the amount of interest due and payable.

My repayment period for each loan lasts at least 5 years but may not exceed 10 years (except under an extended repayment plan) from the day after the grace period ends.

I will be given the opportunity to choose one of the following repayment plans (for the following repayment plans, the time limits shown do not include periods of deferment and forbearance):

■ **Standard Repayment Plan** — Under this plan, I will make fixed monthly payments and repay my loan in full within 10 years (not including periods of deferment or forbearance) from the date the loan entered repayment. Payments must be at least $50 a month and will be more, if necessary, to repay the loan within the required time period.
■ **Graduated Repayment Plan** — Under this plan, I will usually make lower monthly payments at first, and my payments will increase over time. No single payment will be more than three times greater than any other payment.
■ **Extended Repayment Plan** — Under this plan, I will make monthly payments based on fixed annual or graduated repayment amounts over a period not to exceed 25 years. Payments must be at least $50 a

month and will be more, if necessary, to repay the loan within the required time period. I am only eligible for this plan if (i) at the time I obtain a loan under this MPN I have no outstanding balance on a FFELP loan made before October 7, 1998, and (ii) I accumulate outstanding FFELP Program loans exceeding $30,000.
■ **Income-Sensitive Repayment Plan** — If I choose this plan, my monthly payments will be adjusted annually, based on my expected total monthly gross income from all sources. I may call my lender at any time for more information about this repayment plan option.

Under each plan, the number or amount of the payments may need to be adjusted to reflect annual changes in the variable interest rate.

These repayment plans will be explained in more detail during my exit counseling session. If I do not choose an income-sensitive, graduated, or extended repayment plan within 45 days after notification of my repayment choices, or if I choose an income-sensitive repayment plan but do not provide the required documentation within the lender-specified time frame, my lender will require that I repay the loan under a standard repayment plan. I may change the repayment plan on my loan(s) once a year.

There will be no penalty for prepaying any portion of my loans.

All payments and prepayments may be applied in the following order: late charges, fees, and collection costs first, outstanding interest second, and outstanding principal last.

If I fail to make any part of an installment payment within 15 days after it becomes due, I may owe a late charge. This charge may not exceed six cents for each dollar of each late installment.

**13. Interest Rates** — The interest rate on a Federal Subsidized Stafford Loan and a Federal Unsubsidized Stafford Loan is a variable rate that is based on a formula established in the Act. The interest rate may be adjusted each year on July 1. As a result, my interest rate may change annually, but it will never exceed 8.25 percent. After reviewing the actual interest rate, I may cancel or reduce any loan obtained under this MPN in accordance with the "Loan Cancellation" section that follows.

**14. Payment of Interest** — My lender will, during the in-school, grace, and deferment periods and during any period in which I am on active-duty military service, defer and align principal payments on my outstanding FFELP loans. Interest that accrues on all my subsidized FFELP loans during authorized forbearance periods, and on all my unsubsidized FFELP loans during periods when I am not making regularly scheduled payments may, unless precluded by the Act, be capitalized (added to the principal of my loans) — unless I pay the interest as it accrues.

Except for interest charges the federal government pays on my behalf for subsidized Federal Stafford

Loans (while I am in school at least half time, for up to 3 years during active duty service in the Armed Forces as described in the Grace Period section above, during the grace period after I leave school, or during any period of authorized deferment), it is my responsibility to pay interest on the principal amount of my loans from the date of disbursement until the loans are paid in full. For all other periods and for unsubsidized Federal Stafford Loans, it is my responsibility to pay interest on my loans.

If I inform my lender that I wish to pay interest as it accrues, but I do not submit the payments, my lender may capitalize that interest.

Capitalized interest increases the principal balance of my loans and the total amount of interest charges I must pay. Interest will be capitalized on my loans as provided under the Act. Generally, capitalization may occur no more frequently than quarterly. However interest that accrues on my unsubsidized Federal Stafford Loans during in-school, grace or deferment periods may only be capitalized at the end of such periods. In addition, interest may not be capitalized if my lender grants an administrative forbearance for up to 60 days in order to collect and process documentation supporting my request for a deferment, forbearance, change in repayment plan, or consolidation. (See the chart entitled, "Capitalization of Federal Stafford Loan Interest," for further information on capitalization.)

The charts entitled Repaying Your Loans allow me to estimate the cost of capitalization and estimate the effect of capitalization on my monthly payments. If necessary, I must add two or more estimates of my payments together to approximate more closely the total monthly payment.

I may be able to claim a federal income tax deduction for interest payments I make on my FFELP loans. For further information, I may refer to the IRS Publication 970, which is available at http://www.irs.ustreas.gov.

**15. Loan Cancellation** – I understand that the terms of a full or partial loan cancellation depend on when I request the cancellation.

At any time before my loan money is disbursed, I may decline all or part of my loan money by notifying my school or lender. No origination fee, guarantee fee or interest will be charged on the amount of the loan that is cancelled.

▪ If my school credits my loan to my student account, I may cancel all or a part of my loan by notifying my school within 14 days after the date my school sends me a disbursement notice, or by the first day of the school's payment period, whichever is later. (My school can tell me the first day of the payment period.) If I cancel all or a portion of my loan as described in this paragraph, my school will return to my lender the cancelled amount of the loan money and the loan fees will be reduced or eliminated in proportion to the amount returned.

▪ At any time within 120 days of disbursement, I may pay back all or a part of my loan. The loan fees will be reduced or eliminated in proportion to the amount returned.

**16. Sale or Transfer of Loans** – The lender may sell or otherwise transfer one or all of my loans without my consent. Should ownership of a loan be transferred, I will be notified of the name, address, and telephone number of the new lender if the address to which I make my payments changes. Sale or transfer of my loans does not affect my rights and responsibilities under such loans. If the lender sells my loans to another originating lender, the lender may also transfer the right to offer subsequent loans under the MPN to such purchaser. I always have the right to terminate a lender's ability to make loans to me under this MPN by written notice to the lender.

**17. Loan Discharge** – My loans will be discharged if documentation of my death is submitted to my lender. My loan(s) may also be discharged if a physician certifies that I am totally and permanently disabled as

defined by the Act. In addition, I must meet certain income requirements and may not receive any additional FFELP, Direct, or Federal Perkins Loans during a 3-year conditional discharge period. I may not receive a discharge due to total and permanent disability based on a condition that existed before I applied for that loan, unless a physician certifies that the condition substantially deteriorated after the loan was made.

My loan will not automatically be discharged in bankruptcy. In order to discharge a loan in bankruptcy, I must prove undue hardship in an adversary proceeding before the bankruptcy court.

In certain cases, the Act provides for loan discharge for borrowers who are unable to complete a course of study because the institution closes, or borrowers whose loan eligibility was falsely certified by the institution. The Act also provides for loan discharge in the amount of any required refund that my school failed to make to my lender on my behalf.

Neither the lender, the guarantor, nor the Department of Education vouch for the quality or suitability of the academic programs offered by participating schools. Unless I qualify for loan discharge under the Act, I must repay the loans even if I do not complete my education, I am unable to obtain employment in my field of study, or I am dissatisfied with, or do not receive, the education I paid for with the loans.

For additional information, I should contact my lender or guarantor.

**18. Consequences of Default** – Default is defined in detail in my MPN. If I default, the entire unpaid balance and any accrued collection fees on the applicable loans will become immediately due and payable. Failure to repay loans made under this MPN may result in any or all of the following:

▪ Loss of federal and state income tax refunds,
▪ Loss of other federal or state payments,
▪ Legal action against me,

## Capitalization of Federal Stafford Loan Interest

**What is Capitalization?**
Capitalization is a process whereby a lender adds unpaid interest to the principal balance of a loan. You are responsible for paying the interest due on your loan as described in Item 3 of this Rights and Responsibilities Statement.

If you fail to make required interest payments before the beginning or resumption of principal repayment, or if you are granted a deferment (on an unsubsidized Federal Stafford Loan) or forbearance, your lender may capitalize such interest as provided under the Act. The principal balance of your loan will increase each time your lender capitalizes unpaid interest. As a result, you will pay more interest charges over the life of the loan. When you leave school and begin repaying your loan, your monthly payment amount will be higher or, if your loan is subject to the $50 minimum payment, you will make more payments.

This chart compares the monthly payments on unsubsidized Federal Stafford Loans where interest is paid while the borrower is in school and loans where the interest is capitalized. This example uses the maximum interest rate for Federal Stafford Loans, 8.25%. This is an estimate only. The actual interest capitalized will depend on factors such as disbursement date, number of disbursements, and the variable interest rate.

| Treatment of Interest | Loan Amount | Capitalized Interest for 12 months | Principal to be Repaid | Monthly Payment | Number of Payments | Total Amount Repaid |
|---|---|---|---|---|---|---|
| When you pay the interest | $15,000 | $     0 | $15,000 | $184 | 120 | $23,315* |
| When you don't pay the interest | $15,000 | $1,238 | $16,238 | $199 | 120 | $23,900 |

*Total amount repaid includes $1,238 of interest paid by the borrower before the borrower entered repayment.

Result: During repayment, you pay $15 less per month and $585 less over the lifetime of your loan(s) when you pay the interest as it is charged.

*Contact your lender if you have questions or need more information.*

(12/02)

- ☒ Collection charges (including attorney fees) being assessed against me,
- ☒ Loss of my professional license,
- ☒ An increase in my interest rate,
- ☒ Loss of eligibility for other student aid and assistance under most federal benefit programs,
- ☒ Loss of eligibility for loan deferments,
- ☒ Negative credit reports to credit bureaus, and/or
- ☒ My employer withholding part of my wages to give them to my guarantor (administrative wage garnishment).

**19. Credit Bureau Notification** — Information concerning the amount, disbursement, and repayment status (current or delinquent) of loans will be reported to one or more national credit bureau organizations on a regular basis. If I default on any loans made under this MPN, that default also will be reported to all national credit bureaus. Before any guaranty agency reports such a default, I will be given at least 30 days notice that default information will be disclosed to the credit bureaus unless I enter into repayment arrangements within 30 days of the date on the notice. The guarantor will give me a chance to ask for a review of the debt(s) before the default is reported. My lender and guarantor must provide a timely response to a request from any credit organization regarding objections I might raise with that organization about the accuracy and completeness of information reported by the lender or guarantor.

**20. Special Repayment Arrangements** —
- ☒ A Federal Consolidation Loan Program is available under which I (or my spouse and I jointly) may consolidate (combine) into one debt federal education loans received from different lenders and/or under different education loan programs. Depending on the amount I borrow, this program may result in an extension of my repayment period. Consolidation permits multiple debts to be combined into one monthly payment. For additional information, I should contact my lender or guarantor.
- ☒ Under certain circumstances, military personnel may have their educational loans repaid by the Secretary of Defense. Questions should be addressed to the local service recruiter. This is a recruiting program and does not pertain to prior service individuals or those not eligible for enlistment in the Armed Forces.
- ☒ In addition, volunteers who complete service in an approved national or community service project can earn an educational award. The award can be used to repay a Federal Stafford Loan. If I receive an educational award, I am responsible for providing my lender with information and documentation regarding my term of service and the award.
- ☒ If I have no outstanding loan balance on a FFEL or Direct Loan Program loan on October 1, 1998, or if I have no outstanding loan balance on the date I obtain a loan after October 1, 1998, I may be eligible for teacher loan forgiveness. The Department of Education will repay a fixed amount of my subsidized and unsubsidized Federal Stafford Loans if I have worked as a full-time teacher for five consecutive

school years, and if I meet all other eligibility requirements under the Act. If I am in default on a FFELP loan or a Direct loan, I am not eligible for forgiveness on that loan(s) unless I have made satisfactory repayment arrangements.
- ☒ If I am a full-time child care provider and I had no outstanding balance on a FFELP loan or a Direct loan on October 7, 1998, or I had no outstanding balance on a FFELP loan on the date I obtained a loan after October 7, 1998, I may qualify for loan forgiveness under a demonstration program set forth in the Act. I understand that I must meet other eligibility requirements under the Act and that this program requires annual federal funding.

**21. Deferments** — Under certain circumstances, I have a right to defer (postpone) repayment. The types of deferments that are available to me depend on when I first obtained a FFELP loan. Upon request, my lender will provide me with a deferment application that explains the eligibility requirements. If I am in default on my loan(s), I am not eligible for a deferment.

If all of my outstanding FFELP loans were made on or after July 1, 1993, and when my first FFELP loan was made on or after July 1, 1993, I had no outstanding FFELP loans that were made before July 1, 1993, a deferment is available to me while I am:

- ☒ Enrolled at least half time at an eligible school,
- ☒ Engaged in a full-time course of study in a graduate fellowship program,
- ☒ Engaged in a full-time rehabilitation training program for individuals with disabilities (if the program is approved by the Department of Education),
- ☒ Conscientiously seeking, but unable to find, full-time employment (for up to three years),
- ☒ Experiencing an economic hardship as determined by federal law (for up to three years).

My lender will process an in-school deferment based on (i) my request along with documentation verifying my eligibility, or (ii) the lender's receipt of a school certification of eligibility in connection with a new loan, or (iii) the lender's receipt of student status information indicating that I am enrolled on at least a half-time basis.

In all other cases, I must provide my lender with a deferment request and evidence that verifies my eligibility.

If at the time I obtain a loan under this MPN I have an outstanding FFELP loan disbursed before July 1, 1993, information on applicable deferment opportunities will be found in my earlier promissory note materials.

**22. Forbearance** — If I am unable to make my scheduled loan payments, the lender may allow me to reduce my payment amount, to extend the time for making payments, or to temporarily stop making payments as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called a forbearance. Interest charges continue to accrue during a forbearance period. The lender may grant me a forbearance in the following circumstances:

- ☒ Financial hardship, and/or
- ☒ Illness.

My lender is generally not required to grant a forbearance and may require me to provide my reasons for the request and other information. The lender may grant me a forbearance to eliminate a delinquency that persists even though I am making scheduled installment payments. My lender may grant me an administrative forbearance for up to 60 days in order to collect and process documentation supporting my request for a deferment, forbearance, change in repayment plan, or consolidation.

Circumstances that require my lender to grant me a forbearance include:

- ☒ Serving in a medical or dental internship or residency program, if I meet certain criteria.
- ☒ Serving in a national service position for which I receive a national service education award under the National and Community Service Trust Act of 1993. In some cases, the interest that accrues on a qualified loan during the service period will be paid by the Corporation for National and Community Service.
- ☒ Qualifying for partial repayment of my loans under the Student Loan Repayment Program, as administered by the Department of Defense.
- ☒ Qualifying for loan forgiveness under the Teacher Loan Forgiveness Program, if I meet certain criteria (for up to five years).
- ☒ Qualifying for loan forgiveness under the Child Care Provider Loan Forgiveness Program (for up to five years).
- ☒ Having a monthly debt burden for Title IV loans that collectively equals or exceeds 20% of my total monthly gross income (for up to three years).

Upon request, my lender will provide me with forbearance information and a forbearance request form.

Repayment Information follows

*Important Notice: Please retain this statement because it applies to present and subsequent loans received under the Master Promissory Note.*

## Repaying My Loans

Follow these steps to estimate your loan payment.

### Step 1: Calculate Your Monthly Interest Charges

Round your balance up to the nearest $500. If your loan amount is not on the table, follow the example below to estimate your monthly accrued interest.

