UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN FINANCE AUTHORITY,

               Plaintiff/Counter-Defendant,           Case No. 1:13-cv-597

v.                                           HON. JANET T. NEFF

HANS KIEBLER and DONOVAN VISSER,

               Defendants/Counter-Claimants.

_____/

## OPINION

Pending before the Court in this removed case is Plaintiff/Counter-Defendant Michigan Finance Authority's Motion to Remand (Dkt 9). Defendants/Counter-Claimants Hans Kiebler and Donovan Visser filed a response in opposition (Dkt 12), and Plaintiff filed a reply (Dkt 13). Having carefully considered the relevant facts and the parties' arguments, the Court determines, for the reasons discussed herein, that the Motion to Remand is properly granted and the case remanded to the state court from which it was removed.

## I. BACKGROUND

Plaintiff/Counter-Defendant Michigan Finance Authority (the MFA) is a public body corporate created by Executive Reorganization Order No. 2010-2, codified at MICH. COMP. LAWS § 12.194(II)(A) (Dkt 1-1, Compl. ¶ 1). The MFA succeeded the former Michigan Higher Education Student Loan Authority (MHESLA), which promoted higher education by helping provide students access to education loans (*id.* ¶ 6). MHESLA provided various borrower benefit programs, including the Michigan Students First (MSF) Program, the program in which Defendants/Counter-Claimaints Hans Kielber and Donovan Visser ("the Borrowers") participated (*id.* ¶¶ 9, 18, 25).

Under the MSF Program, if a qualifying borrower made 36 consecutive timely monthly payments, then the loan's interest rate would be reduced to zero percent for the life of the loan if payments continued to be timely made (*id.* ¶ 10).  On or about June 10, 2010, the MHESLA sent letters notifying borrowers that the MSF Program would be terminated effective June 30, 2010 (*id.* ¶ 15).  Neither of the Borrowers qualified for the MSF Program by the June 30, 2010 cut-off, so they were no longer eligible for the MSF Program's zero percent interest rate reduction (*id.* ¶ 17).

In February 2013, the Borrowers filed Notices of Intention to File a Claim with the Michigan Court of Claims relating to the MSF Program (Dkt 1-1, Compl. Exs. 5 & 6).  The MFA, in turn, filed a declaratory judgment action in Ingham County Circuit Court, seeking a ruling "that neither Visser nor Kiebler may maintain a civil action against MFA arising out of the acts and occurrences alleged in their Notices of Intention to File Claim; that MFA, through its predecessor MHESLA, was entitled to take its June 30, 2010 action revoking its borrower benefit programs, including the MSF Program; and granting MFA any other legal or equitable relief to which it may be entitled" (Dkt 1-1, Compl.).

On May 31, 2013, the Borrowers removed the declaratory judgment action to this Court, citing this Court's original jurisdiction under 28 U.S.C. § 1331 (Dkt 1, Notice of Removal ¶ 7).[1]  On June 12, 2013, the Borrowers filed their Answer and a Counterclaim, alleging state-law claims of Breach of Contract (Count I), Prospective Injunctive Relief (Count II), Unjust Enrichment (Count III) and Declaratory Judgment (Count IV) (Dkt 8).

On June 14, 2013, the MFA filed this Motion to Remand (Dkt 9), requesting expedited consideration and arguing that this Court lacks subject-matter jurisdiction because this case depends

---

[1]The Borrowers make no allegations to support diversity jurisdiction over these parties.

on state contract law (Dkt 10 at 11-12).[2]  On July 1, 2013, the Borrowers filed a response in opposition to the motion to remand (Dkt 12).  The MFA filed a reply to the response (Dkt 13).

## II.  ANALYSIS

### A.      No Substantial-Federal-Question Jurisdiction

Federal courts are courts of limited jurisdiction.  "Unlike state trial courts, they do not have general jurisdiction to review questions of federal and state law, but only the authority to decide cases that the Constitution and Congress have empowered them to resolve."  *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008).  "When a party opts to file a complaint in state court, the federal courts must honor that choice unless Congress has authorized removal of the case."  *Id.* (citing *Rivet v. Regions Bank of La.,* 522 U.S. 470, 474 (1998); 28 U.S.C. § 1441(a)).