**Example:**
Federal Stafford Loan of $5,479 at 6% interest.
Round up to nearest $500 = $5,500..

$5,000 = $25.00/month
+ 500 = 2.50/month
_____
$27.50/month

Your Monthly Interest  $ _____

#### Approximate Monthly Interest

| Loan Amount | 5.0% | 6.0% | 7.0% | 8.0% | 9.0% |
|---|---|---|---|---|---|
| $500 | $2.08 | $2.50 | $2.92 | $3.33 | $3.75 |
| $1,000 | $4.17 | $5.00 | $5.83 | $6.67 | $7.50 |
| $3,000 | $12.50 | $15.00 | $17.50 | $20.00 | $22.50 |
| $5,000 | $20.83 | $25.00 | $29.17 | $33.33 | $37.50 |
| $6,000 | $25.00 | $30.00 | $35.00 | $40.00 | $45.00 |
| $7,000 | $29.17 | $35.00 | $40.83 | $46.67 | $52.50 |
| $9,000 | $37.50 | $45.00 | $52.50 | $60.00 | $67.50 |
| $10,000 | $41.67 | $50.00 | $58.33 | $66.67 | $75.00 |
| $15,000 | $62.50 | $75.00 | $87.50 | $100.00 | $112.50 |
| $20,000 | $83.33 | $100.00 | $116.67 | $133.33 | $150.00 |
| $25,000 | $104.17 | $125.00 | $145.83 | $166.67 | $187.50 |

### Step 2: Estimate Your Capitalized Interest

Complete this step only if you will capitalize interest on a Federal Stafford Loan. *This is an estimate only.* Actual interest capitalized will depend on factors such as disbursement dates, number of disbursements, and the variable interest rate.

| | Monthly Interest (From Step One) | | Number of Months In deferment or forbearance | | Estimate of Capitalized Interest |
|---|---|---|---|---|---|
| Example | $ 27.50 | X | $ 22 | = | $ 605.00 |
| Your Capitalized Interest | $ _____ | X | $ _____ | = | $ _____ |

### Step 3: Estimate Your Monthly Payment

Round your loan up to the nearest $500. If your principal amount is not on the table, follow the example below to estimate your monthly payment. If you previously had interest capitalized, add it to the original loan amount to get the new principal amount.

**Example:**
Federal Stafford Loan of $6,105.00 (5,500 + 605.00) at 6% interest.
Round up to nearest $500 = $6,500.

$6,000 = $66.61/month
+ 500 = 5.55/month
_____
$72.16/month

Estimated monthly payment = $72.16

*Minimum monthly payment = $50 or amount of interest accruing each month

#### Estimated Monthly Payments *(10 Year Term)*

| Loan Amount | 5.0% | 6.0% | 7.0% | 8.0% | 9.0% |
|---|---|---|---|---|---|
| $500* | $5.30 | $5.55 | $5.81 | $6.07 | $6.33 |
| $1,000* | $10.61 | $11.10 | $11.61 | $12.13 | $12.67 |
| $3,000* | $31.82 | $33.31 | $34.83 | $36.40 | $38.00 |
| $5,000 | $53.03 | $55.51 | $58.05 | $60.66 | $63.34 |
| $6,000 | $63.64 | $66.61 | $69.67 | $72.80 | $76.01 |
| $7,000 | $74.25 | $77.71 | $81.28 | $84.93 | $88.67 |
| $9,000 | $95.46 | $99.92 | $104.50 | $109.19 | $114.01 |
| $10,000 | $106.07 | $111.02 | $116.11 | $121.33 | $126.68 |
| $15,000 | $159.10 | $166.53 | $174.16 | $181.99 | $190.01 |
| $20,000 | $212.13 | $222.04 | $232.22 | $242.66 | $253.35 |
| $25,000 | $265.16 | $277.55 | $290.27 | $303.32 | $316.69 |

| | Loan Amount | | Estimate of Capitalized Interest (From Step Two) | | New Principal Balance | | Estimated Monthly Payment |
|---|---|---|---|---|---|---|---|
| Example | $ 5,500 | + | $ 605.00 | = | $ 6,105.00 | | $ 72.16 |
| Your Monthly Payment | $ _____ | + | $ _____ | = | $ _____ | | $ _____ |

(12/02)

STATE OF MICHIGAN
IN THE COURT OF CLAIMS

HANS KIEBLER and DONOVAN VISSER, on behalf of themselves and those who are similarly situated,

Case No.: _____

Honorable: _____

       *Plaintiffs,*

*v.*

MICHIGAN DEPARTMENT OF TREASURY,
MICHIGAN FINANCE AUTHORITY, and
MICHIGAN STATE UNIVERSITY,

       *Defendants.*

_____/

## NOTICE OF INTENTION TO FILE A CLAIM

Claimant Donovan Visser ("Claimant"), on behalf of himself and all those others similarly situated, in compliance with the terms of MCL 600.6431, states:

1.    Claimant intends to file a claim against the Department of Treasury of the State of Michigan, the Michigan Finance Authority, and Michigan State University (collectively the "Defendants") on behalf of himself and those who are similarly situated.

2.    The claim arose in or around December 2012, at Lansing, Ingham County, Michigan.

3.    The claim is based on the following facts:

    a.    Claimant is a resident of the State of Michigan, County of Kent.

    b.    Claimant was a student at Michigan State University College of Law.

    c.    Claimant obtained student loans through the Michigan Higher Education Student Loan Authority ("MHESLA"), which was a predecessor agency to the Michigan Finance Authority ("MFA") per Executive Order 2010-2 to both

1

MHESLA and the Michigan Higher Education Assistance Authority (MHEAA). MFA is, and MHESLA and MHEAA were, divisions of the Department of Treasury.     Any reference herein to the "Department of Treasury is inclusive of MHESLA, MHEAA, MFA, and any other applicable agency.

    d. Claimant was offered, accepted, and obtained his student loans through the Defendants under the terms of the Michigan Students First program.

    e. Among other terms, Michigan Students First provided that after 36 on-time payments, the interest rate on Claimant's remaining student loan balances would be reduced to zero (0).

    f. Claimant graduated from Michigan State University College of Law in May 2007.

    g. Claimant's student loans are serviced by the Great Lakes Higher Education Corporation.

    h. Claimant began repaying his student loans in or around December 2007.

    i. Claimant made his 36th student loan payment in or around December 2010.

    j. All of Claimant's student loan payments were made on time and the in the amount specified by Great Lakes.

    k. Despite Claimant making 36 on-time payments and otherwise fully performing under the terms of the applicable contract(s), the Defendants have not reduced the interest rate on Claimant's remaining student loan balances to zero (0) in material breach of their obligations under all applicable contract(s).

4.    Claimant alleges the following items of damage and seeks recovery for them:

2

a. Damages comprise of, *inter alia*, increased interest payments on the remainder of Claimant's student loan payments, increased costs relating to Claimant's refraining from consolidating his student loans, and other actual, statutory, general, punitive, and monetary damages.

5. This claim involves the Department of Treasury of the State of Michigan, the Michigan Finance Authority and Michigan State University.

I declare that the statements above are true to the best of my information, knowledge, and belief.

Dated: 2/15/2013        By: _____
                                         Claimant

Respectfully submitted by,

HANK LAW PLLC

Dated: 2/20/2013        By: _____
                                      Jeffrey A. Hank (P71152)
                                      P.O. Box 1358
                                      East Lansing, MI 48826
                                      Phone: (888) 490-8550
                                      Fax:   (888) 490-7750

Caleb Marker (P70963)
RIDOUT LYON & OTTOSON, LLP
555 Ocean Boulevard, Suite 500
Long Beach, CA 90802
Phone: (562) 216-7380
Fax:   (562) 216-7385

David A. McKay (*Pro Hac Vice*)
RIDOUT LYON & OTTOSON, LLP
555 North Point Center East, Suite 400
Alpharetta, GA 30022
Phone: (678) 366-5180
Fax:   (678) 366-5001

***Attorneys for Claimant***

3

| Federal Family Education Loan Program (FFELP) | Guarantor, Program, or Lender Identification | OMB No. 1845-0006<br>Form approved<br>Exp. date 9-30-2005 |
|---|---|---|

# Federal Stafford Loan
## Master Promissory Note

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties which may include fines, imprisonment, or both, under the United States Criminal Code and 20 U.S.C. 1097.

**GREAT LAKES**
HIGHER EDUCATION GUARANTY CORPORATION

## Borrower Information
*Please print neatly or type. Read the instructions carefully.*

| 1. Last Name | First Name | MI | 2. Social Security Number |
|---|---|---|---|
| KIEBLER | HANS | H | |

| 3. Permanent Street Address (If P.O. Box, see instructions.) | | | 4. Home Area Code/Telephone Number | 5. Date of Birth (Month/Day/Year) |
|---|---|---|---|---|
| City | State | Zip Code | 6. Driver's License State and Number | 7. E-mail Address |
| | | | State | |

| 8. Lender Name | City | State | Zip Code | 9. Lender Code, if known |
|---|---|---|---|---|
| COMERICA BANK | DETROIT | MI | 48275-6230 | 865987 |

**10. References:** You must provide two separate references with different U.S. addresses. The first reference should be a parent (if living) or legal guardian. Both references must be completed in full.

| Name | A. DARYL H. KIEBLER | B. LISA L. MCCOY |
|---|---|---|
| Permanent Address | | |
| City, State, Zip Code | | |
| E-mail Address | | |
| Area Code/Telephone Number | ( ) | ( ) |
| Relationship to Borrower | PARENT | SIBLING |

**11. Requested Loan Amount:** I request a total amount of subsidized and unsubsidized loans under this Master Promissory Note not to exceed the allowable maximums under the Higher Education Act. My school will notify me of the type(s) and amount(s) of loan(s) that I am eligible to receive. I may cancel my loan or request a lower amount by contacting my lender or school. Additional information about my right to cancel a loan or request a lower amount is included in the Borrower's Rights and Responsibilities Statement and Disclosure Statements that have been or will be provided to me.

**12. Interest Payments (Optional):**
[X] I want to pay unsubsidized interest while I am in school.

## Borrower Certifications and Authorizations
*Read carefully before signing below.*

**13.** Under penalty of perjury I certify that:

**A.** The information I have provided on this Master Promissory Note and as updated by me from time to time is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

**B.** I will immediately repay any loan proceeds that cannot be attributed to educational expenses for attendance on at least a half-time basis at the school that certified my loan eligibility.

**C.** (i) I do not now owe an overpayment on a Federal Pell Grant, Supplemental Educational Opportunity Grant, or a Leveraging Educational Assistance Partnership Grant (formerly State Student Incentive Grant); or, if I owe an overpayment, I have made repayment arrangements with the holder to repay the amount owed. (ii) I am not now in default on any loan received under the Federal Perkins Loan Program (including NDSL loans), the Federal Direct Loan Program, or the Federal Family Education Loan Program ("FFELP" as defined in the Borrower's Rights and Responsibilities Statement); or (iii) I am in default on a loan, and I have made satisfactory arrangements with the holder of the defaulted loan.

**14.** For all subsidized and unsubsidized Federal Stafford Loans (as described in the additional MPN provisions and the Borrower's Rights and Responsibilities Statement) I receive under this Master Promissory Note, and for certain other loans as described below, I make the following authorizations:

**A.** I authorize my school to certify my eligibility for loans under this Master Promissory Note.

**B.** I authorize my school to transfer loan proceeds received by electronic funds transfer (EFT) or master check to my student account.

**C.** I authorize my school to pay to the lender any refund that may be due up to the full amount of the loan(s).

**D.** I authorize the lender, the guarantor, or their agents, to investigate my credit record and report information concerning my loan status to persons and organizations permitted by law to receive such information.

**E.** I request and authorize my lender to: (i) during the in-school and grace periods of any loans made under this Master Promissory Note, defer and align the repayment of principal on all of my FFELP loans that are in repayment status; and (ii) add unpaid interest that accrues on all my FFELP loans to the principal balance of such loans ("capitalization") including such loans made under this Master Promissory Note, during forbearance periods, and for unsubsidized loans, during in-school, grace, and deferment periods as provided under the Act. "Capitalization" will increase the principal balance on my loans and the total amount of interest charges I must pay.

**F.** I authorize the release of information pertinent to my loans: (i) by the school, the lender, and the guarantor, or their agents, to the references on the applicable loans and to members of my immediate family unless I submit written directions otherwise; and, (ii) by and among my schools, lenders, guarantors, the Department of Education, and their agents.

**G.** So that the loans requested can be approved, I authorize the Department of Education to send any information about me that is under its control, including information from the Free Application for Federal Student Aid, to the school, the lender, and to state agencies and nonprofit organizations that administer financial aid programs under the FFELP.

## Promise to Pay
*In this Master Promissory Note (MPN), "lender" refers to, and this MPN benefits, the original lender and its successors and assigns, including any subsequent holder of this MPN.*

**15.** I promise to pay to the order of the lender all loan amounts disbursed under the terms of this MPN, plus interest and other charges and fees that may become due as provided in this MPN. I understand that multiple loans may be made to me under this MPN. I understand that by accepting my disbursements issued at any time under this MPN, I agree to repay the loans. I understand that, within certain time frames, I may cancel or reduce the amount of any loan by refusing to accept or by returning all or a portion of any disbursement that is issued. Unless I make interest payments, interest that accrues on my unsubsidized loans during in-school, grace, and deferment periods will be added as provided under the Act to the principal balance of such loans. If I do not make any payment on any loan made under this MPN when it is due, I will also pay reasonable collection costs, including but not limited to attorney's fees, court costs, and other fees. I will not sign this MPN before reading the entire MPN, even if I am told not to read it, or told that I am not required to read it. I am entitled to an exact copy of this MPN and the Borrower's Rights and Responsibilities Statement. My signature certifies I have read, understand, and agree to the terms and conditions of this MPN, including the Borrower Certifications and Authorizations printed above, the Notice About Subsequent Loans Made Under This MPN, and the Borrower's Rights and Responsibilities Statement.

**I UNDERSTAND THAT I MAY RECEIVE ONE OR MORE LOANS UNDER THIS MPN, AND THAT I MUST REPAY ALL LOANS THAT I RECEIVE UNDER THIS MPN.**

E-SIGN TOKEN:     STDATA=3830297791KI198208048TIMESTAMP=2006-04-04-20.52.35,0000008VAS=
     BLER,HANS,H&ATTEMPTS=1&STATUS=USER PASSED&USERDEFINEDFIELD=

| 16. Borrower's Signature   ELECTRONIC SIGNATURE ON FILE WITH GREAT LAKES | 17. Today's Date (Month/Day/Year)   04-04-2006 |
|---|---|

*Additional MPN provisions follow*

# Master Promissory Note (continued)

### Disclosure of Loan Terms

This MPN applies to both subsidized and unsubsidized Federal Stafford Loans described in the Interest section below. I agree that the lender may sell or assign this MPN and/or my loans and acknowledge that any loan may be assigned independently of any other loan to which this MPN applies. I agree that each loan is separately enforceable based on a true and exact copy of this MPN. Loans disbursed under this MPN are subject to the annual and aggregate loan limits specified in the Higher Education Act of 1965, as amended, 20 U.S.C. 1070, et seq., and applicable U.S. Department of Education regulations (collectively referred to as the "Act"). Under this MPN, the principal amount that I owe, and am required to repay, will be the sum of all disbursements issued (unless I reduce or cancel any disbursements as provided below).

My lender will determine whether to make any loan under this MPN after my loan eligibility is determined by the school where I am enrolled on at least a half-time basis. At or before the time of the first disbursement for each loan, a disclosure statement will be sent to me identifying the amount of the loan and additional terms of the loan. Important additional information is also disclosed in the Borrower's Rights and Responsibilities Statement accompanying this MPN. The Borrower's Rights and Responsibilities Statement and any disclosure statement I receive in connection with any loan under this MPN are hereby incorporated into this MPN.

I may request additional loan funds for my educational costs (up to the annual and aggregate loan limits). If my school determines that I am eligible for any additional or adjusted loan amount, my school may certify such amount. My eligibility for subsidized and/or unsubsidized loans may change based on changes in my financial circumstances. My school will notify me of any changes in my eligibility. I will be notified of any changes or additions to my subsidized and/or unsubsidized loans in a separate disclosure statement.