Federal district courts have original jurisdiction of all civil actions "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The mere presence of a federal issue in a lawsuit is, by itself, insufficient to confer jurisdiction.  *Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 507 (1900).  Rather, to determine whether a claim "arises under federal law, a court, under the 'well-pleaded complaint' rule, generally looks only to the plaintiff's complaint."  *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 552 (6th Cir. 2005) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936); and *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908)).  "If the

---

[2]Citing *Scarborough v. Mich. Guar. Agency*, 229 B.R. 145 (Bankr. W.D. Mich. 1999), and *Murphy v. Mich. Guar. Agency*, 271 F.3d 629 (5th Cir. 2001), the MFA also argues in the alternative that it is immune from suit in federal court pursuant to the Eleventh Amendment (Dkt 10 at 14-15). Given this Court's conclusion that the Borrowers have not demonstrated that this Court may properly exercise jurisdiction over the subject matter of the removed complaint, the Court declines to address the immunity argument.  *See Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549-50 (6th Cir. 2006) ("lack of jurisdiction would make any decree in the case void") (quoting *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996)).

complaint relies only on state law, the district court generally lacks subject-matter jurisdiction and the action is not removable." *Id.* "'By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby.'" *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 12 (1983) (citing *Gully*, 299 U.S. at 116).

There are exceptions to the well-pleaded complaint rule. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007) (en banc). Under the "substantial-federal-question doctrine," the exception upon which the Borrowers here rely[3], "a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right under state law depends on the validity, construction, or effect of federal law." *Id.* (citing *Franchise Tax Bd.*, 463 U.S. at 9; *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912)). "[T]he 'law that creates the cause of action' is state law, and original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is 'really' one of federal law." *Franchise Tax Bd.*, 463 U.S. at 13.

"Such jurisdiction remains exceptional and federal courts must determine its availability, issue by issue." *Mikulski,* 501 F.3d at 565. "The mere presence of a federal issue in a state law cause of action does not automatically confer federal question jurisdiction, either originally or on

---

[3]The Borrowers initially referenced the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), as a source of federal-question jurisdiction in their removal papers (Dkt 1 at 1 n.1), but they have since withdrawn any reliance on CAFA as a basis for removal (Dkt 12 at 5 n.1). There is also no suggestion that the Declaratory Judgment Act, 28 U.S.C. § 2201, is implicated in this case as a basis for federal-question jurisdiction. *Cf. Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (indicating that the Act "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction").

4

removal." *Id. See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005) (emphasizing that it takes more than a federal element "to open the 'arising under' door"); *see also Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006) (characterizing the set of substantial-federal-question cases as a "special and small category").

The United States Supreme Court has developed a standard by which the federal interest in providing a forum for an issue is weighed against the risk that the federal courts will be unduly burdened by a rush of state-law cases. *Mikulski,* 501 F.3d 565-68 (summarizing the Supreme Court's evolving case line). Substantial-federal-question jurisdiction turns on "whether the state-law claim (1) depends on (2) a substantial federal issue (3) that is in dispute and whether (4) exercising jurisdiction would not disturb the congressionally approved balance of federal and state court jurisdiction." *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 463 (6th Cir. 2010) (citing *Grable*, 545 U.S. at 314). "The party seeking removal bears the burden of demonstrating that the district court has original jurisdiction." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). Further, "the removal statute should be strictly construed and all doubts resolved in favor of remand." *Id.* at 550 (quoting *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996)).

Here, the Borrowers argue that this removed declaratory judgment action necessarily depends on a substantial federal issue because the parties' dispute centers on the interpretation of the federal student loan contract, a standard form Master Promissory Note (MPN) that is written and regulated by the United States Department of Education (USDOE) and incorporates the Higher Education Act (HEA), 20 U.S.C. § 1001 *et seq.*, and related regulations (Dkt 12 at 5). The Borrowers point to a regulation governing lenders' disclosures at or prior to repayment, which they argue the MFA violated "because they failed to state in writing that the zero percent interest term

could be cancelled on a whim" (*id.* at 6). *See* 34 C.F.R. § 682.205(c)(2)(*xi*) ("[i]f the lender provides a repayment benefit, any limitations on that benefit, any circumstances in which the borrower could lose that benefit, and whether and how the borrower may regain eligibility for the repayment benefit").

Even assuming arguendo that this case turns on the HEA regulation, which the MFA disputes, the Court agrees with the MFA that the HEA regulation cannot create a substantial federal question where the HEA does not itself provide a private right of action. *See Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 710 (6th Cir. 2006) (citing cases for the proposition that "nearly every court to consider the issue in the last twenty-five years has determined that there is no express or implied private right of action to enforce any of the HEA's provisions"). "Congress's failure to set out a private remedy for violations of the federal statute at issue was 'tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Heydon v. MediaOne of Se. Michigan, Inc.*, 327 F.3d 466, 472 (6th Cir. 2003) (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 814 (1986)). Hence, the Borrowers' HEA-regulation argument fails to satisfy at least three of the four factors of the substantial-federal-question inquiry, and the Borrowers have not even addressed the fourth factor of the substantial-federal-question inquiry, to wit: whether taking jurisdiction on this basis would disturb the congressionally approved balance of federal and state court jurisdiction. *See Charvat,* 630 F.3d at 463 (delineating factors).