### Loan Cancellation

I may pay back all or a part of a disbursement within timeframes set by the Act, as explained in the Borrower's Rights and Responsibilities Statement or other disclosure statement I receive at or before disbursement. In such case, the origination fee and guarantee fee will be reduced or eliminated in proportion to the amount of the disbursement returned within those timeframes. I will not have to pay interest charges if I return the full loan amount as provided in the Act.

### Interest

Unless my lender notifies me in writing of a lower rate(s), the rate(s) of interest for my loans are those specified in the Act. The interest rate information is presented in the Borrower's Rights and Responsibilities Statement accompanying this MPN. The interest rate is presented in a disclosure statement that is issued to me.

Interest accrues on the unpaid principal balance of each loan from the date of disbursement by the lender until the loan is paid in full. I agree to pay all interest charges on my subsidized Federal Stafford Loans (except interest payable by the federal government under the Act). I agree to pay all interest charges on my unsubsidized Federal Stafford Loans. If I fail to make required payments of interest before the beginning or resumption of principal repayment, or during a period of deferment or forbearance, I agree that the lender may capitalize such interest as provided under the Act. There is no federal interest subsidy on unsubsidized loans, so the total amount of interest I am required to repay on unsubsidized loans will be higher than on subsidized loans.

### Origination Fee and Guarantee Fee

For each subsidized and unsubsidized loan, the federal government imposes an origination fee equal to the amount required by the Act. The guaranty agency(ies) that guarantee(s) my loan(s) (in each case, the "guarantor") may charge a per loan guarantee fee not to exceed a maximum amount specified in the Act. I will pay these fees, as

identified in the disclosure statement, which will be deducted proportionately from each disbursement of my loans. I understand the origination and guarantee fees may be refundable only to the extent permitted by the Act.

### Late Charges and Collection Costs

The lender may collect from me: (i) a late charge for each late installment payment if I fail to make any part of a required installment payment within 15 days after it becomes due, and (ii) any other charges and fees that are permitted by the Act for the collection of my loans. If I default on any loans, I will pay reasonable collection fees and costs, plus court costs and attorney fees.

### Repayment

I must repay the full amount of the loans made under this MPN and accrued interest. Federal Stafford Loans have a repayment grace period, which will be disclosed in my disclosure statement. I will repay the principal of each loan in periodic installments during a repayment period that begins on the day immediately following the end of the applicable grace period. Payments submitted by me or on my behalf (exclusive of refunds) may be applied first to charges and collection costs that are due, then to accrued interest that has not been capitalized, and finally to the principal amount.

I understand that the school's certification of my loan eligibility determines whether my loans must be repaid as subsidized and/or unsubsidized loans.

The lender will provide me with a repayment schedule that identifies my payment amounts and due dates. Except as otherwise provided in the Act, the minimum annual payment required on all my FFELP loans is $600 or the amount of interest due and payable, whichever is larger. My lender must provide me with a choice of repayment plans consistent with the provisions of the Act.

If I am unable to make my scheduled loan payments, the lender may allow me to reduce my payment amount, to extend the time for making payments, or to temporarily stop making payments as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called forbearance. The lender may align payment dates on my loans or grant me a forbearance to eliminate a delinquency that persists even though I am making scheduled payments.

I may prepay all or any part of the unpaid balance on my loans at any time without penalty. If I do not specify which loans I am prepaying, the lender will determine how to apply the prepayment in accordance with the Act. Upon repayment in full of each loan under this MPN, I agree to accept written notification of such loan payoff in place of receiving the original MPN.

### Acceleration and Default

At the option of the lender, the entire unpaid balance of the applicable loan(s) made under this MPN will become immediately due and payable, (this is called "acceleration"), upon the occurrence of any one of the following events: (i) I fail to enroll as at least a half-time student at the school that certified my loan eligibility, (ii) I fail to use the proceeds of the loan solely for educational expenses, (iii) I make a false representation(s) that results in my receiving a loan for which I am not eligible, or (iv) I default on the loan.

The following events shall constitute a default on my loan: (i) I fail to pay the entire unpaid balance of the applicable loans after the lender has exercised its option under items (i), (ii), or (iii) in the preceding paragraph; (ii) I fail to make installment payments when due, provided my failure has persisted for at least 270 days for payments due monthly or 330 days for payments due less frequently than monthly; or (iii) I fail to comply with other terms of the loans, and the lender or guarantor reasonably concludes I no longer intend to honor my repayment obligation. If I default, the guarantor may purchase my loans and capitalize all then-outstanding interest into a new principal balance, and collection fees will become immediately due and payable.

If I default, the default will be reported to all national credit bureaus and will significantly and adversely affect my credit history. I acknowledge that a default shall have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities Statement. Following default, the loans may be subject to income-contingent repayment (including potential collection of amounts in excess of the principal and interest) in accordance with the Act.

### Governing Law and Notices

The terms of this MPN will be interpreted in accordance with the applicable federal statutes and regulations, and the guarantor's policies. Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this MPN.

If a particular loan under this MPN is made by the school, or if the proceeds of a particular loan made under this MPN are used to pay tuition and charges of a for-profit school that refers loan applicants to the lender, or that is affiliated with the lender by common control, contract, or business arrangement, any lender holding such loan is subject to all claims and defenses that I could assert against the school with respect to such loan. My recovery under this provision shall not exceed the amount I paid on such loan.

If I reside in the state in which the principal office of the guarantor is located, the guarantor may sue to enforce the applicable loans in the county in which the guarantor's office is located. However, if I object to being sued there and I mail a written objection to the guarantor that is postmarked no later than 30 days after I am served with the suit, the guarantor will either have the court transfer the suit to the county in which I live or will dismiss the lawsuit.

Any notice required to be given to me will be effective if sent by first class mail to the latest address the lender has for me or by electronic means to an electronic address that I have provided. I will immediately notify the lender of any change of address or status as specified in the Borrower's Rights and Responsibilities Statement. Failure by the lender to enforce or insist on compliance with any term on this MPN shall not be a waiver of any right of the lender. No provision of this MPN may be modified or waived except in writing. If any provision of this MPN is determined to be unenforceable, the remaining provisions shall remain in force.

### Notice About Subsequent Loans Made Under This Master Promissory Note

This Master Promissory Note authorizes the lender to disburse multiple loans during the multi-year term of this MPN upon my request and upon the school's certification of my loan eligibility. Subsequent loans may be made under this MPN for the same or subsequent periods of enrollment only at schools designated by the Secretary of the U.S. Department of Education.

I understand that no subsequent loans will be made under this MPN after the earliest of the following dates: (i) the date my lender receives my written notice that no further loans may be disbursed under the MPN; (ii) one year after the date of my signature on this MPN if no disbursement is made during such twelve month period; or (iii) ten years after the date of my signature on this MPN or the date the lender receives this MPN.

Any amendment to the Act governs the terms of any loans disbursed on or after the effective date of such amendment, and such amended terms are hereby incorporated into this MPN.

(12/02)

**Federal Family Education Loan Program (FFELP)**
# Federal Stafford Loan
# Master Promissory Note
# Instructions and Notices

Guarantor, Program, or Lender Identification

**GREAT LAKES** ®
HIGHER EDUCATION GUARANTY
CORPORATION

## Instructions for Completing Promissory Note

*This is a Master Promissory Note under which you may receive multiple subsidized and unsubsidized Federal Stafford Loans over a maximum ten year period. Except for interest charges the federal government pays on your behalf on subsidized Federal Stafford Loans while you are in school and during your grace and deferment periods, you are responsible for paying interest on the principal amount of your loans from the date of disbursement until the loans are paid in full.*

*Use a dark ink ball point pen or typewriter. Do not complete this form in pencil. If an item has been completed for you and any part of it is incorrect, cross out the incorrect information and print the correct information. Incorrect, incomplete, or illegible information may cause your loan to be delayed.*

**Item 1:** Enter your last name, then your first name and middle initial.

**Item 2:** Enter your nine-digit Social Security Number. If this item has been completed for you, review it for correctness. If it is incorrect, cross out the entire incorrect number and print the entire correct Social Security Number in this box. Your loan(s) cannot be processed without a Social Security Number. Read the Privacy Act and the Financial Privacy Act Notices below before completing this item.

**Item 3:** Enter your permanent home street address, apartment number, city, state, and zip code. If you have a Post Office Box and a street address, list both. A temporary school address is not acceptable.

**Item 4:** Enter the area code and telephone number for the address listed in Item 3. If you do not have a telephone, enter N/A.

**Item 5:** Using only numbers, enter the month, day, and four-digit year of your birth. (For example, for June 24, 1982, you would enter 06/24/1982). Be careful not to enter the current year.

**Item 6:** Enter the two-letter abbreviation for the state

that issued your driver's license followed by the driver's license number. If you do not have a driver's license, enter N/A.

**Item 7:** Enter your preferred e-mail address if you have one. You are not required to provide this information. If you do, we may use your e-mail address to communicate with you. If you do not have an e-mail address or do not wish to provide one, write N/A.

**Item 8:** Enter the name and address of the lender from which you wish to borrow. If you do not have a lender, contact your school's financial aid office, a bank or other financial institution, or the guarantor or program listed on this form for information on lenders willing to make loans to students attending your school.

**Item 9:** If you know the lender code, enter it here. Otherwise, leave this item blank.

**Item 10:** Enter the requested reference information for two adults who do not share a common address. The first reference should be a parent (if living), legal guardian, or an adult relative. References with addresses outside the U.S. are not acceptable. Both references must be completed in full.

If a reference does not have a telephone or an e-mail address or does not wish to provide an e-mail address, write N/A. If you provide an e-mail address for a reference, the lender or holder of your loan(s) may use it to communicate with the reference. All requested items must be completed or your loan(s) will be delayed.

**Item 11:** Your school will notify you of the amount of subsidized and unsubsidized Federal Stafford loans you are eligible to receive for this and subsequent academic periods. You may decline a loan or request a lower amount by contacting your lender or school. Additional information is included under "Loan Cancellation" in the Borrower's Rights and Responsibilities Statement.

**Item 12:** Check this box only if you want to make interest payments while in school.

**Items 13, 14, and 15:** Read these items carefully.

**Item 16:** Sign your legal name, including your first name, middle initial, and last name. Use a dark ink ballpoint pen, if you are completing a paper copy of this MPN.

**Item 17:** Enter the date you are signing this MPN.

## Important Notices

### Privacy Act Notice

The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:

The authority for collecting the requested information from and about you is §428(b)(2)(A) et seq. of the Higher Education Act of 1965, as amended (20 U.S.C. 1078(b)(2)(A) et seq.) and the authority for collecting and using your Social Security Number (SSN) is §484(a)(4) of the HEA (20 U.S.C. 1091(a)(4)). Participating in the Federal Family Education Loan Program (FFELP) and giving us your SSN is voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge or forgiveness) under the FFELP, to permit the servicing of your loan(s) and, if it becomes necessary, to locate you and to collect on your loan(s) if your loan(s) become delinquent or in default. We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed to third parties as authorized under routine uses in the appropriate systems of records. The routine uses of this information include its disclosure to federal, state, or local agencies, to other federal agencies under computer matching programs, to agencies that we authorize to assist us in administering our loan

programs, to private parties such as relatives, present and former employers, business and personal associates, to credit bureau organizations, to educational and financial institutions, to guaranty agencies and to contractors in order to verify your identity, to determine your eligibility to receive a loan(s) or a benefit on a loan(s), to permit the servicing or collection of your loan(s), to counsel you in repayment efforts, to enforce the terms of the loan(s), to investigate possible fraud and to verify compliance with federal student financial aid program regulations, to locate you if you become delinquent in your loan payments or if you default, to provide default rate calculations, to provide financial aid history information, to assist program administrators with tracking refunds and cancellations, or to provide a standardized method for educational institutions to efficiently submit student enrollment status.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

### Financial Privacy Act Notice

Under the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401-3421), the U.S. Department of Education will have access to financial records in your student loan file maintained by the lender in compliance with the administration of the Federal Family Education Loan Program.

### Paperwork Reduction Notice

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0006. The time required to complete this information is estimated to average 1.0 hours (60 minutes) per response, including the time to review instructions, search existing data resources, gather and maintain the data needed, and complete and review the information collection. If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to the U.S. Department of Education, Washington, DC 20202-4651.

If you have questions regarding the status of your submission of this form, contact the lender, guarantor, or program identified in the upper right-hand corner of this form.

(12/02)

# Borrower's Rights and Responsibilities Statement

**Important Notice:** The Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of loans you receive under the Federal Stafford Loan Master Promissory Note (MPN). Please keep a copy of this statement because it applies to present and subsequent loans received under the MPN. You may contact your lender at any time for another copy of this statement.

The Federal Family Education Loan Program (FFELP) includes the following loans:

- ☒ Subsidized Federal Stafford Loan (formerly known as Guaranteed Student Loan (GSL),
- ☒ Unsubsidized Federal Stafford Loan,
- ☒ Federal Insured Student Loan (FISL),
- ☒ Federal Supplemental Loans for Students (SLS), also known as ALAS,
- ☒ Federal PLUS (parent) Loan,
- ☒ Federal Consolidation Loan.

The FFELP is authorized by Title IV, Part B of the Higher Education Act of 1965, as amended.

**1. Governing Law** — Loans disbursed under this Master Promissory Note (MPN) are subject to the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), and applicable U. S. Department of Education regulations (collectively referred to as the "Act"). NOTE: Any change to the Act applies to the terms of any loans made on or after the effective date of the change.

**2. Use of this MPN** — I may receive more than one loan under this MPN over a period of up to ten years. Whether I may receive loans under this MPN for only one academic period, or for multiple academic periods, depends on the school I am attending. I may receive loans under this MPN from the original lender, or a lender who assumes the right to offer loans under this MPN, even if I change my school (provided the school is authorized to certify subsequent loans under this MPN) and even if the guaranty agency changes. I must sign a new MPN if I wish to receive loans from a lender other than my original lender, or a lender who assumes the right to offer me loans under this MPN.

**3. Subsidized and Unsubsidized Loans** — There are two types of Federal Stafford Loans that I may be eligible for under this MPN: subsidized and unsubsidized. Eligibility for the subsidized Federal Stafford Loan is based on need. If I qualify, the government pays the lender the interest due on my subsidized loans while I am in school and during grace and deferment periods ('lender' refers to the original lender and its successors, including any subsequent holder of this MPN). I am otherwise responsible for interest that accrues on my subsidized loan. The unsubsidized Federal Stafford Loan is not based on need. I am responsible for all interest that accrues on my unsubsidized loans.

**4. Maximum Program Loan Amounts** — Under the Federal Stafford Loan Program (including both subsidized and unsubsidized loans), I may borrow amounts under this MPN up to and including the dollar amounts shown in the chart on this page (Federal Stafford Loan Maximums).

I am subject to the limits on these loan amounts on the basis of the following:

| Federal Stafford Loan Maximums[1] | | |
|---|---|---|
| **DEPENDENT UNDERGRADUATES**[2] | **Subsidized** | **Total (Subsidized & Unsubsidized)**[3] |
| First Year | $2,625 | $2,625 |
| Second Year | $3,500 | $3,500 |
| Third Year and Beyond | $5,500 | $5,500 |
| **INDEPENDENT UNDERGRADUATES** (and dependents whose parents are unable to borrow under the PLUS program) | | |
| First Year | $2,625 | $6,625 |
| Second Year | $3,500 | $7,500 |
| Third Year and Beyond | $5,500 | $10,500 |
| **GRADUATE AND PROFESSIONAL STUDENTS** | $8,500 | $18,500 |
| **AGGREGATE LIMITS**[3] | | |
| **DEPENDENT UNDERGRADUATES** | $23,000 | $23,000 |
| **INDEPENDENT UNDERGRADUATES** (and dependents whose parents are unable to borrow under the PLUS program) | $23,000 | $46,000 |
| **GRADUATE AND PROFESSIONAL STUDENTS** | $65,500 | $138,500 |

1 Certain health professions students may qualify for higher limits.
2 All undergraduate annual loan limits are subject to proration.
3 If the borrower does not have financial need for a subsidized Federal Stafford Loan using expected family contribution (EFC), or has reached the aggregate limit in subsidized Federal Stafford Loans, the borrower may receive up to and including this entire amount in unsubsidized Federal Stafford Loans assuming he or she has remaining eligibility for the loan.