The Borrowers also argue that this Court should exercise substantial-federal-question jurisdiction in this case because the MPN contains a federal choice-of-law provision (Dkt 12 at 7). The MPN provides that "[t]he terms of this MPN will be interpreted in accordance with the

applicable federal statutes and regulations, and the guarantor's policies.  Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this MPN" (Dkt 1-1, Compl. Ex. 4).  As the MFA astutely observes, this provision "only recognizes a truism:  federal law applies where it exists, and, otherwise, state law governs" (Dkt 13 at 7).  The provision does not demonstrate that the declaratory judgment action necessarily depends on a substantial federal issue.

For a contrary conclusion, the Borrowers rely on the district court decision in *Danis Indus. Corp. v. Fernald Env't Restoration Mgmt. Corp.*, 947 F. Supp. 323 (S.D. Ohio, 1996) (determining it could properly exercise federal jurisdiction based on a contract that had a choice-of-law provision stating that federal common law would apply).  However, even if this Court were bound by the two-prong test the district court set forth in *Danis,* application of *Danis* merely leads to the same result inasmuch as the second *Danis* prong is that "the United States must have a substantial interest in the contract being litigated and thus interpretation of the contract would 'require[] resolution of a substantial question of federal law.'"  *Danis*, 947 F. Supp. at 328 (quoting *Merrell Dow*, 478 U.S. at 810).

Last, although no federal agency is a party to this case, the Borrowers proffer the general assertion that "the United States has a substantial interest in the uniform interpretation of the MPN and the incorporated MSF disclosure statements, which could affect the USDOE's underwriting and administration of student loans across the country that are governed by the standard form MPN" (Dkt 12 at 7).  However, as the Supreme Court has emphasized, it takes more than a federal element "to open the 'arising under' door."  *Empire*, 547 U.S. at 699; *Grable*, 545 U.S. at 313.

In sum, the Borrowers' HEA-regulation and choice-of-law provision arguments do not demonstrate that the exceptional category of substantial-federal-question jurisdiction is available to them.  They have not demonstrated that this Court may exercise jurisdiction over the subject matter of the removed Complaint.  Further, after weighing several factors here, including judicial economy, convenience, fairness, and comity, the Court declines to retain supplemental jurisdiction over the state-law claims the Borrowers alleged in their Counterclaim.  *See  Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed") (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996)); *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 585 (6th Cir. 2011) (same); *see also* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it ha[d] original jurisdiction").

## B.    Costs and Fees

The remaining issue before this Court is the MFA's request for costs and attorney fees (Dkt 9, Mot. ¶ 13(b)).  28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  Although the MFA has not yet provided supporting documentation for its request, this Court will give initial review to the request to determine whether costs and fees are warranted under the circumstances presented.

District courts have "considerable discretion" to award or deny costs and attorney fees under § 1447(c).  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); *Warthman v. Genoa Twp.*

8

*Bd. of Trustees*, 549 F.3d 1055, 1059 (6th Cir. 2008).  In *Martin*, 546 U.S. at 140, the Supreme Court observed that Congress designed the costs-and-fees provision in § 1447(c) to permit removal in appropriate cases, while simultaneously "reduc[ing] the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff."  In cases where removal was not objectively reasonable, courts are to consider this underlying purpose when they exercise their discretion. *Warthman,* 549 F.3d at 1060.  "In general, objectively unreasonable removals should result in fee awards to plaintiffs."  *Id.*  However, district courts should consider whether "unusual circumstances warrant a departure from the rule in a given case."  *Id.*  It is not necessary to show that the removing party's position was "frivolous, unreasonable or without foundation."  *Martin,* 546 U.S. at 138.

Here, for the reasons previously stated, removal of this case from state to federal court was not objectively reasonable.  The Court finds no unusual circumstances that would warrant a departure from the general rule that an award of costs and fees should result.  The MFA may therefore tax its just costs, and this Court will, if necessary, entertain a motion from the MFA, with supporting documentation, for any actual expenses, including reasonable attorney fees, that the MFA incurred as a result of the removal.

### III.  CONCLUSION

For the foregoing reasons, the Court grants the MFA's Motion to Remand (Dkt 9).  The Court remands the case to the state court from which it was removed.  An Order consistent with this Opinion will issue.

DATED: July 30, 2013                       /s/ Janet T. Neff
                                           JANET T. NEFF
                                           United States District Judge