- ☒ My academic level (freshman, sophomore, etc.),
- ☒ My status as a dependent student or independent student,
- ☒ The length of the academic program in which I am enrolled,
- ☒ The length of the remainder of my undergraduate program of study if it is less than one academic year, and
- ☒ As otherwise authorized by the Act.

**5. Maximum Individual Loan Limits** — For each academic period, my school determines the maximum loan amount I am eligible to receive by considering the factors in Section 4 above and other factors such as my Cost of Attendance, Expected Family Contribution, and other financial aid awarded to me. If my school awards both subsidized Federal Stafford Loans and unsubsidized Federal Stafford Loans, it is required to determine my eligibility for a subsidized Federal Stafford Loan before determining my eligibility for an unsubsidized Federal Stafford Loan.

If I have received student loans from more than one lender or from other federal student loan programs, I am responsible for informing my school and my lender of my other student loans. In some cases, I may not be eligible for loans for which I have applied.

**6. Use of Loan Money** — I must use the loan money for authorized educational expenses for attendance at the school that certified my eligibility

for the time period shown on my disclosure statement. Authorized expenses include the following:

- ☒ Tuition,
- ☒ Room,
- ☒ Board,
- ☒ Institutional fees,
- ☒ Books,
- ☒ Supplies,
- ☒ Equipment,
- ☒ Dependent child care,
- ☒ Transportation,
- ☒ Commuting expenses,
- ☒ Rental or purchase of a personal computer,
- ☒ Origination fee and guarantee fee, and/or
- ☒ Other documented, authorized costs.

**7. Loan Fees** — I may be charged an origination fee and/or a guarantee fee for each loan made under this MPN. Neither fee may exceed the rate as specified in the Act. The amount of these fees will be deducted proportionally from each disbursement.

**8. Disbursement of Loan Money** — Generally, my loan money will be disbursed to my school in multiple installments based on the academic terms at my school. If my school does not have academic terms, my loan money will generally be disbursed in at least two installments, one at the beginning and one at the midpoint of my enrollment period for the applicable loans.

(12/02)

If I am enrolled in a foreign school, or in a study abroad program through a school in the U.S. (home institution), the disbursement requirements stated above do not apply and:

☒ The loan money may be sent in one installment directly to me, or

☒ I may provide my foreign school or home institution, as applicable, a written authorization designating an individual not affiliated with the foreign school or home institution as my power-of-attorney to negotiate any loan disbursements on my behalf.

Loan money may be credited to my account at my school or disbursed by a check or other means made payable to me.

If this is my first student loan under either the Direct Loan Program or the FFELP, I must receive entrance counseling before the first disbursement of my subsidized or unsubsidized Federal Stafford Loan can be made.

**9. Change of Status** – I must notify my school and/or lender of certain changes.

I must notify my school's financial aid office if any of the following events take place:

☒ I reduce my enrollment status to less than half time,
☒ I withdraw from school,
☒ I stop attending classes,
☒ I fail to re-enroll for any term,
☒ I have a change in my expected graduation date, and/or
☒ I change my name, local address, permanent address, or e-mail address.

Shortly before my enrollment ends, I must participate in exit counseling with my school, during which I will update my loan records about my:

☒ Permanent address,
☒ E-mail address,
☒ Telephone number,
☒ Future employer, and
☒ References.

I must notify the lender of a particular loan if I fail to enroll with respect to such loan:

☒ At least half time for the loan period certified, or
☒ At the school that certified my eligibility.

I must promptly notify my lender(s) if any of the following events occur before loans held by my lender(s) are repaid:

☒ I change my address, telephone number, or e-mail address
☒ I change my name (for example, maiden name to married name),
☒ I withdraw from school or begin attending less than half time,
☒ I transfer from one school to another school,
☒ I change my employer or my employer's address or telephone number changes, and/or
☒ I have any other change in status that would affect my

loan (for example, the loss of eligibility for an unemployment deferment by obtaining a job).

**10. Effect of Loans on Other Student Aid** – Federal law requires that before receiving a Federal Stafford Loan, my school must receive a determination of my Pell Grant eligibility. Also, because an unsubsidized loan is more expensive to borrow than a subsidized loan, my school must determine my subsidized loan eligibility before I am offered an unsubsidized loan.

**11. Grace Period** – I will receive a 6-month grace period before the first payment of my Federal Stafford Loan must be made. The grace period begins the day after I cease to be enrolled at least half time at an eligible school.

My grace period does not include any period up to 3 years during which I am called or ordered to active duty for more than 30 days from a reserve component of the Armed Forces of the United States, including the period necessary for me to resume enrollment at the next available regular enrollment period.

**12. Repayment** – All of my loans made under this MPN must be repaid.

The repayment period for my loans begins the day after my 6-month grace period ends. My lender will notify me of the date my first payment is due.

I must make payments on my loans even if I do not receive a bill or repayment notice. Billing information is sent to me as a convenience, and I am obligated to make payments even if I do not receive any notice. My minimum annual payment required on all my FFELP loans will not, unless the lender otherwise agrees, be less than $600, except as provided in a graduated or income-sensitive repayment plan. Notwithstanding the preceding sentence, my minimum annual payment will never be less than the amount of interest due and payable.

My repayment period for each loan lasts at least 5 years but may not exceed 10 years (except under an extended repayment plan) from the day after the grace period ends.

I will be given the opportunity to choose one of the following repayment plans (for the following repayment plans, the time limits shown do not include periods of deferment and forbearance):

☒ **Standard Repayment Plan** – Under this plan, I will make fixed monthly payments and repay my loan in full within 10 years (not including periods of deferment or forbearance) from the date the loan entered repayment. Payments must be at least $50 a month and will be more, if necessary, to repay the loan within the required time period.
☒ **Graduated Repayment Plan** – Under this plan, I will usually make lower monthly payments at first, and my payments will increase over time. No single payment will be more than three times greater than any other payment.
☒ **Extended Repayment Plan** – Under this plan, I will make monthly payments based on fixed annual or graduated repayment amounts over a period not to exceed 25 years. Payments must be at least $50 a

month and will be more, if necessary, to repay the loan within the required time period. I am only eligible for this plan if (i) at the time I obtain a loan under this MPN I have no outstanding balance on a FFELP loan made before October 7, 1998, and (ii) I accumulate outstanding FFELP Program loans exceeding $30,000.
☒ **Income-Sensitive Repayment Plan** – If I choose this plan, my monthly payments will be adjusted annually, based on my expected total monthly gross income from all sources. I may call my lender at any time for more information about this repayment plan option.

Under each plan, the number or amount of the payments may need to be adjusted to reflect annual changes in the variable interest rate.

These repayment plans will be explained in more detail during my exit counseling session. If I do not choose an income-sensitive, graduated, or extended repayment plan within 45 days after notification of my repayment choices, or if I choose an income-sensitive repayment plan but do not provide the required documentation within the lender-specified time frame, my lender will require that I repay the loan under a standard repayment plan. I may change the repayment plan on my loan(s) once a year.

There will be no penalty for prepaying any portion of my loans.

All payments and prepayments may be applied in the following order: late charges, fees, and collection costs first, outstanding interest second, and outstanding principal last.

If I fail to make any part of an installment payment within 15 days after it becomes due, I may owe a late charge. This charge may not exceed six cents for each dollar of each late installment.

**13. Interest Rates** – The interest rate on a Federal Subsidized Stafford Loan and a Federal Unsubsidized Stafford Loan is a variable rate that is based on a formula established in the Act. The interest rate may be adjusted each year on July 1. As a result, my interest rate may change annually, but it will never exceed 8.25 percent. After reviewing the actual interest rate, I may cancel or reduce any loan obtained under this MPN in accordance with the "Loan Cancellation" section that follows.

**14. Payment of Interest** – My lender will, during the in-school, grace, and deferment periods and during any period in which I am on active-duty military service, defer and align principal payments on my outstanding FFELP loans. Interest that accrues on all my subsidized FFELP loans during any authorized forbearance periods, and on all my unsubsidized FFELP loans during periods when I am not making regularly scheduled payments may, unless precluded by the Act, be capitalized (added to the principal of my loans) — unless I pay the interest as it accrues.

Except for interest charges the federal government pays on my behalf for subsidized Federal Stafford

Loans (while I am in school at least half time, for up to 3 years during active duty service in the Armed Forces as described in the Grace Period section above, during the grace period after I leave school, or during any period of authorized deferment), it is my responsibility to pay interest on the principal amount of my loans from the date of disbursement until the loans are paid in full. For all other periods and for unsubsidized Federal Stafford Loans, it is my responsibility to pay interest on my loans.

If I inform my lender that I wish to pay interest as it accrues, but I do not submit the payments, my lender may capitalize that interest.

Capitalized interest increases the principal balance of my loans and the total amount of interest charges I must pay. Interest will be capitalized on my loans as provided under the Act. Generally, capitalization may occur no more frequently than quarterly. However interest that accrues on my unsubsidized Federal Stafford Loans during in-school, grace or deferment periods may only be capitalized at the end of such periods. In addition, interest may not be capitalized if my lender grants an administrative forbearance for up to 60 days in order to collect and process documentation supporting my request for a deferment, forbearance, change in repayment plan, or consolidation. (See the chart entitled, "Capitalization of Federal Stafford Loan Interest," for further information on capitalization.)

The charts entitled Repaying Your Loans allow me to estimate the cost of capitalization and estimate the effect of capitalization on my monthly payments. If necessary, I must add two or more estimates of my payments together to approximate more closely the total monthly payment.

I may be able to claim a federal income tax deduction for interest payments I make on my FFELP loans. For further information, I may refer to the IRS Publication 970, which is available at http://www.irs.ustreas.gov.

**15. Loan Cancellation** — I understand that the terms of a full or partial loan cancellation depend on when I request the cancellation.

At any time before my loan money is disbursed, I may decline all or part of my loan money by notifying my school or lender. No origination fee, guarantee fee or interest will be charged on the amount of the loan that is cancelled.

■ If my school credits my loan to my student account, I may cancel all or a part of my loan by informing my school within 14 days after the date my school sends me a disbursement notice, or by the first day of the school's payment period, whichever is later. (My school can tell me the first day of the payment period.) If I cancel all or a portion of my loan as described in this paragraph, my school will return to my lender the cancelled amount of the loan money and the loan fees will be reduced or eliminated in proportion to the amount returned.

■ At any time within 120 days of disbursement, I may pay back all or a part of my loan. The loan fees will be reduced or eliminated in proportion to the amount returned.

**16. Sale or Transfer of Loans** — The lender may sell or otherwise transfer one or all of my loans without my consent. Should ownership of a loan be transferred, I will be notified of the name, address, and telephone number of the new lender if the address to which I make my payments changes. Sale or transfer of my loans does not affect my rights and responsibilities under such loans. If the lender sells my loans to another originating lender, the lender may also transfer the right to offer subsequent loans under the MPN to such purchaser. I always have the right to terminate a lender's ability to make loans to me under this MPN by written notice to the lender.

**17. Loan Discharge** — My loans will be discharged if documentation of my death is submitted to my lender. My loan(s) may also be discharged if a physician certifies that I am totally and permanently disabled as

defined by the Act. In addition, I must meet certain income requirements and may not receive any additional FFELP, Direct, or Federal Perkins Loans during a 3-year conditional discharge period. I may not receive a discharge due to total and permanent disability based on a condition that existed before I applied for that loan, unless a physician certifies that the condition substantially deteriorated after the loan was made.

My loan will not automatically be discharged in bankruptcy. In order to discharge a loan in bankruptcy, I must prove undue hardship in an adversary proceeding before the bankruptcy court.

In certain cases, the Act provides for loan discharge for borrowers who are unable to complete a course of study because the institution closes, or borrowers whose loan eligibility was falsely certified by the institution. The Act also provides for loan discharge in the amount of any required refund that my school failed to make to my lender on my behalf.

Neither the lender, the guarantor, nor the Department of Education vouch for the quality or suitability of the academic programs offered by participating schools. Unless I qualify for loan discharge under the Act, I must repay the loans even if I do not complete my education, I am unable to obtain employment in my field of study, or I am dissatisfied with, or do not receive, the education I paid for with the loans.

For additional information, I should contact my lender or guarantor.

**18. Consequences of Default** — Default is defined in detail in my MPN. If I default, the entire unpaid balance and any accrued collection fees on the applicable loans will become immediately due and payable. Failure to repay loans made under this MPN may result in any or all of the following:

■ Loss of federal and state income tax refunds,
■ Loss of other federal or state payments,
■ Legal action against me,

---

## Capitalization of Federal Stafford Loan Interest

**What is Capitalization?**

Capitalization is a process whereby a lender adds unpaid interest to the principal balance of a loan. You are responsible for paying the interest due on your loan as described in Item 3 of this Rights and Responsibilities Statement.

If you fail to make required interest payments before the beginning or resumption of principal repayment, or if you are granted a deferment (on an unsubsidized Federal Stafford Loan) or forbearance, your lender may capitalize such interest as provided under the Act. The principal balance of your loan will increase each time your lender capitalizes unpaid interest. As a result, you will pay more interest charges over the life of the loan. When you leave school and begin repaying your loan, your monthly payment amount will be higher or, if your loan is subject to the $50 minimum payment, you will make more payments.

This chart compares the monthly payments on unsubsidized Federal Stafford Loans where interest is paid while the borrower is in school and loans where the interest is capitalized. This example uses the maximum interest rate for Federal Stafford Loans, 8.25%. This is an estimate only. The actual interest capitalized will depend on factors such as disbursement date, number of disbursements, and the variable interest rate.

| Treatment of Interest | Loan Amount | Capitalized Interest for 12 months | Principal to be Repaid | Monthly Payment | Number of Payments | Total Amount Repaid |
|---|---|---|---|---|---|---|
| When you pay the interest | $15,000 | $ 0 | $15,000 | $184 | 120 | $23,315* |
| When you don't pay the interest | $15,000 | $1,238 | $16,238 | $199 | 120 | $23,900 |

*Total amount repaid includes $1,238 of interest paid by the borrower before the borrower entered repayment.

Result: During repayment, you pay $15 less per month and $585 less over the lifetime of your loan(s) when you pay the interest as it is charged.

*Contact your lender if you have questions or need more information.*

- Collection charges (including attorney fees) being assessed against me,
- Loss of my professional license,
- An increase in my interest rate,
- Loss of eligibility for other student aid and assistance under most federal benefit programs,
- Loss of eligibility for loan deferments,
- Negative credit reports to credit bureaus, and/or
- My employer withholding part of my wages to give them to my guarantor (administrative wage garnishment).

**19. Credit Bureau Notification** — Information concerning the amount, disbursement, and repayment status (current or delinquent) of loans will be reported to one or more national credit bureau organizations on a regular basis. If I default on any loans made under this MPN, that default also will be reported to all national credit bureaus. Before any guaranty agency reports such a default, I will be given at least 30 days notice that default information will be disclosed to the credit bureaus unless I enter into repayment arrangements within 30 days of the date on the notice. The guarantor will give me a chance to ask for a review of the debt(s) before the default is reported. My lender and guarantor must provide a timely response to a request from any credit organization regarding objections I might raise with that organization about the accuracy and completeness of information reported by the lender or guarantor.

**20. Special Repayment Arrangements** —

- A Federal Consolidation Loan Program is available under which I (or my spouse and I jointly) may consolidate (combine) into one debt federal education loans received from different lenders and/or under different education loan programs. Depending on the amount I borrow, this program may result in an extension of my repayment period. Consolidation permits multiple debts to be combined into one monthly payment. For additional information, I should contact my lender or guarantor.
- Under certain circumstances, military personnel may have their educational loans repaid by the Secretary of Defense. Questions should be addressed to the local service recruiter. This is a recruiting program and does not pertain to prior service individuals or those not eligible for enlistment in the Armed Forces.
- In addition, volunteers who complete service in an approved national or community service project can earn an educational award. The award can be used to repay a Federal Stafford Loan. If I receive an educational award, I am responsible for providing my lender with information and documentation regarding my term of service and the award.
- If I have no outstanding loan balance on a FFEL or Direct Loan Program loan on October 1, 1998, or if I have no outstanding loan balance on the date I obtain a loan after October 1, 1998, I may be eligible for teacher loan forgiveness. The Department of Education will repay a fixed amount of my subsidized and unsubsidized Federal Stafford Loans if I have worked as a full-time teacher for five consecutive

school years, and if I meet all other eligibility requirements under the Act. If I am in default on a FFELP loan or a Direct loan, I am not eligible for forgiveness on that loan(s) unless I have made satisfactory repayment arrangements.

- If I am a full-time child care provider and I had no outstanding balance on a FFELP loan or a Direct loan on October 7, 1998, or I had no outstanding balance on a FFELP loan on the date I obtained a loan after October 7, 1998, I may qualify for loan forgiveness under a demonstration program set forth in the Act. I understand that I must meet other eligibility requirements under the Act and that this program requires annual federal funding.

**21. Deferments** — Under certain circumstances, I have a right to defer (postpone) repayment. The types of deferments that are available to me depend on when I first obtained a FFELP loan. Upon request, my lender will provide me with a deferment application that explains the eligibility requirements. If I am in default on my loan(s), I am not eligible for a deferment.

If all of my outstanding FFELP loans were made on or after July 1, 1993, and when my first FFELP loan was made on or after July 1, 1993, I had no outstanding FFELP loans that were made before July 1, 1993, a deferment is available to me while I am:

- Enrolled at least half time at an eligible school,
- Engaged in a full-time course of study in a graduate fellowship program,
- Engaged in a full-time rehabilitation training program for individuals with disabilities (if the program is approved by the Department of Education),
- Conscientiously seeking, but unable to find, full-time employment (for up to three years),
- Experiencing an economic hardship as determined by federal law (for up to three years).

My lender will process an in-school deferment based on (i) my request along with documentation verifying my eligibility, or (ii) the lender's receipt of a school certification of eligibility in connection with a new loan, or (iii) the lender's receipt of student status information indicating that I am enrolled on at least a half-time basis.

In all other cases, I must provide my lender with a deferment request and evidence that verifies my eligibility.

If at the time I obtain a loan under this MPN I have an outstanding FFELP loan disbursed before July 1, 1993, information on applicable deferment opportunities will be found in my earlier promissory note materials.

**22. Forbearance** — If I am unable to make my scheduled loan payments, the lender may allow me to reduce my payment amount, to extend the time for making payments, or to temporarily stop making payments as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called a forbearance. Interest charges continue to accrue during a forbearance period. The lender may grant me a forbearance in the following circumstances:

- Financial hardship, and/or
- Illness.

My lender is generally not required to grant a forbearance and may require me to provide my reasons for the request and other information. The lender may grant me a forbearance to eliminate a delinquency that persists even though I am making scheduled installment payments. My lender may grant me an administrative forbearance for up to 60 days in order to collect and process documentation supporting my request for a deferment, forbearance, change in repayment plan, or consolidation.

Circumstances that require my lender to grant me a forbearance include:

- Serving in a medical or dental internship or residency program, if I meet certain criteria.
- Serving in a national service position for which I receive a national service education award under the National and Community Service Trust Act of 1993. In some cases, the interest that accrues on a qualified loan during the service period will be paid by the Corporation for National and Community Service.
- Qualifying for partial repayment of my loans under the Student Loan Repayment Program, as administered by the Department of Defense.
- Qualifying for loan forgiveness under the Teacher Loan Forgiveness Program, if I meet certain criteria (for up to five years).
- Qualifying for loan forgiveness under the Child Care Provider Loan Forgiveness Program (for up to five years).
- Having a monthly debt burden for Title IV loans that collectively equals or exceeds 20% of my total monthly gross income (for up to three years).

Upon request, my lender will provide me with forbearance information and a forbearance request form.

**Repayment Information follows**

---

*Important Notice: Please retain this statement because it applies to present and subsequent loans received under the Master Promissory Note.*

(12/02)

## Repaying My Loans

Follow these steps to estimate your loan payment.

### Step 1: Calculate Your Monthly Interest Charges

Round your balance up to the nearest $500. If your loan amount is not on the table, follow the example below to estimate your monthly accrued interest.

**Example:**
Federal Stafford Loan of $5,479 at 6% interest.
Round up to nearest $500 = $5,500..

$5,000 = $25.00/month
+ 500 = 2.50/month
_____
$27.50/month

Your Monthly Interest $ _____

**Approximate Monthly Interest**

| Loan Amount | 5.0% | 6.0% | 7.0% | 8.0% | 9.0% |
|---|---|---|---|---|---|
| $500 | $2.08 | $2.50 | $2.92 | $3.33 | $3.75 |
| $1,000 | $4.17 | $5.00 | $5.83 | $6.67 | $7.50 |
| $3,000 | $12.50 | $15.00 | $17.50 | $20.00 | $22.50 |
| $5,000 | $20.83 | $25.00 | $29.17 | $33.33 | $37.50 |
| $6,000 | $25.00 | $30.00 | $35.00 | $40.00 | $45.00 |
| $7,000 | $29.17 | $35.00 | $40.83 | $46.67 | $52.50 |
| $9,000 | $37.50 | $45.00 | $52.50 | $60.00 | $67.50 |
| $10,000 | $41.67 | $50.00 | $58.33 | $66.67 | $75.00 |
| $15,000 | $62.50 | $75.00 | $87.50 | $100.00 | $112.50 |
| $20,000 | $83.33 | $100.00 | $116.67 | $133.33 | $150.00 |
| $25,000 | $104.17 | $125.00 | $145.83 | $166.67 | $187.50 |

### Step 2: Estimate Your Capitalized Interest

Complete this step only if you will capitalize interest on a Federal Stafford Loan. *This is an estimate only.* Actual interest capitalized will depend on factors such as disbursement dates, number of disbursements, and the variable interest rate.

| | Monthly Interest (From Step One) | | Number of Months In deferment or forbearance | | Estimate of Capitalized Interest |
|---|---|---|---|---|---|
| Example | $ 27.50 | X | $ 22 | = | $ 605.00 |
| Your Capitalized Interest | $ _____ | X | $ _____ | = | $ _____ |

### Step 3: Estimate Your Monthly Payment

Round your loan up to the nearest $500. If your principal amount is not on the table, follow the example below to estimate your monthly payment. If you previously had interest capitalized, add it to the original loan amount to get the new principal amount.

**Example:**
Federal Stafford Loan of $6,105.00 (5,500 + 605.00) at 6% interest.
Round up to nearest $500 = $6,500.

$6,000 = $66.61/month
+ 500 = 5.55/month
_____
$72.16/month

Estimated monthly payment = $72.16

*Minimum monthly payment = $50 or amount of interest accruing each month

**Estimated Monthly Payments *(10 Year Term)***

| Loan Amount | 5.0% | 6.0% | 7.0% | 8.0% | 9.0% |
|---|---|---|---|---|---|
| $500* | $5.30 | $5.55 | $5.81 | $6.07 | $6.33 |
| $1,000* | $10.61 | $11.10 | $11.61 | $12.13 | $12.67 |
| $3,000* | $31.82 | $33.31 | $34.83 | $36.40 | $38.00 |
| $5,000 | $53.03 | $55.51 | $58.05 | $60.66 | $63.34 |
| $6,000 | $63.64 | $66.61 | $69.67 | $72.80 | $76.01 |
| $7,000 | $74.25 | $77.71 | $81.28 | $84.93 | $88.67 |
| $9,000 | $95.46 | $99.92 | $104.50 | $109.19 | $114.01 |
| $10,000 | $106.07 | $111.02 | $116.11 | $121.33 | $126.68 |
| $15,000 | $159.10 | $166.53 | $174.16 | $181.99 | $190.01 |
| $20,000 | $212.13 | $222.04 | $232.22 | $242.66 | $253.35 |
| $25,000 | $265.16 | $277.55 | $290.27 | $303.32 | $316.69 |

| | Loan Amount | | Estimate of Capitalized Interest (From Step Two) | | New Principal Balance | | Estimated Monthly Payment |
|---|---|---|---|---|---|---|---|
| Example | $ 5,500 | + | $ 605.00 | = | $ 6,105.00 | | $ 72.16 |
| Your Monthly Payment | $ _____ | + | $ _____ | = | $ _____ | | $ _____ |

(12/02)

STATE OF MICHIGAN
IN THE COURT OF CLAIMS

HANS KIEBLER and DONOVAN VISSER, on
behalf of themselves and those who are similarly
situated,

Case No.: _____

Honorable: _____

*Plaintiffs,*

v.

MICHIGAN DEPARTMENT OF TREASURY,
MICHIGAN FINANCE AUTHORITY, and
MICHIGAN STATE UNIVERSITY,

*Defendants.*

_____/

### NOTICE OF INTENTION TO FILE A CLAIM

Claimant Hans Kiebler ("Claimant"), on behalf of himself and all those others similarly

situated, in compliance with the terms of MCL 600.6431, states:

1.      Claimant intends to file a claim against the Department of Treasury of the State of

Michigan, the Michigan Finance Authority, and Michigan State University (collectively the

"Defendants") on behalf of himself and those who are similarly situated.

2.      The claim arose in or around December 2012, at Lansing, Ingham County,

Michigan.

3.      The claim is based on the following facts:

      a.   Claimant is a resident of the State of Michigan, County of Ingham.

      b.   Claimant was a student at Michigan State University.

      c.   Claimant obtained student loans through the Michigan Higher Education

          Student Loan Authority ("MHESLA"), which was a predecessor agency to the

          Michigan Finance Authority ("MFA") per Executive Order 2010-2 to both

1

MHESLA and the Michigan Higher Education Assistance Authority (MHEAA). MFA is, and MHESLA and MHEAA were, divisions of the Department of Treasury. Any reference herein to the "Department of Treasury is inclusive of MHESLA, MHEAA, MFA, and any other applicable agency.

d. Claimant was offered, accepted, and obtained his student loans through the Defendants under the terms of the Michigan Students First program.

e. Among other terms, Michigan Students First provided that after 36 on-time payments, the interest rate on Claimant's remaining student loan balances would be reduced to zero (0).

f. Claimant graduated from Michigan State University in August 2009.

g. Claimant's student loans are serviced by the Great Lakes Higher Education Corporation.

h. Claimant began repaying his student loans in or around December 2009.

i. Claimant made his 36th student loan payment in or around December 2012.

j. All of Claimant's student loan payments were made on time and the in the amount specified by Great Lakes.

k. Despite Claimant making 36 on-time payments and otherwise fully performing under the terms of the applicable contract(s), the Defendants have not reduced the interest rate on Claimant's remaining student loan balances to zero (0) in material breach of their obligations under all applicable contract(s).

4. Claimant alleges the following items of damage and seeks recovery for them:

a. Damages comprise of, *inter alia*, increased interest payments on the remainder of Claimant's student loan payments, increased costs relating to Claimant's refraining from consolidating his student loans, and other actual, statutory, general, punitive, and monetary damages.

5.    This claim involves the Department of Treasury of the State of Michigan, the Michigan Finance Authority and Michigan State University.

I declare that the statements above are true to the best of my information, knowledge, and belief.

Dated: _2/21/17_       By: _____

Claimant

Respectfully submitted by,

HANK LAW PLLC

Dated: _2/21/2012_       By: _____

Jeffrey A. Hank (P71152)
P.O. Box 1358
East Lansing, MI 48826
Phone: (888) 490-8550
Fax:    (888) 490-7750

Caleb Marker (P70963)
RIDOUT LYON & OTTOSON, LLP
555 Ocean Boulevard, Suite 500
Long Beach, CA 90802
Phone: (562) 216-7380
Fax:    (562) 216-7385

David A. McKay (*Pro Hac Vice*)
RIDOUT LYON & OTTOSON, LLP
555 North Point Center East, Suite 400
Alpharetta, GA 30022
Phone: (678) 366-5180
Fax:    (678) 366-5001

*Attorneys for Claimant*

3



MICHIGAN FINANCE AUTHORITY
DEFERRED INTEREST VARIABLE FUNDING NOTE

Number R-1

June 9, 2010

MICHIGAN FINANCE AUTHORITY, a public body corporate and politic of the State of Michigan (the *"Funding Note Issuer"*), promises to pay to the order of STRAIGHT-A FUNDING, LLC (the *"Conduit Lender"*), on the Final Maturity Date set forth in the Funding Note Purchase Agreement (as hereinafter defined), the aggregate unpaid Funding Note Balance, in immediately available funds at the designated office of the Conduit Lender, together with all Ratable Financing Costs at the rates, in the amounts and at the times set forth in the Funding Note Purchase Agreement.

This Funding Note is issued pursuant to, and is entitled to the benefits of, that certain Funding Note Purchase Agreement, dated as of June 9, 2010, by and among the Michigan Finance Authority, as the Funding Note Issuer, Straight-A Funding, LLC, as the Conduit Lender, The Bank of New York Mellon, as the Conduit Administrator, the Securities Intermediary and the Conduit Lender Eligible Lender Trustee, BMO Capital Markets Corp., as the Manager, the Michigan Finance Authority, as the Sponsor, and the Michigan Finance Authority, as the Master Servicer (as amended, amended and restated, supplemented or otherwise modified from time to time, the *"Funding Note Purchase Agreement"*), to which reference is hereby made for a statement of the terms and conditions governing this Funding Note, including the terms and conditions under which this Funding Note may be prepaid or its maturity date accelerated. This Funding Note is secured by the Pledged Collateral as more particularly described in the Funding Note Purchase Agreement. Each capitalized term used but not defined herein has the meaning assigned to such term in the Funding Note Purchase Agreement.

THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR REGULATORY AUTHORITY OF ANY STATE. THIS NOTE HAS BEEN OFFERED AND SOLD PRIVATELY. THE FUNDING NOTE ISSUER IS NOT CLASSIFIED AS AN INVESTMENT COMPANY UNDER THE INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "INVESTMENT COMPANY ACT OF 1940") IN RELIANCE ON SECTION 3(c)(1) OF THE INVESTMENT COMPANY ACT OF 1940. THE REGISTERED OWNER HEREOF ACKNOWLEDGES THAT THESE SECURITIES ARE "RESTRICTED SECURITIES" THAT HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT AND AGREES FOR THE BENEFIT OF THE FUNDING NOTE ISSUER AND ITS AFFILIATES THAT THESE SECURITIES MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED EXCEPT (I) TO A PERSON WHOM THE TRANSFEROR REASONABLY BELIEVES IS AN INSTITUTIONAL ACCREDITED INVESTOR TO WHOM NOTICE IS GIVEN THAT THE RESALE, PLEDGE OR TRANSFER IS BEING MADE IN RELIANCE ON REGULATION D, AND IN ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR OTHER JURISDICTION OR (II) TO A PERSON IN A TRANSACTION THAT IS EXEMPT FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS. THE HOLDER HEREOF, BY ACQUIRING THIS NOTE, REPRESENTS AND AGREES FOR THE BENEFIT OF THE PARTIES TO THE FUNDING NOTE PURCHASE AGREEMENT THAT: IT IS AN INSTITUTIONAL ACCREDITED INVESTOR (AS DEFINED IN RULE 501(a)(1)-(3) AND (7) OF REGULATION D UNDER THE SECURITIES ACT) OR AN ENTITY IN WHICH ALL THE EQUITY OWNERS COME WITHIN SUCH PARAGRAPHS; ITS ACQUISITION OF THIS NOTE IS OTHERWISE EXEMPT FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS; AND IT IS HOLDING THIS NOTE FOR INVESTMENT PURPOSES AND NOT FOR DISTRIBUTION. THE HOLDER HEREOF, BY ACQUIRING THIS NOTE, FURTHER REPRESENTS AND AGREES FOR THE BENEFIT OF THE FUNDING NOTE ISSUER AND ITS AFFILIATES THAT THESE SECURITIES MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED UNLESS SUCH OFFER, SALE, PLEDGE OR TRANSFER SHALL NOT RESULT IN THE AGGREGATE NUMBER OF BENEFICIAL OWNERS OF THE FUNDING NOTE (WITHIN THE MEANING OF THE INVESTMENT COMPANY ACT) EXCEEDING TEN.

The obligations of the Funding Note Issuer under this Funding Note are limited recourse obligations payable solely from the Pledged Collateral and, following realization of the Pledged Collateral and its application in



accordance with the terms hereof, any outstanding obligations of the Funding Note Issuer hereunder shall be extinguished and shall not thereafter revive. In addition, no recourse shall be had for any amounts payable or any other obligations arising under this Funding Note against any officer, member, director, employee, partner or security holder of the Funding Note Issuer or any of its successors or assigns.

The holder hereof, by acquiring this Funding Note, represents and agrees that (i) at all times that it holds this Funding Note, it is and will be a United States person under Section 7701(a)(30) of the Code, (ii) it will provide the Funding Note Issuer with a properly executed IRS Form W-9 (or successor form) upon its acquisition of this Funding Note, and (iii) it will treat this Funding Note as indebtedness for United States federal, state and local income and franchise tax purposes, unless otherwise required by law.

THIS FUNDING NOTE AND THE RIGHTS OF ANY HOLDER OF THIS FUNDING NOTE AND THE OBLIGATIONS OF THE FUNDING NOTE ISSUER HEREUNDER SHALL BE CONSTRUED IN ACCORDANCE WITH AND BE GOVERNED BY THE LAWS OF THE STATE OF MICHIGAN WITHOUT REGARD TO THE CONFLICTS OF LAW PRINCIPLES THEREOF.

[Signature Follows]



**IN WITNESS WHEREOF,** the Funding Note Issuer has caused this Funding Note to be executed by its officer thereunto duly authorized, as of the date first written above.

MICHIGAN FINANCE AUTHORITY, as Funding Note Issuer

By: _____

    Name: Joseph L. Fielek

    Title   Authorized Officer

## FUNDING NOTE PURCHASE AGREEMENT

### by and among

## STRAIGHT-A FUNDING, LLC,
### as Conduit Lender,

## MICHIGAN FINANCE AUTHORITY,

### as Funding Note Issuer

## THE BANK OF NEW YORK MELLON,
### as Conduit Administrator, Securities Intermediary and Conduit Lender Eligible Lender

### Trustee

### and

## BMO CAPITAL MARKETS CORP.,
### as Manager

## MICHIGAN FINANCE AUTHORITY,

### as Sponsor, and

## MICHIGAN FINANCE AUTHORITY,

### as Master Servicer,

### June 9, 2010

## FUNDING NOTE PURCHASE AGREEMENT

THIS FUNDING NOTE PURCHASE AGREEMENT is made as of June 9, 2010, among **STRAIGHT-A FUNDING, LLC**, a limited liability company organized under the laws of the State of Delaware, as Conduit Lender, **MICHIGAN FINANCE AUTHORITY**, a public body corporate and politic, duly organized and existing under the laws of the State of Michigan, as Funding Note Issuer, **THE BANK OF NEW YORK MELLON**, a New York banking corporation, as Conduit Administrator for the Conduit Lender, as Securities Intermediary and as Conduit Lender Eligible Lender Trustee, **MICHIGAN FINANCE AUTHORITY**, a public body corporate and politic, duly organized and existing under the laws of the State of Michigan, as the Sponsor, **BMO CAPITAL MARKETS CORP.**, a company organized under the laws of the State of Delaware, as Manager for the Conduit Lender and **MICHIGAN FINANCE AUTHORITY**, a public body corporate and politic, duly organized and existing under the laws of the State of Michigan, as the Master Servicer. Certain capitalized terms used throughout this Agreement are defined in <u>Appendix A</u>. Certain rules of interpretation applicable to this Agreement are set forth in <u>Appendix A</u>.

### PRELIMINARY STATEMENTS

WHEREAS, the Funding Note Issuer desires to fund certain Eligible Loans (or the acquisition thereof) in part through the issuance of a Funding Note and the sale of such Funding Note to the Conduit Lender, on the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements herein contained, the parties hereto agree as follows:

### ARTICLE I.
### THE FACILITY

**Section 1.01.     Making of Advances; Issuance of Funding Note.** On the terms and conditions hereinafter set forth, the Conduit Lender, in its sole discretion, may make Advances to the Funding Note Issuer from time to time. All Advances made by the Conduit Lender from time to time shall be evidenced by a single Funding Note issued to and initially registered in the name of the Conduit Lender on the date of the initial Advance hereunder.

**Section 1.02.     Funding Requests; Advance Procedures.**

(a)     The Manager will notify the Funding Note Issuer and the Conduit Administrator of each Expected Funding Date by delivery of an Expected Funding Notice. By not later than 5:00 p.m. on the second (2nd) Business Day following receipt of an Expected Funding Notice, the Funding Note Issuer may submit to the Manager a Funding Request specifying the amount of the Advance it is requesting for such Expected Funding Date. The Manager may reschedule or cancel any Expected Funding Date in accordance with the Funding Allocation Procedures. Each Funding Request (other than a Funding Request relating to a Required Payment Advance) shall be submitted to the Manager in accordance with the requirements of the Funding Allocation Procedures. Funding Requests shall be irrevocable and binding on the Funding Note Issuer after the deadline for revocation specified in the Funding Allocation Procedures. No Advances will be made except on dates scheduled by the Manager in accordance with the Funding Allocation Procedures.

(b)     After receiving notice from the Manager of its Allocation Amount for any Expected Funding Date, other than in the case of a Required Payment Advance, by no later than 3:00 p.m. on the seventh (7th) Business Day prior to the Expected Funding Date, the Funding Note Issuer shall submit to the Manager a duly completed Advance Confirmation and Agreed Upon Procedures Letter, to the extent required in connection with such Advance; provided that if, at any time after submission of an original Advance Confirmation, the Funding Note Issuer has knowledge that Financed Student Loans to be pledged on the Advance Date will not be Eligible Loans as of the Advance Date, the Funding Note Issuer may revise the originally submitted Advance Confirmation at any time prior to 2 p.m. on the Business Day prior to the Advance Date by delivery of a revised Advance Confirmation to the Manager and the Conduit Administrator. At any time before delivering the original Advance Confirmation, the Funding Note Issuer may revoke its Funding Request by delivering a Revocation Notice. If the aggregate of the Funding Note Balance and the funding note balances (including capitalized ratable financing costs) of all funding notes issued by Program Funding Note Issuers that are Affiliates of the Funding

Note Issuer is less than $5 billion at such time, the Funding Note Issuer shall be required to post cash collateral in an amount equal to 0.50% of its Advance Amount at the time the original Advance Confirmation is submitted. Such cash collateral shall be held in the Breakage Account and shall be used solely to cover potential breakage costs under Section 1.03(g) in connection with the related Advance.

(c)     In connection with any Agreed Upon Procedures Letter required to be delivered in connection with any Advance or any Grant, the Funding Note Issuer shall simultaneously deliver the information related to the student loan pool from which the sample student loans subject to the Agreed Upon Procedures Letter will be selected to the Conduit Administrator at the same time such information is provided to the accountants preparing such Agreed Upon Procedures Letter.

(d)     Subject to Section 1.02(f), on the Expected Funding Date, the Conduit Lender, in its sole discretion, shall either (i) make available to the Funding Note Issuer, in same day funds, the Net Cash Advance Amount and shall make all required deposits into the applicable Trust Accounts and such Expected Funding Date shall be the related Advance Date or (ii) notify the Funding Note Issuer that the Conduit Lender declines to make such Advance. The Conduit Administrator shall determine the Reserve Account Specified Balance after giving effect to the requested Advance and the amount required to be deposited to the Reserve Account and DOE Reserve Account on each Advance Date and shall confirm that the instructions for depositing funds to the Trust Accounts are accurately set forth in the Advance Confirmation.

(e)     If an Advance is made on any Advance Date and cash collateral has been posted by the Funding Note Issuer pursuant to Section 1.02(b), such cash collateral will be credited against any deductions from the Advance Amount in the calculation of the Net Cash Advance Amount for such Advance Date. If no Advance is made because the Funding Note Issuer either revokes its request (in whole or in part) for an Advance or the conditions precedent to such Advance are not satisfied on the Expected Funding Date, the posted cash collateral will be applied by the Manager to cover breakage amounts pursuant to Section 1.03(g) and the Funding Allocation Procedures, and any remainder will be returned to the Funding Note Issuer.

(f)     The Conduit Administrator, based on the most recent Monthly Conduit Administrator's Report, shall determine whether (i) any amounts then due to the Department with respect to the Financed Student Loans or otherwise owed to the Department by the Funding Note Issuer in connection with the transactions contemplated by this Agreement, the Department Put Agreement or any other Transaction Document have not been paid, (ii) the amount on deposit in the Reserve Account is less than the Reserve Account Specified Balance or (iii) any Obligation described in clause (v), (vi), (vii) or (viii) of Section 1.05(c) has remained unpaid for three consecutive Settlement Dates, and, if any such condition exists as of the date of the related Monthly Conduit Administrator's Report, the Conduit Administrator shall, by not later than 5:00 p.m. on the second (2nd) Business Day following receipt of an Expected Funding Notice, deliver a Notice of Required Payment Advance to the Manager, and the Funding Note Issuer shall be deemed to have requested an Advance (a "*Required Payment Advance*") in an amount sufficient to pay or prepay, as applicable, all amounts described in the preceding clauses (i) through (iii), *plus*, in the case of any Obligation described in clause (iii) that has remained unpaid on three consecutive Settlement Dates, an amount sufficient to pay all other amounts payable pursuant to clause (v), (vi), (vii) or (viii) of Section 1.05(c) that would be paid in priority to such Obligation; provided that a Funding Note Issuer shall only be deemed to request a Required Payment Advance if, and to the extent, the related Advance Amount would not cause the Asset Coverage Ratio to be less than the Minimum Asset Coverage Ratio. The proceeds of a Required Payment Advance shall be applied by the Conduit Administrator to (i) *first*, pay any amounts then due to the Department with respect to the Financed Student Loans or otherwise owed to the Department by the Funding Note Issuer in connection with the transactions contemplated by this Agreement, the Department Put Agreement or any other Transaction Document that have not been paid, (ii) *second*, to deposit to the Reserve Account such amount as shall be necessary to cause the amount on deposit in the Reserve Account to equal the Reserve Account Specified Balance and (iii) *third*, to pay any Obligation described in clause (iii) of the preceding sentence that has remained unpaid on three consecutive Settlement Dates and all other amounts payable pursuant to clause (v), (vi), (vii) or (viii) of Section 1.05(c) in the order of priority specified in Section 1.05(c). With respect to any Expected Funding Date on which a Required Payment Advance is deemed to be requested, the Funding Note Issuer may not submit a Funding Request with respect to an additional Advance.

Section 1.03.     **Repayments and Prepayments.**

(a)  **_Repayment at Final Maturity._**  The Funding Note Issuer shall repay in full the Funding Note Balance and all accrued Ratable Financing Costs on the Final Maturity Date or, if earlier, upon acceleration of the Obligations.

(b)  **_Optional Prepayments._**  The Funding Note Issuer may prepay any principal of, and Ratable Financing Costs due or accrued on, the Funding Note in whole or in part on any Business Day by giving written notice at least five (5) Business Days prior to such date to the Conduit Administrator indicating the amount of such prepayment and the date on which such prepayment shall be made.  It shall be a condition precedent to any such prepayment that an amount sufficient to pay all other Obligations then due and owing by the Funding Note Issuer shall be deposited into the Funding Note Issuer Collection Account, including the amount payable by the Funding Note Issuer pursuant to Section 1.03(g) in connection with such prepayment.  It shall be a further condition precedent to any such prepayment that the prepayment shall not cause any other Program Funding Note Issuer that is not a "Restricted Special Purpose Entity" (as defined in Rule 2a-7(c)(4)(ii)(D)(2) promulgated under the Investment Company Act) to be a "Ten Percent Obligor" (as defined in Rule 2a-7(c)(4)(ii)(D)(1)(i) promulgated under the Investment Company Act); provided that the foregoing condition precedent shall not apply if (i) the Manager advises the Funding Note Issuer that the Conduit Lender will no longer issue Student Loan Short-Term Notes or (ii) the Manager determines, based on a no-action letter or other guidance from the Securities and Exchange Commission, that the foregoing condition precedent is no longer necessary.

(c)  **_Mandatory Prepayments._**

(i)  If a Department Put Event described in clause (i) of the definition of "Department Put Event" occurs, the Conduit Administrator will deliver a Liquidity Prepayment Notice to the Funding Note Issuer (with a copy to the Manager) as soon as reasonably practicable thereafter but in no event later than 1:00 p.m. on the Business Day following the day on which the Department Put Event occurred.  On or before the Required Liquidity Prepayment Date, the Funding Note Issuer shall be required to prepay a portion of the Funding Note Balance in an amount equal to the Liquidity Prepayment Amount, together with Ratable Financing Costs accrued or otherwise payable on the portion of the Funding Note Balance required to be prepaid and any amounts payable pursuant to Section 1.03(g) in connection with such prepayment.  Unless the amount described in the preceding sentence shall be paid in full on or before the Required Liquidity Prepayment Date, by no later than the Required Liquidity Prepayment Date the Funding Note Issuer shall select Financed Student Loans in accordance with the Loan Put Allocation Criteria having an aggregate Estimated Department Put Price (as set forth in the Summary Loan Put Schedule) equal to the Liquidity Prepayment Amount and shall deliver, or cause the related Servicers to deliver, a Summary Loan Put Schedule of such selected Financed Student Loans to the Conduit Administrator, and any failure to select such pool of Financed Student Loans and deliver the Summary Loan Put Schedule shall constitute an Event of Default.  If the Funding Note Issuer fails to pay the Liquidity Prepayment Amount, together with Ratable Financing Costs accrued or otherwise payable on the portion of the Funding Note Balance required to be prepaid plus any amount required to be paid by the Funding Note Issuer in accordance with Section 1.03(g) in connection with the prepayment, in full on the Required Liquidity Prepayment Date, to the extent Article 9 of the UCC is applicable, there shall be a "default" for purposes of the applicable UCC solely with respect to the Liquidity Prepayment Amount not paid on the Liquidity Prepayment Date, and, to the extent Article 9 of the UCC is applicable, the Conduit Lender shall have the rights and remedies upon a "default" available to a secured creditor under the UCC of the applicable jurisdiction and other applicable laws, including, without limitation, the right to sell Financed Student Loans in accordance with Section 6.03; provided, however, any failure to pay a Liquidity Prepayment Amount when due shall constitute neither an Event of Default nor a Reimbursement Event.  If the Funding Note Issuer has selected Financed Student Loans in accordance with the Loan Put Allocation Criteria as described above and delivered the related Summary Loan Put Schedule to the Conduit Administrator on or prior to the Required Liquidity Prepayment Date, the Manager will use reasonable efforts to conduct a Fair Market Auction of the selected pool of Financed Student Loans prior to the tenth (10th) day following the Required Liquidity Prepayment Date; however neither the Conduit Lender nor any agent of the Conduit Lender will sell any Financed Student Loan for a price less than the Estimated Department Put Price (determined as of the date used to prepare the Summary Loan Put Schedule or, if later, the cut-off date for determining the sale price of the related Student Loans) for such Financed Student Loan.  If the selected pool of Financed Student Loans has not been sold pursuant to a Fair Market Auction by the tenth (10th) day following the Required Liquidity Prepayment Date, the Funding Note Issuer shall deliver a Final Loan Put Schedule, together with copies of the previously delivered Summary Loan Put Schedule(s), to the Conduit Administrator on such tenth (10th) day and the Conduit Lender shall thereafter sell such

clause (j) or (v) of Appendix E, an Event of Default shall be deemed to occur automatically unless the Department shall have consented to the waiver of the related breach; and provided, further, that the occurrence of any event described in clause (x) of Appendix E shall automatically be deemed to constitute an "Event of Default" unless waived by the Manager with the consent of the Department; however the sole remedy with respect to such Event of Default shall be as provided in Section 1.03(c)(iii).

Section 6.02.     Remedies Upon Event of Default.

(a)     The Conduit Lender, the Manager and the Sponsor shall as soon as possible upon being made aware of the occurrence of any Event of Default or Potential Event of Default notify the Conduit Administrator. Upon the occurrence of an Event of Default, the Conduit Administrator shall have the right to declare, by notice to the Funding Note Issuer, that the Funding Note Balance, the Ratable Financing Costs accrued in respect of the Funding Note and all other Obligations of the Funding Note Issuer shall become immediately due and payable; provided that the Conduit Administrator shall not cause the acceleration of the Final Maturity Date unless instructed to take such action by the Manager; and provided further that the Funding Note Balance, the Ratable Financing Costs accrued in respect of the Funding Note and all other Obligations of the Funding Note Issuer shall automatically be accelerated upon the occurrence of any event with respect to the Funding Note Issuer described in clause (e) of Appendix E without any further action of the Conduit Lender, the Manager or the Conduit Administrator. Upon such acceleration of the Funding Note Balance, the Ratable Financing Costs accrued in respect of the Funding Note and all other Obligations of the Funding Note Issuer shall become immediately due and payable and the Conduit Lender shall have, in addition to all other rights and remedies under this Agreement or otherwise, but subject to the provisions of Section 6.02(b), all other rights and remedies available to a secured party under the UCC of the applicable jurisdiction and other applicable laws, which rights shall be cumulative without regard to whether Article 9 of the UCC is applicable.

(b)     Upon the declaration of an Event of Default or the automatic occurrence thereof, the Conduit Administrator shall (i) deliver a Put Notice to the Department in accordance with the Department Put Agreement of the occurrence of the related Department Put Event and its intention to sell the Financed Student Loans to the Department and (ii) notify each Servicer of the occurrence of such Event of Default. On or before the fifth (5th) day following the declaration of an Event of Default or the automatic occurrence thereof, the Funding Note Issuer shall, and shall cause each Servicer to, deliver a Summary Loan Put Schedule to the Conduit Administrator. The Manager shall use reasonable efforts to sell all of the Financed Student Loans pursuant to a Fair Market Auction no later than the fifteenth (15th) day following the Event of Default; provided that at any day prior to such auction, the Funding Note Issuer shall have the right to repay all outstanding Obligations and all Pledged Collateral shall thereupon be released. If the Manager has not sold the Financed Student Loans pursuant to a Fair Market Auction by the fifteenth (15th) day following the Event of Default, the Conduit Lender shall thereafter sell all of the Financed Student Loans to the Department for a price equal to the aggregate of the Department Put Prices for all such Financed Student Loans.     Upon the declaration of the occurrence of an Event of Default, this Section 6.02(b) shall require the Manager to sell all of the Financed Student Loans either through a Fair Market Auction or to the Department. Upon receipt of proceeds from each sale of a portion of the Financed Student Loans, the Manager shall direct the Conduit Administrator to accelerate a portion of the Funding Note Issuer's obligations hereunder in an amount equal to the net proceeds of such sale, less the amount of any accrued and unpaid Ratable Financing Costs payable by the Funding Note Issuer. The Funding Note Issuer consents and agrees that the sale of all of the Financed Student Loans and the application of incremental proceeds as provided herein is commercially reasonable.

(c)     Notwithstanding anything to the contrary in Section 1.05(a), the Funding Note Issuer shall direct in writing each Servicer and each agent of the foregoing, to transmit directly to the Funding Note Issuer Collection Account any Collections with respect to Financed Student Loans selected for sale in connection with the exercise by the Conduit Lender of remedies pursuant to Section 1.03(c) or, following an Event of Default, any Collections on all Financed Student Loans within two (2) Business Days of identification of the related Student Loan. Such funds described in the preceding sentence shall be held in the Sold Loans Account and shall be used solely as described in this Section 6.02(c). If any Student Loan is sold to any Person other than the Department, the Conduit Administrator shall pay to the purchaser all Collections on the related Student Loans deposited to the Sold Loans Account after the related cut-off date for determining the sale price of such Student Loans, and any other Collections shall be applied by the Conduit Administrator in the same manner as the sale proceeds of the related Student Loans. If any Student Loan is purchased by the Department, the Conduit Administrator shall pay

to the Department all Collections on the related Student Loans deposited to the Sold Loans Account to the extent such payments were not reflected in the Conversion File, and any other Collections shall be applied by the Conduit Administrator in the same manner as the sale proceeds of the related Student Loans received from the Department.

### Section 6.03. Sale of Financed Student Loans.

(a) The rights and remedies of a secured party which may be exercised by the Conduit Lender or its agent pursuant to Sections 6.02, 1.03(c) and 1.03(d) shall include, without limitation, the right, without notice except as specified below, to solicit and accept bids for and sell the Pledged Collateral or any part thereof in a Fair Market Auction or to the Department in accordance with the Department Put Agreement. The Conduit Lender appoints the Manager as its agent, and the Manager accepts such appointment, to conduct any Fair Market Auction of the Pledged Collateral for and on its behalf. In connection with any Fair Market Auction, the Funding Note Issuer hereby authorizes the Conduit Administrator to, and the Conduit Administrator shall, upon the reasonable request by the Manager, make available to the Manager certain information from any Summary Loan Put Schedule delivered to the Conduit Administrator under Sections 6.02, 1.03(c) and 1.03(d) of this Agreement or any Servicing Agreement that the Manager determines is necessary or desirable to sell the Pledged Collateral. The Funding Note Issuer hereby appoints the Conduit Administrator, and the Conduit Administrator accepts such appointment, to sell and transfer any Financed Student Loan required to be sold to the Department in accordance with this Agreement and the Department Put Agreement. This power is coupled with an interest and is irrevocable while any obligation under this Agreement remains outstanding. Any sale or transfer by the Conduit Lender or the Conduit Administrator on behalf of the Conduit Lender of Financed Student Loans shall only be made to an Eligible Lender or the Department. The Funding Note Issuer agrees that, to the extent notice of sale shall be required by law, five days' notice to the Funding Note Issuer of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification and that it shall be commercially reasonable for the Conduit Lender or the Conduit Administrator on behalf of the Conduit Lender to sell the Pledged Collateral to an Eligible Lender on an "as is" basis, without representation or warranty of any kind. The Funding Note Issuer agrees that the procedures for any sale of a Financed Student Loan as set forth in Appendix G that is conducted in the timeframe specified in this Agreement for any such sale or a sale to the Department as contemplated by this Agreement and the Department Put Agreement are commercially reasonable and shall constitute the standards against which compliance with the requirements of Part 6 of Article 9 of the UCC shall be measured without regard to whether Article 9 of the UCC is applicable. The Conduit Lender shall not be obligated to make any sale of Pledged Collateral regardless of notice of sale having been given and may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned.

(b) Except as provided in Section 1.03(c), the proceeds of any sale of Pledged Collateral shall be deposited into the Funding Note Issuer Collection Account and shall be distributed by the Conduit Administrator in the following priority: (i) to pay to the Department any accrued and unpaid amount due and owing to the Department or otherwise owed by the Funding Note Issuer to the Department in connection with the transactions contemplated by this Agreement, the Department Put Agreement or any other Transaction Document; (ii) to pay accrued and unpaid Ratable Financing Costs with respect to the Funding Note; (iii) to pay the Funding Note Balance; (iv) to pay the other Obligations of the Funding Note Issuer in accordance with the priority of payments described in Sections 1.05(a) and (c); and (v) to remit any excess amount to the Funding Note Issuer. As soon as reasonably practical, the Conduit Administrator shall prepare a report of amounts to be paid pursuant to the preceding sentence, and upon determination of such amounts, shall deliver such report to the Funding Note Issuer and distribute the proceeds of such sale in accordance with this Section 6.03(b).

### Section 6.04. Authorized Re-Issuances.

The Funding Note Issuer hereby agrees not to re-issue or permit the re-issuance of a disbursement on any Financed Student Loan for any reason except for Authorized Re-Issuances pursuant to the terms of this Section 6.04. Authorized Re-Issuances shall be subject to the following conditions precedent: (i) no Event of Default or Potential Event of Default shall have occurred and be continuing, (ii) on or prior to such re-issuance, the Funding Note Issuer shall have deposited into the Funding Note Issuer Collection Account cash in an amount equal to the outstanding Principal Balance of the originally issued Financed Student Loan, *plus* accrued and unpaid interest thereon, including any interest waived or refunded to the Borrower as a result of such re-issuance (to the extent not included in the Principal Balance), through the date of the Authorized Re-Issuance, (iii) the Student Loan that results from such Authorized Re-Issuance is an Eligible Loan,

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.

THE CONDUIT LENDER:

**STRAIGHT-A FUNDING, LLC**

By: BMO Capital Markets Corp., not in its individual capacity but solely in its capacity as Manager

By: _____

Name:   Bart Steenbergen

Title:    Managing Director

THE FUNDING NOTE ISSUER:

**MICHIGAN FINANCE AUTHORITY**

By: _____

Name:   Joseph L. Fielek

Title:    Authorized Officer

THE SPONSOR:

**MICHIGAN FINANCE AUTHORITY**

By: _____

Name:   Joseph L. Fielek

Title:    Authorized Officer

THE MASTER SERVICER:

**MICHIGAN FINANCE AUTHORITY**

By: _____

Name:   Joseph L. Fielek

Title:    Authorized Officer

CONDUIT ADMINISTRATOR, SECURITIES INTERMEDIARY AND CONDUIT LENDER ELIGIBLE LENDER TRUSTEE:

**THE BANK OF NEW YORK MELLON**

By: _____

Name:

Title:

MANAGER:

**BMO CAPITAL MARKETS CORP.**

By: _____

Name:   Bart Steenbergen

Title:    Managing Director

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.

THE CONDUIT LENDER:

**STRAIGHT-A FUNDING, LLC**

By: BMO Capital Markets Corp., not in its individual capacity but solely in its capacity as Manager

By: _____
    Name:
    Title:

THE FUNDING NOTE ISSUER:

**MICHIGAN FINANCE AUTHORITY**

By: _Joseph L. Fielk_____
    Name:  Joseph L. Fielek
    Title:   Authorized Officer

THE SPONSOR:

**MICHIGAN FINANCE AUTHORITY**

By: _Joseph L. Fielk_____
    Name:  Joseph L. Fielek
    Title:   Authorized Officer

THE MASTER SERVICER:

**MICHIGAN FINANCE AUTHORITY**

By: _Joseph L. Fielk_____
    Name:  Joseph L. Fielek
    Title:   Authorized Officer

CONDUIT ADMINISTRATOR, SECURITIES INTERMEDIARY AND CONDUIT LENDER ELIGIBLE LENDER TRUSTEE:

**THE BANK OF NEW YORK MELLON**

By: _____
    Name:
    Title:

MANAGER:

**BMO CAPITAL MARKETS CORP.**

By: _____
    Name:
    Title:

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.

THE CONDUIT LENDER:

STRAIGHT-A FUNDING, LLC

By: BMO Capital Markets Corp., not in its individual capacity but solely in its capacity as Manager

By: _____
   Name:
   Title:

THE FUNDING NOTE ISSUER:

MICHIGAN FINANCE AUTHORITY

By: _____
   Name:  Joseph L. Fielek
   Title:   Authorized Officer

THE SPONSOR:

MICHIGAN FINANCE AUTHORITY

By: _____
   Name:  Joseph L. Fielek
   Title:   Authorized Officer

THE MASTER SERVICER:

MICHIGAN FINANCE AUTHORITY

By: _____
   Name:  Joseph L. Fielek
   Title:   Authorized Officer

CONDUIT ADMINISTRATOR, SECURITIES INTERMEDIARY AND CONDUIT LENDER ELIGIBLE LENDER TRUSTEE:

THE BANK OF NEW YORK MELLON

By: _____
   Name:       Nicholas Lucente
   Title:         Vice President

MANAGER:

BMO CAPITAL MARKETS CORP.

By: _____
   Name:
   Title:

(iii)   if the resultant Proposed Pool of Student Loans selected in accordance with <u>clauses (i)</u> and <u>(ii)</u> above does not meet the Threshold Test with respect to each category of payment status, the Funding Note Issuer shall randomly (in the manner approved by the Department) remove Student Loans from the category the Category Percentage of which exceeds the Threshold Test by the greatest amount, until such category meets the Threshold Test, then, if such Proposed Pool of Student Loans does not meet the Threshold Test with respect to the remaining categories of payment status, it shall randomly (in the manner approved by the Department) remove Student Loans from the category the Category Percentage of which exceeds the Threshold Test by the greatest amount, until such category meets the Threshold Test, and so on by category, until the Threshold Test is met with respect to each category of payment status; and

(iv)   if the resultant Proposed Pool of Student Loans selected in accordance with <u>clauses (i)</u> through <u>(iii)</u> above does not meet the Threshold Test with respect to each category of loan type, the Funding Note Issuer shall randomly (in the manner approved by the Department) remove Student Loans from the category the Category Percentage of which exceeds the Threshold Test by the greatest amount, until such category meets the Threshold Test, then, if such Proposed Pool does not meet the Threshold Test with respect to the remaining categories of loan type, it shall randomly (in the manner approved by the Department) remove Student Loans from the category the Category Percentage of which exceeds the Threshold Test until the Threshold Test is met with respect to each category of loan type.

<u>provided</u>, that, each Proposed Pool of Student Loans selected to be released from the lien of the Conduit Lender must include either all or none of the Eligible Loans made to any related Borrower (i.e. "by account") other than Restricted Loans as defined in clause (ii) of the definition thereof.

"*Loan Removal Data Schedule*" means a schedule (in the form provided by the Department) that lists, by academic year, with respect to the Student Loans then securing the related Funding Note, (i) the average Principal Balance of such Financed Student Loans, (ii) the type of school with respect to which such Financed Student Loans were made expressed as a percentage of the related Financed Student Loans (i.e. two-year, four-year or proprietary institution), (iii) the payment status of such Financed Student Loans expressed as a percentage of the related Financed Student Loans (i.e. in-school, repayment, grace period, deferment or forbearance) and (iv) the loan type of such Student Loans expressed as a percentage of the related Financed Student Loans (i.e. Subsidized Stafford Loan, PLUS Loan or Unsubsidized Stafford Loan).

"*Loan Transmittal Summary Forms*" means the form attached as <u>Annex I</u> to each Loan Designation Notice, which lists, by Borrower, each Student Loan subject to the related or Loan Designation Notice, including (i) the outstanding Principal Balance of each such Student Loan as of the related Cut-off Date, (ii) the Guarantor that Guarantees each Student Loan subject to the related Loan Designation Notice, as applicable, (iii) the Servicer that services each Student Loan subject to the related Loan Designation Notice, as applicable, (iv) notice information for the Servicer that services each Student Loan subject to the related Loan Designation Notice, as applicable, and (v) information relating to the type of school with respect to which the Student Loans were made.

"*Lower Boundary*" means an amount equal to the sum of (i) the applicable Sample Mean minus (ii) the product of (A) 1.96 and (B) the applicable Standard Error.

"*Management Agreement*" means the management agreement between the Manager and the Conduit Lender.

"*Manager*" means BMO Capital Markets Corp., a company organized under the laws of the State of Delaware, and its successors and assigns.

"*Mandatory Final Prepayment Date*" means November 19, 2013 or, one or more Business Days thereafter as determined by the Manager, which date(s) shall be no later than forty-six (46) days prior to the Put Expiration Date (or such earlier date as shall be necessary to ensure that the Department Put Date with respect to any Department Put Event occurring on such Mandatory Final Prepayment Date would occur prior to the Put Expiration Date). The Manager, in its sole discretion, will assign Mandatory Final Prepayment Dates for the funding notes issued by all Program Funding Note Issuers and may assign multiple Mandatory Final Prepayment Dates to a single Program Funding Note Issuer, each of which will apply to a specific portion of the outstanding funding notes of such Program Funding Note Issuer; <u>provided</u> that the aggregate amount of funding notes maturing on any day may

not exceed the Daily Put Limit. The Manager will assign the Mandatory Final Prepayment Dates by no later than October 18, 2013.

"*Market Adjustment*" means, as of any date of determination and any Commitment Amount, the lesser of (a) one (1) and (b) the percentage equivalent of a fraction, (i) the numerator of which is the annualized aggregate original principal balance of all Student Loans originated by all Eligible Lenders (as shown on the Department's NSLDS system) during the period commencing with the month immediately following the month of the applicable pledge of Student Loans to the Conduit Lender and ending at the end of the twenty-fourth month after such pledge (or at the end of the preceding month if less than twenty-four months have elapsed since such pledge), and (ii) the denominator of which is the aggregate original principal balance of all Student Loans originated by all Eligible Lenders (as shown on the Department's NSLDS system) during the twelve month period ending with the month immediately preceding the month of the applicable pledge of Student Loans to the Conduit Lender.

"*Master Servicer*" means the Michigan Finance Authority, a public body corporate and politic, duly organized and existing under the laws of the State of Michigan.

"*Master Servicer Indemnified Amounts*" has the meaning specified in Section 7.03(a).

"*Material Adverse Effect*" means a material adverse effect on:

      (a)      with respect to the Funding Note Issuer, the status, existence, perfection, priority or enforceability of the Conduit Lender's or the Conduit Lender Eligible Lender Trustee's interest in the Pledged Collateral or the ability of the Funding Note Issuer to perform its obligations under this Agreement or any other Transaction Document or the ability to collect on a material portion of the Pledged Collateral; or

      (b)      with respect to any other Person, the ability of the applicable Person to perform its obligations under this Agreement or any other Transaction Document.

"*Material Servicer*" means any Affiliated Servicer and any other Servicer responsible for servicing more than 10% of the Financed Student Loans by aggregate Principal Balance.

"*Membership Interest*" has the meaning assigned to such term in the Funding Note Issuer's limited liability company agreement.

"*Minimum Asset Coverage Ratio*" means 100%.

"*Monthly Conduit Administrator's Report*" means the report to be delivered by the Conduit Administrator pursuant to Section 1.05(b) in substantially the form of Exhibit B hereto.

"*Monthly Remittance Condition*" means, with respect to any Affiliated Servicer, that (a) no Servicer Default or Potential Event of Default relating to a Servicer Default has occurred and is continuing with respect to such Servicer and (b) the short term unsecured debt of such Servicer is rated by S&P and is rated (i) "A-1" or better by S&P, and (ii) if rated by Fitch, "F1" or better by Fitch.

"*Monthly Servicer Report*" means a report substantially in the form of Exhibit A to each Servicing Agreement.

"*Monthly Servicing Fee Cap*" means, with respect to any Settlement Date, the aggregate for all Student Loans that were Financed Student Loans as of the last day of the preceding Settlement Period, of the product of (a) the number of days during such Settlement Period during which each such Student Loan was a Financed Student Loan, divided by 360, (b) .70% and (c) the Principal Balance of each such Financed Student Loan as of the first day of the preceding Settlement Period (or, if later, the Cut-off Date for each such Financed Student Loan).

"*Moody's*" means Moody's Investors Service, Inc. (or its successors in interest).

"*Multiemployer Plan*" means a "multiemployer plan" as defined in Section 4001(a)(3) of ERISA which is or was at any time during the current year or the immediately preceding six years contributed to by the Funding Note Issuer or any ERISA Affiliate.

## APPENDIX E
## EVENTS OF DEFAULT

(a)     (i) the Funding Note Issuer shall fail to pay the Funding Note Balance or any other Obligations in full on the related Mandatory Final Prepayment Date or the Final Maturity Date, (ii) the Funding Note Issuer shall fail to make any payment under Sections 1.05(c)(i) through 1.05(c)(viii) within two (2) Business Days of the due date thereof, or (iii) any Transaction Party shall fail to make any other payment, transfer or deposit on the date first required of such party under the Transaction Documents and such failure shall remain uncured following the expiration of any applicable payment or grace period provided for in the Transaction Documents; provided, however, that failure by the Funding Note Issuer to make a required payment on a Settlement Date under Sections 1.05(c)(i) through (viii) solely due to insufficient Available Funds on such Settlement Date shall not by itself constitute an Event of Default (other than with respect to all amounts due and owing on the Mandatory Final Prepayment Date or the Final Maturity Date or as expressly specified below); or

(b)     any representation, warranty, certification or statement made or deemed to be made by any Transaction Party (but, in the case of any Servicer, only to the extent such entity remains a Servicer after the 30-day cure period noted below) under or in connection with this Agreement or any other Transaction Document, or other information, report or document delivered pursuant hereto or thereto shall prove to have been incorrect in any material respect when made, deemed made or delivered (except for representations and warranties concerning Financed Student Loans with respect to which the Reimbursement Amount and all Reimbursement Event Fees and Expenses have been paid in accordance with Section 4.03) and shall remain unremedied (if such default can be remedied) for the greater of (i) thirty (30) days or (ii) the time period expressly provided for the cure of such representation or warranty in the related Transaction Document, in each case after the earlier of actual knowledge by an Authorized Officer of the applicable party that made, or was deemed to have made, such incorrect representation, warranty, certificate or statement or to have provided such incorrect information or receipt of written notice thereof by the Funding Note Issuer; or

(c)     any Transaction Party shall default in the performance or observance of any term, covenant or undertaking to be performed or observed herein or in any other Transaction Document on its part, other than any breach of any obligation or covenant of the Funding Note Issuer in Section 20 of Appendix D to the extent addressed in clause (x) of this Appendix E, and any such failure shall remain unremedied (if such default can be remedied) for thirty (30) days after the earlier of actual knowledge by an Authorized Officer of the applicable Transaction Party or receipt of written notice thereof by the applicable Transaction Party; provided, however, such 30-day cure period shall not apply to defaults under Sections 1, 9, or 10 of Appendix D and shall not apply to any Event of Default in clause (v) below; or

(d)     a Servicer Default shall have occurred and the related Servicer shall not have been replaced within thirty (30) days after notification from the Conduit Administrator or any Servicer shall resign or be removed or any Servicing Agreement shall not be in full force and effect for any reason and the related Servicer shall not have been replaced prior to the resignation or removal of the related Servicer or the termination of the related Servicing Agreement, as applicable; or

(e)     an Event of Bankruptcy shall have occurred with respect to the Funding Note Issuer or any Servicer; provided that the foregoing event shall not be an Event of Default if the related Servicer is not an Affiliated Servicer and within thirty (30) days of the occurrence of such event, such Servicer ceases to be a Servicer for any Financed Student Loans; or

(f)     except as otherwise permitted by this Agreement, any Transaction Party shall fail to maintain its organizational status; or

(g)     [Reserved];

(h)     the filing of any judgment or adverse ruling against the Funding Note Issuer that could reasonably be expected to have a Material Adverse Effect on the Funding Note Issuer and such judgment or ruling shall continue unsatisfied or unstayed for a period in excess of thirty (30) days; or

(i)    the Conduit Lender or the Conduit Lender Eligible Lender Trustee shall, for any reason, cease to have a valid and perfected first priority security interest in the Pledged Collateral, or the Funding Note Issuer shall, for any reason, cease to have a valid and perfected first priority ownership interest in any of the Pledged Collateral, in each case for a period of two (2) Business Days following the date the Funding Note Issuer acquired such knowledge or its receipt of such notice; or

(j)    failure by the Conduit Administrator to pay any Negative Special Allowance Payments to the Department within thirty (30) days of the date on which any such payment is required to be made with respect to the Financed Student Loans; or

(k)    the amount on deposit in the Reserve Account shall be less than the Reserve Account Specified Balance on two consecutive Settlement Dates, unless such shortfall shall have resulted from an increase in the Reserve Account Specified Balance specified by the Manager in accordance with the final proviso to the definition of Reserve Account Specified Balance; or

(l)    the Funding Note Issuer shall be required to register as an "investment company" or shall be controlled by an entity that is required to be registered as an "investment company" under the Investment Company Act; or

(m)    any failure by the Funding Note Issuer to pay amounts required to be paid under Section 7.01 or 12.08 on or before the thirtieth (30th) day following the date of demand for payment thereof; or

(n)    any settlement or one or more judgments or orders for the payment of an amount or adverse rulings shall be rendered against any Transaction Party that could reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect on such Person and such judgment or ruling shall remain unsatisfied or unstayed for a period in excess of thirty (30) days; or

(o)    any material adverse development in any federal or state litigation, investigation or proceeding against any Transaction Party shall occur that could reasonably be expected to have a Material Adverse Effect on such Person or on the Pledged Collateral which continues for thirty (30) days after the earlier to occur of knowledge thereof or written notice thereof shall have been received by the Funding Note Issuer; or

(p)    the filing of any actions or proceedings against any Transaction Party that involves the Transaction Documents or any material portion of the Pledged Collateral as to which the Conduit Administrator or the Manager reasonably believes there is likely to result a materially adverse determination which remains unsettled, unsatisfied or unstayed for a period in excess of thirty (30) days; or

(q)    (i) the Internal Revenue Service shall file notice of a lien pursuant to Section 6323 of the Code with regard to any assets of the Funding Note Issuer and such lien shall not have been released within two (2) Business Days, or (ii) any Person shall institute steps to terminate any Benefit Plan if the assets of such Benefit Plan are insufficient to satisfy all of its benefit liabilities (as determined under Title IV of ERISA), or a contribution failure occurs with respect to any Benefit Plan, which is sufficient to give rise to a lien under Section 302(f) or 303(k), as applicable, of ERISA or where the PBGC shall, or shall indicate its intention to, file notice of a lien pursuant to Section 4068 of ERISA with regard to any of the assets of the Funding Note Issuer and in each case such lien shall not have been released within two (2) Business Days, or (iii) any Person shall engage in any non-exempt "prohibited transaction" (as defined in Section 406 of ERISA or Section 4975 of the Code) involving a Benefit Plan which causes liabilities to be assessed against the Funding Note Issuer or an ERISA Affiliate; or any Reportable Event shall occur with respect to, or proceedings shall commence to have a trustee appointed, or a trustee shall be appointed, to administer or to terminate, a Benefit Plan subject to Title IV of ERISA, which Reportable Event is likely to result in termination of such Benefit Plan, or (iv) the Funding Note Issuer or any ERISA Affiliate is likely to incur any liability in connection with the withdrawal from, or (v) the insolvency within the meaning of Section 4245 of ERISA or reorganization within the meaning of Section 4241 of ERISA of, a Multiemployer Plan; provided, that an event described in this subsection (q) shall not be an Event of Default unless such event could reasonably be expected to have a Material Adverse Effect on the Funding Note Issuer or the Pledged Collateral; or

(r)    any material provision of this Agreement or any other Transaction Document (other than a Guarantee Agreement that does not apply at such time to any Financed Student Loans) to which the Funding Note

Issuer or any Servicer is a party shall cease to be in full force and effect or any party to this Agreement or such Transaction Document shall so state in writing; or

(s)        the Funding Note Issuer shall be a "Ten Percent Obligor" (as defined in Rule 2a-7(c)(4)(ii)(D)(1)(i) promulgated under the Investment Company Act); or

(t)        a "Program Default" or a "Program Winddown Event" each, as defined in Schedule I to the Administration Agreement shall have occurred and be continuing for thirty (30) days; or

(u)        any amendment to any federal law, or the adoption of any federal law, that could reasonably be expected to have a Material Adverse Effect on any Transaction Party or materially adversely affect the interests of the Conduit Lender shall have been enacted and shall continue in effect for thirty (30) days; or

(v)        failure by the Funding Note Issuer to pay any amount to the Department when required to be paid pursuant to this Agreement, including, without limitation any amounts payable pursuant to Section 4.03; or

(w)        after giving effect to all payments to be made on any Settlement Date and any change in the Funding Note Balance on such Settlement Date (including any increase thereof due to Capitalized Ratable Financing Costs for such Settlement Date), the Minimum Asset Coverage Ratio shall exceed the Asset Coverage Ratio on such Settlement Date and the Asset Coverage Ratio shall not be increased to the Minimum Asset Coverage Ratio by the third Business Day following such Settlement Date; or

(x)        with respect to any Commitment Reporting Date, the Funding Note Issuer fails to comply with its commitment to originate and/or acquire FFELP student loans in an amount equal to or exceeding the Commitment Amounts required to be satisfied prior such Commitment Reporting Date pursuant to Section 20 of Appendix D hereof and such failure shall remain unremedied for thirty (30) days; or

(y)        the Funding Note Issuer (i) shall fail to select a pool of Financed Student Loans for sale in accordance with Section 1.03(c)(i) or Section 1.03(c)(ii) on or prior to the Required Liquidity Prepayment Date with respect to a Department Put Event described in clause (i) or (ii) of the definition of "Department Put Event," (ii) shall fail to select a pool of Student Loans for sale in accordance with Section 1.03(c)(iii) and deliver a Summary Loan Put Schedule on or prior to the fifth (5th) day following the occurrence of a FFELP Commitment Default or (iii) shall fail to deliver any other Summary Loan Put Schedule or Final Loan Put Schedule on the date such Summary Loan Put Schedule or Final Loan Put Schedule, as applicable, is required to be delivered in accordance with this Agreement; or

(z)        the Funding Note Balance shall exceed 9% of the aggregate unpaid principal amount (including capitalized ratable financing costs) of all outstanding notes evidencing advances made by the Conduit Lender to Program Funding Note Issuers, and by the thirtieth (30th) day after the occurrence of such event, the Funding Note Issuer shall not have reduced the Funding Note Balance to an amount such that the Funding Note Balance does not exceed 8% of the aggregate unpaid principal amount (including capitalized ratable financing costs) of all outstanding notes evidencing advances made by the Conduit Lender to Program Funding Note Issuers;

provided that the Events of Default described in clauses (s) and (z) shall no longer be applicable to the Funding Note Issuer if (i) the Manager advises the Funding Note Issuer that the Conduit Lender will no longer issue Student Loan Short-Term Notes or (ii) the Manager determines, based on a no-action letter or other guidance from the Securities and Exchange Commission, that the foregoing condition precedent is no longer necessary.